IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| JAMES DEMARCO, et al.,<br><br>    Plaintiffs,<br><br>vs.<br><br>MICHAEL LAPAY, et al.,<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING DEFENDANT PALADIN'S PETITION TO NULLIFY WRONGFUL LIEN<br><br><br>Case No. 2:09-CV-190 TS |

    Before the Court is Defendants Paladin Development Partners, LLC, Michael LaPay, Rory Murphy, George Bryant, and Christopher Conabee's (collectively, "Defendants") Motion for Partial Summary Judgment on Issue of Damages[1] and Defendant Paladin Development Partners, LLC's ("Paladin") Verified Petition to Nullify Wrongful Lien and For a Civil Wrongful Lien Injunction.[2] These motions are fully briefed and oral argument was heard on October 12,

---

[1]Docket No. 43.

[2]Docket No. 49.

1

2010. Having reviewed the parties respective filings and oral argument, the Court issues the following decision.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On or about March 7, 2006, Plaintiffs James DeMarco, Cheryl DeMarco, George DeMarco, Jeffery Ott, Nancy Ott, and Slopside Properties, LLC (collectively, "Plaintiffs") entered into certain Real Estate Purchase Contracts (the "Contracts") with Defendants. Therein, Defendants agreed to sell to Plaintiffs certain real property located in Summit County, Utah (the "Subject Property").[3] These Contracts and the parties' interactions around the time these Contracts were entered into frame the contours of this dispute.

On March 3, 2009, Plaintiffs filed this case against Defendants asserting claims related to federal securities laws violations, fraud, and breach of contract. On May 21, 2009, Defendants filed a Motion to Dismiss Plaintiffs' claims of securities laws violations and fraud, as well as Plaintiffs' request for attorney fees.[4] The Court granted the motion in part, dismissing the securities laws violations and fraud claims.[5] In Defendants' Motion to Dismiss, Defendants did not seek dismissal of Plaintiffs' Fifth Cause of Action. Thus, following Defendants' Motion to Dismiss, the only claims remaining are those contained in Plaintiff's Fifth Cause of Action and Plaintiffs' separate claim for attorney fees.

---

[3]Although each Plaintiff executed a unique contract, both parties agree that the contracts are substantively identical. *See* Docket No. 1, at ¶¶ 5-6.

[4]Docket No. 8.

[5]Docket No. 27.

Defendants moved for partial summary judgment on June 4, 2010. Defendants assert that summary judgment is appropriate because Plaintiffs' only remaining claim against Defendants is for breach of contract and, as such, damages are limited to those allowed by the contract.

In addition to its motion for summary judgment, on August 26, 2010, Defendant Paladin filed a petition seeking nullification of Plaintiffs' lien on the Subject Property recorded on or about July 17, 2008.[6] In the Petition, Paladin asserts that Plaintiffs' lien is a wrongful lien under Utah law and requests that the Court nullify the wrongful lien, enjoin Plaintiffs from making further liens against the Subject Property without the Court's permission, and enter damages against Plaintiffs pursuant to Utah's wrongful lien statute.

## II. DISCUSSION

A. SUMMARY JUDGMENT

*1. Standard for Summary Judgment*

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue of material fact and it is entitled to judgment as a matter of law.[7] In considering whether genuine issues of material fact exist, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[8] The Court is

---

[6]Paladin originally filed this petition in the Third District Court, State of Utah, where the Subject Property is located. The state court judge dismissed the petition without prejudice and directed Paladin, in the interest of judicial economy, to bring its petition before this Court. *See* Docket No. 49, at 2 and Ex. A.

[7]*See* Fed.R.Civ.P. 56(c).

[8]*See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[9] In opposing a motion for summary judgment, "[t]he nonmoving party 'may not rest upon the mere allegations or denials of his pleadings' to avoid summary judgment."[10]

   2.   *Disputed Facts*

The parties do not dispute the basic facts relevant to the breach of contract claim. Both parties agree that a contract was entered into and the transaction contemplated therein was never completed. What the parties do dispute, however, is the meaning of the allegations contained in Plaintiffs' Fifth Cause of Action. Defendants argue that the Fifth Cause of Action only states a breach of contract claim and therefore the damages should be limited on summary judgment to those contemplated by the Contracts.[11] Plaintiffs counter that summary judgment is inappropriate as to the issue of damages because the Fifth Cause of Action, which admittedly contains allegations of a breach of contract, additionally sets forth non-contractual claims of fraudulent misrepresentation, bad faith, self-dealing, and other unconscionable acts committed by Defendants.[12]

The Court notes that discerning the scope of Plaintiffs' Fifth Cause of Action is difficult. In the caption to Plaintiffs' Fifth Cause of Action, Plaintiffs identify several legal wrongs from

---

[9]*See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Southwestern Bell Tel. Co.,* 925 F.2d 1288, 1292 (10th Cir. 1991).

[10]*Baccus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887 (10th Cir. 1991) (quoting *Anderson*, 477 U.S. at 248).

[11]Docket No. 44, at 2; Docket No. 47, at 3 n.2.

[12]Docket No. 45, at 4.

4

which they are seeking redress. However, instead of addressing each of the claims identified in the caption separately, the Complaint then delves into a laundry list of grievances, making no attempt to connect the alleged wrongful conduct to Plaintiffs' legal claims. Plaintiffs leave to the Court the work of combing through these factual allegations and connecting these allegations to the legal wrongs identified in the caption.

While Plaintiffs' Fifth Cause of action is not a model of clarity, Plaintiffs appear to have alleged claims separate and apart from the breach of contract claim. In reviewing the plain language of the Plaintiffs' Fifth Cause of Action, and without passing any judgment as to the sufficiency of these pleadings, it appears that Plaintiffs have alleged fraudulent misrepresentation, bad faith, self-dealing, and unduly subjecting Plaintiffs to risk.[13] As mentioned previously, Defendants did not challenge the sufficiency of these claims in their Motion to Dismiss and the Court has not limited this Cause of Action in any prior order. Thus, Plaintiffs' Fifth Cause of Action stands as written.

Because Plaintiffs' Fifth Cause of Action contains claims beyond breach of contract, the Court finds summary judgment on the issue of damages inappropriate at this time and denies the Motion for Partial Summary Judgment.

3.   *Equitable Lien*

As Defendants' Motion for Summary Judgment is premised on the assumption that breach of contract is the only remaining issue, the Court need not address Defendants' arguments

---

[13]Docket No. 1, at 10.

against the equitable lien for purposes of the Motion for Summary Judgment. However, this issue is at the heart of the Petition to Nullify and will, therefore, be discussed in detail below.

B.  PETITION TO NULLIFY WRONGFUL LIEN AND FOR AN INJUNCTION

Defendant Paladin petitions the Court to nullify Plaintiffs' Notice of Interest which Plaintiffs recorded on or about July 17, 2008. Pursuant to Utah Code Ann. §§ 38-9-7 and 38-9a-202, Paladin argues that Plaintiffs' recorded Notice of Interest constitutes a wrongful lien and requests the Court: (1) nullify the Notice of Interest as void ab initio, (2) issue an injunction against Plaintiffs from making, uttering, recording, or filing any further such liens without permission of the Court, (3) award Paladin its attorney fees and costs incurred in bringing this petition, and (4) award Paladin the greater of statutory or treble actual damages.

   1.  *Wrongful Lien*

Pursuant to Utah Code Ann. § 38-9-7, "[a]ny record interest holder of real property against which a wrongful lien as defined in Section 38-9-1 has been recorded may petition the district court in the county in which the document was recorded for summary relief to nullify the lien."[14] Moreover, pursuant to Utah Code Ann. § 38-9a-201, "[a]ny person who believes that he or she is the victim of a wrongful lien may file a verified written petition for a civil wrongful lien injunction against the person filing, making, or uttering the lien . . . ."

---

[14] As noted previously, Paladin first filed its Petition to Nullify in the Third District Court, State of Utah, where the Subject Property is located. The state court judge dismissed the petition without prejudice and directed Paladin, in the interest of judicial economy, to bring its petition before this Court. Docket No. 49, at 2 and Ex. A.

A wrongful lien is defined as:

[A]ny document that purports to create a lien, notice of interest, or encumbrance on an owner's interest in certain real property and at the time it is recorded or filed is not:
    (a) expressly authorized by this chapter or another state or federal statute;
    (b) authorized by or contained in an order or judgment of a court of competent jurisdiction in the state; or
    (c) signed by or authorized pursuant to a document signed by the owner of real property.[15]

Central to the parties dispute is whether Plaintiffs' Notice of Interest was filed pursuant to a Utah statute. Plaintiffs argue that their Notice of Interest was filed pursuant to Utah Code Ann. § 57-9-4(1), which directs "[a]ny person claiming an interest in land" to record a notice of the claimed interest against the property. Thus, Plaintiffs argue, the Notice of Interest was authorized by state law and therefore not wrongful. Paladin contends that Section 57-9-4(1) does not apply because the Contracts at issue did not convey any "interest in land," but rather memorialized an agreement to convey the property at a later date.

As is apparent from the parties respective positions, deciding this issue hinges on whether Plaintiffs' alleged interest is properly classified as an interest in land. As stated by the Utah courts, whether a party's "interest is an interest in land or a contractual right is governed by the Agreement executed by the Parties."[16] Furthermore,

---

[15] Utah Code Ann. § 38-9-1(6).

[16] *Russell v. Thomas*, 999 P.2d 1244, 1247 (Utah Ct. App. 2000) (citing *Atlas Corp. v. Clovis Nat'l Bank*, 737 P.2d 225, 231 (Utah 1987) ("The nature of the interest and rights of its owner must be determined from the provisions of the instrument which created it." (internal quotation marks and citation omitted)).

7

> In determining whether a document purports to convey an interest in land, the court must "focus[ ] on the document to see whether it identified the grantor, the grantee, and the interest granted or a description of the boundaries in a manner sufficient to construe the instrument as a conveyance of an interest in land.[17]

More importantly, as made clear by the *Russell* court, the document itself must purport to convey an interest in land, not defer conveyance to a later date.[18] In *Russell*, the agreement at issue stated that the trust deed in favor of the buyer would "be recorded after the closing" of the buyer's financing arrangements. The court found that "[u]nder the plain, unambiguous language of the Agreement, defendants do not have an interest in land, but an agreement that plaintiffs will grant defendants an interest in the [property] at some future time."[19]

Turning to the agreement at issue in this dispute, it appears that the Contracts likewise merely manifest an agreement to convey the Subject Property at some future time. In paragraph 10.1, the Contracts state that "seller represents that Seller has fee title to the Silver Star Residence and will convey marketable title to Buyer at closing by Special Warranty."[20] Thus, like the agreement in *Russell*, the plain language of the contract suggests that conveyance of an interest in land was to occur at a later date, not by execution of the Contracts themselves. Moreover, the Contracts in this dispute give the buyer the express right to cancel the contract if

---

[17]*Id.* at 1247-48 (quoting *Rocky Mountain Energy v. Utah State Tax Comm'n*, 852 P.2d 284, 286 (Utah 1993)).

[18]*See id.* at 1248.

[19]*Id.*

[20]Docket No. 49, Ex. B.

certain conditions are not satisfied.[21] Thus, the execution of the Contracts alone could not create an interest in land because conveyance would never occur unless these conditions precedent were satisfied.

Plaintiffs dispute the applicability of *Russell* and argue that, under the doctrine of equitable conversion, "once parties have entered into a binding and enforceable land sale contract, the buyer's interest in the contract is said to be real property . . . ."[22] Plaintiffs appear to argue that although the Contracts do not explicitly grant them an interest in land, they nonetheless have an equitable interest in the property under the doctrine of equitable conversion. However, as noted by the Court in *Russell*, the doctrine of equitable conversion is of questionable applicability because the Contracts at issue in this dispute "do[] not purport to convey an interest in property, but contains a qualified promise to do so at a later time."[23]

Moreover, the doctrine of equitable conversion, and the *Cannefax* case cited in support of this argument, do not appear to be applicable to the Contracts at issue in this dispute. The doctrine of equitable conversion is typically invoked to protect the interest of a buyer in a seller-financed transaction once the parties have substantially performed an executory contract.[24] Under this doctrine, once the contract is executed by the parties, "the buyer's interest in the contract is said to be real property and the seller's retained interest is characterized as personal

---

[21] *See id.* at Ex. B ¶¶ 7-8.

[22] *Cannefax v. Clement*, 786 P.2d 1377, 1379 (Utah Ct. App. 1990).

[23] *Russell*, 999 P.2d at 1248 n.10.

[24] *See Cannefax*, 786 P.2d at 1379-80.

9

property."[25] The wisdom of this doctrine is clear in situations where, such as in *Cannefax*, the buyer has made all payments to seller in reliance of obtaining clear title to only later learn of some alleged encumbrance on the property which occurred while payments were still being made.[26] In such situations, courts will construe the buyers interest as an equitable interest in the land, while the seller only retains an interest in the proceeds.[27] Thus, at its core, the doctrine of equitable conversion is a tool of equity to protect a party from abuses a contract would leave otherwise unremedied.

The Contracts at issue in this dispute do not fit within the contours of the doctrine of equitable conversion. Unlike the contract in *Cannefax*, the Contracts in this dispute did not create an unqualified right to the property, but rather only a qualified right to close on the property at a later date. Moreover, it appears that the Contracts themselves have anticipated the breach alleged to have occurred in this dispute and therefore provides an appropriate remedy.[28] Utah courts have made clear that the doctrine of equitable conversion "cannot be invoked to alter contractual commitments made by the parties . . . ."[29] Thus, Plaintiffs' appeal to equity seems misplaced given the fact that, to find the doctrine of equitable conversion applies, the Court would have to disregard the remedies available under the Contracts.

---

[25]*Id.* at 1379.

[26]*See id.* at 1379-83.

[27]*See id.*

[28]*See* Docket No. 49, Ex. B at ¶ 16.

[29]*Reynolds v. Van Wagoner*, 592 P.2d 593, 594 (Utah 1979).

In summation, because the Court finds that the plain language of the Contracts do not create an interest in land, and that the doctrine of equitable conversion is inapplicable to this dispute, the Court finds that Plaintiffs' Notice of Interest was not authorized by Utah law and is therefore a wrongful lien pursuant to Utah Code Ann. § 38-9-1. Therefore, pursuant to Utah Code Ann. § 38-9-7, the Court orders that Plaintiffs' Notice of Interest be nullified. Furthermore, pursuant to Utah Code Ann. § 38-9a-204, the Court enters a civil wrongful lien injunction against Plaintiffs from filing, making, or uttering further liens against Defendant Paladin.

2.  *Damages*

Because the Court finds that the lien was wrongfully recorded, the Court is authorized under Utah law to enter damages against Plaintiffs. At the request of the parties, however, the Court will reserve ruling on the issue of damages until later proceedings.

### III. CONCLUSION

It is therefore

ORDERED that Defendants' Motion for Partial Summary Judgment on Issue of Damages (Docket No. 43) is DENIED. It is further

ORDERED Defendant Paladin's Verified Petition to Nullify Wrongful Lien and for a Civil Wrongful Lien Injunction (Docket No. 49) is GRANTED.

DATED   October 14, 2010.

BY THE COURT:

_____
TED STEWART
United States District Judge