**WRONA LAW FIRM, P.C.**
Joseph E. Wrona (#8746)
Timothy R. Pack (#12193)
1745 Sidewinder Drive
Park City, Utah 84060
Telephone:  (435) 649-2525
Facsimile:  (435) 649-5959
Attorneys for Defendants Joseph Wrona and
Wrona Law Offices.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JAMES DE MARCO; CHERYL DE MARCO; GEORGE DE MARCO; JEFFREY OTT; NANCY OTT; SLOPESIDE PROPERTIES; LLC and JOHN/JANE DOES 26-50, | **MEMORANDUM IN SUPPORT OF DEFENDANTS JOE WRONA AND WRONA LAW'S MOTION FOR RULE 11 SANCTIONS** |
| Plaintiffs, | |
| vs. | Case No. 2:09cv00190 |
| MICAHEL LAPAY, HEATHER PETERSON, CARRIE SHOAF, DUSTY ORRELL, KEELIE WEST, DICK STONER, as individuals and/or as agents for Prudential Utah Real Estate; PRUDENTIAL UTAH REAL ESTATE; PALADIN DEVELOPMENT PARTNERS, LLC, a Utah limited liability company; MICHAEL LAPAY, RORY MURPHY, GEORGE BRYANT, and CHRISTOPHER CONABEE, as individuals and/or as agents and/or as managers of Paladin Development Partners, LLC; ORCO CONTRACTING, LLC; WILLIAM R. OKLAND; BRETT J. OKLAND; PREMIER RESORTS aka DEER VALLEY LODGING, JOE WRONA individually and WRONA LAW OFFICES, PC and JOHN/JANE DOES 1-25, | Judge: Ted Stewart |
| Defendants. | |

Defendants Joe Wrona ("Wrona") and Wrona Law Offices, P.C. ("Wrona Law") (collective referred to herein as "Defendants"), pursuant to Rule 11 of the Federal Rules of Civil Procedure, hereby submit their Memorandum in Support of their Motion for Rule 11 Sanctions against Plaintiff's counsel Thomas J. Klc ("Klc"), Klc's law firm, and any others who are responsible for the violation of Rule 11(b) FED. R. CIV. P.

## INTRODUCTION

The Plaintiffs in this case retained Wrona Law several years ago to attempt to negotiate a settlement of their dispute with Paladin Partners, LLC, the primary defendant in this action. During the initial consultation, Wrona Law informed Plaintiffs that Wrona Law had previously served as legal counsel to Prudential Utah Real Estate ("Prudential") and that Wrona Law would not be comfortable asserting claims against Prudential. Plaintiffs assured Wrona Law that Plaintiffs had no desire to pursue claims against Prudential, and Plaintiffs pressured Wrona Law to represent Plaintiffs in settlement negotiations with Paladin. Wrona Law thereafter represented Plaintiffs in those settlement negotiations but withdrew when Plaintiffs refused to pay Wrona Law's invoices for services rendered. Wrona Law was eventually forced to file a collection action and obtain a judgment against Plaintiffs. The Plaintiffs retaliated by naming Joe Wrona and Wrona Law as defendants in the present action.

The Court should impose sanctions against Klc because Klc has alleged facts against Wrona and Wrona Law that do not have any evidentiary support and are discredited by even the most superficial inquiry. For example, Klc alleges that Wrona was or is the principal real estate broker of Defendant Prudential Utah Real Estate ("Prudential"). Wrona long ago provided Klc with clear and undisputable evidence that Wrona has never been employed by Prudential as an

agent or broker. Wrona has never acted as the principal broker of Prudential, Wrona has never even held a real estate agent's or real estate broker's license, and Wrona certainly is not doing business as Prudential. Klc nonetheless refused to withdraw his false allegations against Wrona.

Klc also alleges that Wrona and Wrona Law committed professional malpractice in their capacities as attorneys for the Plaintiffs because Wrona had formerly represented Defendant Prudential.  Klc asserts this claim despite the fact that Wrona Law disclosed its former representation of Prudential in writing to Plaintiffs, and Plaintiffs thereafter pressed Wrona Law to undertake Plaintiffs' representation and even went so far as to sign an agreement acknowledging that Wrona Law had previously represented Prudential.

Klc failed to reasonably investigate the facts and law prior to making these inflammatory and false allegations, and Klc thereafter refused to withdraw his bogus allegations after being provided with definitive evidence that the allegations were false.  Accordingly, this Court should impose appropriate sanctions on Klc pursuant to Fed. R. Civ. P. 11(c), including:

      a.  Awarding Wrona and Wrona Law's  costs and fees associated with responding to Plaintiffs' Complaint;

      b.  Awarding Wrona and Wrona Law's costs and fees associated with producing evidence of Klc's false allegations and Wrona and Wrona Law's communication of such evidence to Klc;

      c.  Awarding Wrona and Wrona Law's costs and fees associated with the instant motion;

      d.  Awarding Wrona and Wrona Law's any other costs and fees they  have incurred as a result of Klc's false allegations;

e.   Issuing an order dismissing in their entirety all claims against Wrona and Wrona

Law; and

f.   Any such other and further relief this Court deems appropriate.

## STATEMENT OF FACTS

1.      The Plaintiffs are individuals and entities which constitute a group of speculative

purchasers of real estate who entered into a series of contracts to purchase units in the Silver Star

project located in Park City, Utah, at a time when the Park City real estate market was rapidly

inflating in value.  (*See* Affidavit of Joseph Wrona ("Aff. of Wrona") at ¶ 3, attached hereto as

Exhibit A).

2.      When the Park City real estate market began rapidly declining in the late summer

of 2008, Plaintiff Cheryl De Marco ("C. De Marco") contacted Wrona and asked Wrona to

represent the Plaintiffs in an effort to escape from some but not all the Plaintiffs' contracts for

the purchase of the Silver Star units. (Aff. of Wrona, ¶ 4);

3.      During that telephone call, Wrona informed C. De Marco that Wrona had

previously provided legal services to Prudential Utah Real Estate ("Prudential"), and that despite

the fact that Wrona had not performed any particular legal services for Prudential that pertained

to Silver Star Project sales to Plaintiffs, that Wrona was nonetheless uncomfortable representing

C. De Marco if C. De Marco intended to assert any claims against Prudential. (Aff. of Wrona, ¶

5).

4.      C. De Marco responded to Wrona during that telephone call by confirming that

the Plaintiffs wanted to retain Wrona's services to negotiate a resolution with Paladin

Development Partners, LLC ("Paladin"), and that the Plaintiffs did not desire or intend to assert

claims against Prudential. (Aff. of Wrona, ¶ 6).

4

5.    During the same telephone call, Wrona emphasized to C. De Marco that the cost of litigating construction defect claims would be extremely expensive and that in Wrona's opinion it would be far more cost effective to negotiate a compromise with Paladin. (Aff. of Wrona, ¶ 7).

6.    Plaintiff Jeffrey Ott then telephoned Wrona the next day, and an identical discussion ensued between Wrona and Jeffrey Ott. (Aff. of Wrona, ¶ 8).

7.    C. De Marco and Jeffrey Ott then caucused and agreed with Wrona's recommendation, and on September 29, 2008, the Plaintiffs executed a Representation Agreement with Wrona Law that explicitly stated that Wrona Law had disclosed its prior relationship with Prudential, and that Wrona Law had no interest in this instance in representing the Plaintiffs in a manner that was adverse to Prudential. (Aff. of Wrona, ¶ 9)  (A copy of the Representation Agreement is attached hereto as Exhibit B).

8.    The Representation Agreement signed by Plaintiffs states in the opening paragraph:

> "You have asked Wrona Law Offices, P.C. to represent you in a dispute with the developers of the Silver Star Project in Park City, Utah. I spoke with Cheryl via telephone about the dispute, and I have also spoken to Jeff about the dispute. I have disclosed both times that I formerly served as general legal counsel to Prudential Utah Real Estate. You are aware that Michael LaPay is a Prudential agent and that Mr. LaPay was the listing agent for the Silver Star project. Unless and until it appears that a legitimate claim exists against Mr. LaPay and/or Prudential, I am able to represent you in this matter pursuant to the terms set forth below:"

(Ex. B – Representation Agreement).

9.    At the direct request of the Plaintiffs, Wrona then began negotiating with Paladin to resolve Plaintiffs' dispute, and Wrona obtained a proposed solution from Paladin that Wrona extended to the Plaintiffs for consideration. (Aff. of Wrona, ¶ 10).

10. The Plaintiffs rejected Paladin's proposed solution and all subsequent modifications to that proposed solution, and at the same time the Plaintiffs began ignoring their payment obligations to Wrona Law. (Aff. of Wrona, ¶ 11).

11. On December 21, 2008, Wrona Law informed the Plaintiffs that Wrona Law needed to withdraw as their legal counsel. (Aff. of Wrona, ¶ 12).

12. Wrona Law thereafter was forced to press the Plaintiffs to consent to withdrawal, and the Plaintiffs finally consented on January 7, 2009. (Aff. of Wrona, ¶ 13).

13. Wrona Law reminded the Plaintiffs that they owed Wrona Law $4,073.33 in legal fees, and Wrona Law even offered to accept $2,817.50 as payment in full. (Aff. of Wrona, ¶ 14).

14. The Plaintiffs responded in writing to Wrona Law's offer by stating, "OK" in a reply email, and Wrona Law thereafter issued an invoice for the reduced amount of $2,817.50 in a good faith effort to get the matter resolved. (Aff. of Wrona, ¶ 15; see also E-mail correspondence between Wrona and Jeff Ott dated January 7, 2009 and January 8, 2009 attached hereto as Exhibit C).

15. Despite having agreed to pay Wrona Law the reduced amount of $2,817.50, the Plaintiffs then attempted to shave an additional $1,000.00 by issuing payment to Wrona Law in the amount of $1,817.50, and thereafter refusing to pay Wrona Law the remaining $1,000.00 due. (Aff. of Wrona, ¶ 16).

16. Wrona Law thereafter attempted to convince the Plaintiffs to fulfill their payment obligation, and Wrona Law invited the Plaintiffs to pay the agreed upon amount. (Aff. of Wrona, ¶ 17).

17. When Plaintiffs refused to pay Wrona Law, Wrona Law filed a collection action on February 2, 2009, to recover the full amount owed by the Plaintiffs. (Aff. of Wrona, ¶ 18).

6

18.    Wrona Law eventually obtained a judgment against the Plaintiffs. (Aff. of Wrona, ¶ 19); (A copy of the judgment is attached hereto as Exhibit D).

19.    Plaintiffs retaliated against Wrona and Wrona Law by filing a Complaint in this action that falsely alleges that:

   a.   Wrona is a licensed and registered real estate broker (Complaint, ¶¶ 3, 62, 90, 100).

   b.   Wrona is the principal broker for Prudential. (*See* Complaint, ¶¶ 3, 62, 90, 100).

   c.   Wrona is the owner of Prudential. (Complaint, ¶ 21).

   d.   Wrona and Wrona Law committed professional malpractice in their capacities as attorneys for the Plaintiffs because Wrona had formerly represented Defendant Prudential. (*See* Complaint, ¶¶ 90-101).

20.    In response to these allegations, and before filing an answer in this action, Wrona sent Klc a letter dated March 30, 2009, and that letter confirmed that Wrona was not a real estate agent or broker, was not a real estate broker for Prudential, was never any employee or shareholder in Prudential, and was not doing business as Prudential. (Aff. of Wrona, ¶ 20) (A copy of the March 30, 2009 Letter is attached hereto as Exhibit E).

21.    Wrona's March 30, 2009 Letter included the following documents as evidence:

   a.   Certified Record from the Utah Division of Real Estate confirming that Dougan T. Jones acted as the principal broker of Prudential from 2002 to the date of the letter;

   b.   A Certificate of Fact issued by the Utah Department of Commerce confirming that Prudential was a dba registered by Extreme Holding, LLC;

c. Letter dated March 11, 2009, from Keith W. Mead, registered agent for Prudential, confirming that Wrona is not the registered agent for Prudential, and that Wrona is not doing business as Prudential.

22.    Klc could have easily discovered that Wrona was not a licensed and registered real estate broker by either conducting a simple license search on the Utah Division of Real Estate's website, or by contacting the Utah Division of Real Estate. (Aff. of Wrona, ¶ 21).

23.    Klc could have easily discovered that Wrona was not doing business as Prudential by placing a simple phone call to the Utah Division of Corporations, or by conducting a quick entity search on its website. (Aff. of Wrona, ¶ 22).

24.    Klc failed to withdraw or correct his false allegations when Wrona and others notified him of the inaccuracy of Klc's allegations. (Aff. of Wrona, ¶ 23).

25.    Klc has still failed to withdraw or correct his false allegations after being served with a copy of this Motion pursuant to Rule 11(c)(2) Fed. R. Civ. Pro. (*See* Certificate of Service attached hereto).

## CIVIL RULE 11 STANDARDS

The core of Civil Rule 11 is that the signer of a document is certifying that "after reasonable inquiry [the pleading, motion, or other paper] is well grounded in fact and is warranted by existing law." *Bus. Guides, Inc. v. Chromatic Communs. Enters.*, 498 U.S. 533, 541 (U.S. 1991). Civil Rule 11 requires that "allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. Pro. Rule 11(b)(3). Rule 11 also requires that a paper not be "presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." *Id.* at 11(b)(1). Rule 11

makes every signature on a pleading, motion or other paper a certification of the merits of the documents signed and authorizes sanctions for violation of the certification. *Id.* at 11(b). The signing party has "an affirmative duty to conduct a reasonable inquiry into the facts and the law before filing." *Bus. Guides, Inc.* at 551.

"If . . . the court determines that [Rule 11(b)] has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated subdivision (b) or are responsible for the violation." *Kearney v. Dimanna,* 195 Fed. Appx. 717, 722 (10th Cir. 2006). "Each claim must be individually evaluated and the merit, or potential merit, of one legal claim does not diminish the command of Rule 11 that *each* claim have the necessary legal support." Id. at 723. (emphasis in original). "In deciding whether to impose Rule 11 sanctions, a district court must apply an objective standard" to the party's wrongful conduct. *Dodd Ins. Servs, v. Royal Ins. Co.,* 935 F.2d 1152, 1155 (10th Cir. Colo. 1991).

## ARGUMENT

**I.    THE COURT SHOULD IMPOSE SANCTIONS ON KLC FOR FAILING TO CONDUCT A REASONABLE INQUIRY INTO THE FACTS, AND FAILING TO WITHDRAW THE ALLEGATIONS AND CLAIMS KLC KNOWS TO BE FALSE.**

Klc has violated Civil Rule 11(b)(3) by failing to conduct a reasonable inquiry into the facts before filing claims against Wrona and Wrona law, and by alleging factual contentions that do not have any evidentiary support. "[T]he meaning of the Rule seems plain: A party who signs a pleading or other paper without first conducting a reasonable inquiry shall be sanctioned." *Bus. Guides, Inc. v. Chromatic Communs. Enters.,* 498 U.S. 533, 541 (U.S. 1991).

The evidence shows that Klc alleged false statements of fact. In the Fourth Cause of Action of the Complaint, Klc alleges that Wrona, in his capacity as a principal broker for

Prudential, breached a duty owed to the Plaintiffs and committed professional malpractice. (Complaint, ¶¶ 61 – 64).  In addition, Klc alleged that Wrona is registered as doing business as Prudential. (Complaint, ¶ 21).  These allegations are patently false as the Certified Record from the Utah Division of Real Estate proves that Wrona was not the principal broker of Prudential; and the Certificate of Fact issued by the Utah Department of Commerce as well as the March 11, 2009 Letter from Keith Meade, confirm that Prudential was a dba registered by Extreme Holding, LLC. (Ex. E – March 30, 2009 Letter).

Klc's inquiry into the facts, if any, was objectively unreasonable because the allegations are disproved by even the most superficial enquiry into public record and/or state agencies.  A quick and simple phone call or internet search to the Utah Division of Real Estate and the Utah Division of Corporations and Commercial Code, would have easily demonstrated that Wrona was not: (1) a real estate agent; (2) a real estate broker; (3) the principal broker for Prudential; and (4) that Wrona was not the owner of Prudential and did not hold any rights to the "Prudential" business name.  Therefore, Klc violated Rule 11(b)(3) by failing to conduct a reasonable inquiry into the facts. *See Goff v. Utah Funding Commer., Inc.*, 2009 U.S. Dist. LEXIS 112098 (D. Utah 2009) (unpublished) (stating that "a reasonable and competent attorney would collect all" relevant information before filing suit.).

Even if Klc acted out of ignorance when he drafted the Complaint, Klc violated Rule 11(b)(3) when he failed to withdraw the allegations after being provided with incontrovertible evidence that the allegations were false.   Indeed, Klc has exacerbated his violations by continuing to refuse to withdraw his false allegations. (*See Monument Builders of Greater Kansas City, Inc. v. American Cemetery Ass'n*, 891 F.2d 1473, 1484 (10th Cir. Kan. 1989) (stating that Plaintiff's Rule 11(b) violations were "exacerbated" by its "failure to improve its

complaint when it was given an opportunity to amend.").

In *Lauser v. City College of San Francisco*, "the district court properly imposed Rule 11 sanctions on plaintiff's counsel because he submitted a complaint that was not warranted by existing law and failed to conduct a reasonable inquiry after he was informed by opposing counsel that the complaint was baseless." *Lauser v. City College of San Francisco*, 359 Fed. Appx. 755, 756 (9th Cir. Cal. 2009). In *Shelton v. Ernst & Young, LLP*, the award of Rule 11 sanctions was affirmed when "Plaintiff's counsel failed to conduct a reasonable inquiry into the relevant facts and law concerning the Title VII claims, even after Defendants' counsel specifically informed Plaintiff's counsel, [by letter], of the inherent problems with [the] claims" and when "Plaintiff's counsel had an opportunity to withdraw [the] claims. . . ." *Shelton v. Ernst & Young, LLP*, 143 F. Supp. 2d 982, 994 (N.D. Ill. 2001). In *Yonkers v. Otis Elevator Co.*, a trial court's Rule 11 sanctions were upheld because Plaintiff's counsel failed to withdraw its fraud claims after Plaintiff discovered they were groundless. *Yonkers v. Otis Elevator Co.*, 844 F.2d 42, 49 (2d Cir. N.Y. 1988).

Applying the case law to the facts in this case, Klc violated Rule 11(b)(3) when he failed to withdraw his false allegations after Wrona indisputably proved, through the March 30, 2009 Letter to Klc, that Wrona was not: (1) a real estate agent; (2) a real estate broker; (3) the principal broker for Prudential; (4) an owner of Prudential; or (5) the holder of any rights to the "Prudential" business name. (Ex. E – March 30, 2009 Letter). Therefore, not only did Klc exacerbate his initial Rule 11(b)(3) violations by failing to withdraw the false allegations when he knew they were false, Klc also engaged in a separate and subsequent violation of Rule 11(b)(3) by refusing to withdraw his allegations once Wrona provided Klc with proof that his

11

allegations were false.  Therefore, the Court should impose sanctions on Klc pursuant to Rule 11(b)(3).

## II.   THE COURT SHOULD IMPOSE SANCTIONS ON KLC FOR BRINGING THE LEGAL MALPRACTICE CLAIM AGAINST WRONA BECAUSE IT IS NOT WARRANTED BY EXISTING LAW OR FACTS.

Plaintiffs' Sixth Cause of Action in the Complaint against Wrona and Wrona Law for professional malpractice is without evidentiary support and is not warranted by existing law. Not only did Klc have a duty to conduct a reasonable inquiry into the factual basis for his claims, he also had a duty to conduct a reasonable inquiry into the legal basis as well. *See Bus. Guides, Inc. v. Chromatic Communs. Enters.*, 498 U.S. 533, 551 (U.S. 1991).

The essence of Klc's claim is that Wrona was somehow prohibited from representing the Plaintiffs in connection with the Silver Star Project because Wrona had formerly represented Defendant Prudential.  Klc states that "Mr. Wrona knew, or should have known, that even with consent and disclosure, Mr. Wrona could not ethically nor legally represent PLAINTIFFS, but agreed to do so anyway." (Complaint, ¶ 95). This contention made by Klc is not warranted by existing law, nor is it supported by the facts.  Rule 1.9(a) of the Utah Rules of Professional Conduct states that:

> "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing."

(Rule 1.9(a) Utah Rules of Professional Conduct).

Wrona has never represented Prudential in the "matter" that is before the Court, i.e., the sale of Silver Star units to the Plaintiffs. (*See* Aff. of Wrona, ¶ 5).  Klc does not even allege that Wrona ever represented Prudential in the sales of the Silver Star units to the Plaintiffs. Moreover,

Wrona disclosed to the Plaintiffs that he had formerly represented Prudential in two initial

telephone conversations and in the Representation Agreement signed by the Plaintiffs.   The

Representation Agreement states:

> "I spoke with Cheryl via telephone about the dispute, and I have also spoken to
> Jeff about the dispute.   I have disclosed both times that I formerly served as
> general legal counsel to Prudential Utah Real Estate.   You are aware that Michael
> LaPay is a Prudential agent and that Mr. LaPay was the listing agent for the Silver
> Star project.   Unless and until it appears that a legitimate claim exists against Mr.
> LaPay and/or Prudential, I am able to represent you in this matter pursuant to the
> terms set forth below:"

(Ex B. – Representation Agreement).   Klc deliberately ignored the existence of the written

disclosure and the fact that Plaintiffs gave their written consent. Klc likewise ignored the black

letter ethical rule set forth in Rule 1.9(a) of the Utah Rules of Professional Conduct.

In *Goff v. Utah Funding Commer., Inc.*, the plaintiff sued the defendants for failing to

comply with the Truth in Lending Act (TILA) after defendants made multiple loans to the

plaintiff. *Goff v. Utah Funding Commer., Inc.*, 2009 U.S. Dist. LEXIS 112098 (D. Utah 2009)

(unpublished).   Defendants responded to the plaintiff's claim by filing a Rule 11 Motion on the

basis that plaintiff's claim was frivolous because the loans in questions were commercial, and

TILA only applied to consumer loans. *Id.*   The Court held that "plaintiff's counsel failed to

conduct a reasonable inquiry into the claims asserted by his client and as a result filed written

motions and supporting memoranda not grounded in fact and not warranted by law."   The Court

reasoned that:

> "[t]he lack of facts supporting the arguments made by plaintiff's counsel was
> indicative of the lack of research plaintiff's counsel conducted in this case . . .
> TILA applies only to consumer loans. It does not apply to loan transactions
> entered for a commercial purpose . . . all the evidence presented in this case
> indicated that the transaction at issue was a commercial transaction . . . At
> minimum, a reasonable and competent attorney would collect all documentation
> of a loan before challenging its legality. More specifically, a reasonable and

> competent attorney reviewing the loan documentation available in this case,
> which included a statement of commercial purpose, could not conclude that the
> loan was a consumer loan without relying on additional evidence that in some
> way contradicted the plain language of these loan documents; accordingly, a
> reasonable and competent attorney would conclude that a TILA violation claim
> was not supported by the facts or warranted by law. Therefore, the court
> concludes that by filing a complaint alleging TILA violations in this court,
> [plaintiff's] counsel violated Rule 11(b).

*Id.; see also Invst Fin. Group v. Chem-Nuclear Sys.*, 815 F.2d 391, 403 (6th Cir. Mich. 1987)

(upholding award of sanctions when a cursory review of Fed. R. Civ. P. 12 would have shown

the "motion to dismiss for insufficiency of service of process had clearly been waived and was

expressly prohibited as untimely by the Federal Rules of Civil Procedure."); *Robinson v.*

*National Cash Register Co.*, 808 F.2d 1119, 1131 (5th Cir. Tex. 1987) (upholding award of

sanctions when the doctrine of res judicata "clearly barred" plaintiff's suit and when a

"reasonable inquiry by [the plaintiff] would have made [that] obvious.")

In *Goff*, the Court stated that "[a]t minimum, a reasonable and competent attorney would

collect all" relevant information concerning his claim. *See Goff v. Utah Funding Commer., Inc.*

2009 U.S. Dist. LEXIS 112098 (D. Utah 2009) (unpublished). Klc's conduct does not meet this

standard because Klc made no reasonable inquiry into Rule 1.9(a) of the Utah Rules of

Professional Conduct or the language of the Plaintiffs' Representation Agreement with Wrona

Law.  If he had, Klc would have realized that: (1) Wrona Law clearly disclosed its prior

representation; (2) Wrona Law documented its disclosure of prior representation: (3) the

Plaintiffs acknowledged the disclosure in writing; and (4) RPC 1.9(a) provided the applicable

test for Wrona Law's conduct.  Thus, Klc has violated Rule 11(b)(2) Fed R. Civ. Pro., and the

Court should impose appropriate sanctions.

III.   **THE COURT SHOULD IMPOSE SANCTIONS ON KLC FOR PRESENTING CLAIMS AGAINST WRONA AND WRONA LAW FOR AN IMPROPER PURPOSE.**

The claims against Wrona and Wrona law were not made in good faith, but instead were brought to retaliate against Wrona Law and obtain revenge after Wrona Law sued the Plaintiffs for unpaid fees. (*See* Ex. D - Judgment).   Civil Rule 11 requires that a paper not be "presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. Pro. Rule 11(b)(1).   "A failure to make reasonable inquiry and a failure to make claims cognizable under the law can support a determination of an improper purpose under Rule 11." *Bowles Fin. Group v. Stifel, Nicolaus & Co.*, 1994 U.S. App. LEXIS 22897 (10th Cir.1994) (unpublished).

The fact that Klc assisted Plaintiffs in asserting bogus claims against Wrona and Wrona Law after Wrona Law took action to collect its fees from Plaintiffs, combined with the fact that Klc refused to retract those claims after being presented with evidence of their falsity, confirms that Klc's motive is to harass Wrona and Wrona Law.   Therefore, the court should impose sanctions on Klc for presenting his claims for an improper purpose.

## CONCLUSION

Klc leveled very serious allegations of misconduct against Wrona and Wrona Law.   The allegations are not only patently absurd, they are contradicted by easily obtainable public information or documents in the Plaintiffs' possession.   But instead of abiding by Civil Rule 11, Klc chose instead to file claims against Wrona Law in revenge for Wrona Law's decision to pursue a collection action against the Plaintiffs.   Accordingly, this Court should impose appropriate sanctions on Klc and Klc's law firm pursuant to Fed. R. Civ. Pro 11(c), including:

a.  Awarding Wrona and Wrona Law's  costs and fees associated with responding to
Plaintiffs' Complaint;

b.  Awarding Wrona and Wrona Law's  costs and fees associated with producing
evidence of Klc's false allegations and Wrona and Wrona Law's  communication
of such evidence to Klc;

c.  Awarding Wrona and Wrona Law's costs and fees associated with the instant
motion;

d.  Awarding Wrona and Wrona Law any other costs and fees Wrona and Wrona
Law  have incurred as a result of Klc's false allegations;

e.  Issuing an order dismissing in their entirety all claims by Plaintiffs against Wrona
and Wrona Law; and

f.  Any such other and further relief this Court deems appropriate.

DATED this 8th day of October, 2010.

WRONA LAW FIRM, P.C.

/s/ Timothy R. Pack

_____

Timothy R. Pack
Attorneys for Joseph E. Wrona
and Wrona Law Firm, P.C.

## CERTIFICATE OF SERVICE

I hereby certify that on this ___8th___ day of October, 2010, I mailed, via first class mail,

postage prepaid, and emailed, a true and correct copy of the foregoing document to:

Thomas J. Klc
Thomas J. Klc & Associates
4725 South Holladay Blvd., #110
Salt Lake City, Utah 84117-5402

tomklc@prodigy.net

17

**CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of November, 2010, I mailed, via first class mail, postage prepaid, and emailed, a true and correct copy of the foregoing **CERTIFICATE OF SERVICE** to:

Thomas J. Klc
Thomas J. Klc & Associates
4725 South Holladay Blvd., #110
Salt Lake City, Utah  84117-5402
tomklc@prodigy.net

Alex B. Leeman
John A. Snow
1790 Bonanza Dr., #E250
Park City, Utah 84060
aleeman@vancott.com

Keith Meade
Cohne Rappaport & Segal
257 E. 200 South, #700
Salt Lake City, Utah 84111
keith@crslaw.com

# EXHIBIT "A"

**WRONA LAW FIRM, P.C.**
Joseph E. Wrona (#8746)
Timothy R. Pack (#12193)
1745 Sidewinder Drive
Park City, Utah 84060
Telephone: (435) 649-2525
Facsimile: (435) 649-5959
Attorneys for Defendants Joseph Wrona and
Wrona Law Offices.

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JAMES DE MARCO; CHERYL DE MARCO; GEORGE DE MARCO; JEFFREY OTT; NANCY OTT; SLOPESIDE PROPERTIES; LLC and JOHN/JANE DOES 26-50, <br><br> Plaintiffs, <br><br> vs. <br><br> MICAHEL LAPAY, HEATHER PETERSON, CARRIE SHOAF, DUSTY ORRELL, KEELIE WEST, DICK STONER, as individuals and/or as agents for Prudential Utah Real Estate; PRUDENTIAL UTAH REAL ESTATE; PALADIN DEVELOPMENT PARTNERS, LLC, a Utah limited liability company; MICHAEL LAPAY, RORY MURPHY, GEORGE BRYANT, and CHRISTOPHER CONABEE, as individuals and/or as agents and/or as managers of Paladin Development Partners, LLC; ORCO CONTRACTING, LLC; WILLIAM R. OKLAND; BRETT J. OKLAND; PREMIER RESORTS aka DEER VALLEY LODGING, JOE WRONA individually and WRONA LAW OFFICES, PC and JOHN/JANE DOES 1-25, <br><br> Defendants. | **AFFIDAVIT OF JOSEPH E. WRONA** <br><br> Case No. 2:09cv00190 <br><br> Judge: Ted Stewart |

STATE OF UTAH      )
                            :ss
COUNTY OF SUMMIT  )

      Joseph E. Wrona, being first duly sworn on his oath deposes and says:

    1.    I am over the age of 18, and competent to testify and have personal knowledge regarding the matter stated in this affidavit.

    2.    I am the owner and manager of Wrona Law Firm ("Wrona Law"), a law firm of 12 attorneys with offices in Park City, Draper and Heber, Utah.

    3.    The Plaintiffs in the above-captioned action (the "Plaintiffs") are individuals and entities which constitute a group of speculative purchasers of real estate who entered into a series of contracts to purchase units in the Silver Star project located in Park City, Utah, at a time when the Park City real estate market was rapidly inflating in value.

    4.    When the Park City real estate market began rapidly declining in the late summer of 2008, Cheryl De Marco ("C. De Marco") contacted me and Wrona Law to represent her and the Plaintiffs in an effort to escape from some but not all the Plaintiffs' contracts for the purchase of Silver Star units.

    5.    During that telephone call, I informed C. De Marco that I had previously provided legal services to Prudential Utah Real Estate ("Prudential"), and despite the fact that I had not performed any particular legal services for Prudential that pertained to the Silver Star Project sales to Plaintiffs, that I was nonetheless uncomfortable representing C. De Marco if C. De Marco intended to assert any claims against Prudential.

    6.    C. De Marco confirmed to me that the Plaintiffs wanted to retain my services to negotiate a resolution with Paladin Development Partners, LLC ("Paladin"), and that the Plaintiffs did not intend to assert claims against Prudential.

7. During the same telephone call, I emphasized to C. De Marco that the cost of litigating construction defect claims would be extremely expensive and that in my opinion it would be far more cost effective to negotiate a compromise with Paladin.

8. Jeffrey Ott then telephoned me the next day, and an identical discussion ensued between myself and Jeffrey Ott.

9. C. De Marco and Jeffrey Ott then caucused and agreed with my recommendation, and on September 29, 2008, the Plaintiffs executed a Representation Agreement with Wrona Law that explicitly stated that Wrona Law had disclosed its prior relationship with Prudential, and that Wrona Law had no interest in this instance in representing the Plaintiffs in a manner that was adverse to Prudential. (A copy of the Representation Agreement is attached hereto as Exhibit A).

10. At the request of the Plaintiffs, I then attempted to negotiate a solution with Paladin, and obtained a proposed solution from Paladin that I extended to the Plaintiffs for consideration.

11. The Plaintiffs rejected that proposed solution and all subsequent modifications to that proposed solution, and at the same time the Plaintiffs fell behind in their payment obligations to Wrona Law.

12. On December 21, 2008, Wrona Law informed the Plaintiffs that it was best if Wrona Law withdrew as their legal counsel.

13. Wrona Law thereafter was forced to press the Plaintiffs to consent to withdrawal, and the Plaintiffs finally consented on January 7, 2009.

14. Wrona Law reminded the Speculative Purchasers that they owed Wrona Law $4,073.33 in legal fees, and Wrona Law offered to accept $2,817.50 as payment in full.

3

15.     The Speculative Purchasers responded in writing to Wrona Law by stating, "OK," and Wrona Law thereafter issued an invoice for the reduced amount of $2,817.50. (*See* E-mail correspondence between Wrona and Jeff Ott dated January 7, 2009 and January 8, 2009, attached hereto as Exhibit B).

16.     Despite having agreed to pay Wrona Law the reduced amount of $2,817.50, the Speculative Purchasers then issued payment to Wrona Law in the amount of $1,817.50, and thereafter refused to pay Wrona Law the remaining $1,000.00 due.

17.     Wrona Law thereafter attempted to convince the Speculative Purchasers to fulfill their payment obligation, and Wrona Law invited the Speculative Purchasers to pay the agreed upon amount.

18.     The Speculative Purchasers refused to pay Wrona Law another cent, and Wrona Law eventually filed a small claim action on February 2, 2009, to recover the full amount owed by the Speculative Purchasers.

19.     Wrona Law eventually obtained a judgment against the Plaintiffs in the amount of $2,405.83.

20.     In response to the allegations against Wrona Law and myself set forth in the Plaintiffs' Complaint in this matter, and before filing an answer in this action, I sent Plaintiffs' attorney, Thomas J. Klc ("Klc"), a letter dated March 30, 2009, and that letter confirmed that I was not a real estate broker, was not a real estate broker for Prudential, was never any employee or shareholder in Prudential, and was not doing business as Prudential.

21.     Klc could have easily discovered that I was not a licensed and registered real estate broker by either conducting a simple license search on the Utah Division of Real Estate's website, or by contacting the Utah Division of Real Estate.

4

22.    Klc could have easily discovered that I was not doing business as Prudential by placing a simple phone call to the Utah Division of Corporations and Commercial Code, or by conducting a quick entity search on its website.

23.    Klc failed to withdraw or correct his false allegations against Wrona Law and myself when I and others notified him of the misrepresentations.

FURTHER AFFIANT SAYETH NOT.



_____
Joseph E. Wrona


SUBSCRIBED AND SWORN to before me this ___8___ day October, 2010.

_____
NOTARY PUBLIC

BRIAN JOYCE
NOTARY PUBLIC - STATE OF UTAH
My Comm. Exp. 11/06/2012
Commission # 576571

5

# EXHIBIT A



WRONA LAW OFFICES
A T T O R N E Y S   A T   L A W

September 25, 2008

**VIA ELECTRONIC MAIL:** jott@biljax.com

Jeff and Nancy Ott
Jim and Cheryl Demarco

*RE:*    *Legal Representation for Silver Star Dispute*

Ladies and Gentlemen:

You have asked Wrona Law Offices, P.C. to represent you in a dispute with the developers of the Silver Start project in Park City, Utah. I spoke with Cheryl via telephone about the dispute, and I have also spoken to Jeff about the dispute. I have disclosed both times that I formerly served as general legal counsel to Prudential Utah Real Estate, and that I am precluded from representing you in litigation against Prudential Utah Real Estate. You are aware that Michael LaPay is a Prudential agent and that Mr. LaPay was the listing agent for the Silver Star project. Unless and until it appears that a legitimate claim exists against Mr. LaPay and/or Prudential, I am able to represent you in this matter pursuant to the terms set forth below:

Fees and Costs. I will be principally responsible for this matter. My rate for such work is $350.00 per hour. Other partners and associates may assist in this matter. Their billing rates for such work range between $175.00 and $350.00 per hour, and our paralegal billing rate for such work is $75.00 to $100.00 per hour. Although rates are subject to change, you will be notified in writing of any such changes. Please note that in addition to our hourly rates you may also be charged for the firm's out of pocket costs incurred (for example, filing documents, photocopying expenses, long distance phone charges).

Billing and Payment. You will be billed monthly and receive a monthly statement for all services rendered and costs incurred during the previous month. Payment is due upon receipt. We reserve the right to charge interest at the rate of eighteen percent (18%) per annum on your account in the event it is not timely paid. Non-payment may also be a basis for terminating our future services. In the event that you do not pay your bill, you will be liable for collection costs, including attorney fees.

1816 Prospector Avenue, Suite 100 ♦ Park City, UT 84060 ♦ Phone 435.649.2525 ♦ Fax 435.649.5959 ♦ www.wasatchlaw.com

Jeff & Nancy Ott
Jim & Cheryl Demarco
*Representation Agreement*
September 25, 2008
Page 2 of 3

Right to Lien. You hereby grant the firm the right to record and foreclose upon a lien against any real property owned by you or any entity in which you have an ownership interest in the amount of any costs and/or fees owed by you to our firm that remain unpaid thirty (30) days after receipt of our invoice.

Waiver and Estoppel Regarding Payment and Services. You acknowledge that this firm is providing legal service to you in reliance on your agreement to pay each monthly invoice in the same month it is issued. You also acknowledge that it is the policy of this firm to stop work when invoices are not paid in full in the same month in which the invoice is generated. You agree that should you have any questions, comments, or objections to any information or calculation of an amount due that is set forth in a particular invoice, you will contact this law firm in writing within ten days of the date the invoice is issued to discuss your question and/or objection. If you fail to contact the firm in writing within this ten day time frame, you acknowledge and agree that you will have deemed the information contained in the invoice as accurate and reasonable and you will at that point waive any right you may possess to challenge the accuracy or reasonableness of that invoice in the future. In the event that the firm continues to perform work for you after the expiration of the ten day notice period, you acknowledge and agree that the firm is performing that work in reliance on your acceptance of the invoice as accurate and reasonable, and you acknowledge and agree you will thereafter be estopped from disputing the information and/or amount due for that invoice. You acknowledge and agree that should you fail to receive an invoice from this firm in a given month, it is your responsibility to contact the firm and request an invoice, and that any failure by you to request an invoice will not excuse you from being bound by the terms of this paragraph.

Retainer. We have agreed that you will provide a retainer in the amount of $5,000.00 to serve as an initial retainer in this matter. Your retainer will be used to pay for fees as they accrue and you will need to replenish the retainer as it becomes necessary. At the conclusion of the matter, the retainer will be applied to any balance owed and any remaining retainer amount will be returned to you.

Results not Guaranteed. This letter confirms that this firm cannot and does not guarantee any particular result to this matter.

Discharge or Withdrawal. The firm reserves the right to withdraw from this matter and discontinue representing you for the following reasons: (1) there is insufficient law in support of your position; (2) you fail to cooperate or timely pay the fees and costs; or (3) any other grounds provided by law. You also have the right to discharge the firm for any reason upon giving us reasonable notice and upon execution of any Substitution of Attorney as may be required. In the event that you terminate our representation, you agree to immediately pay all fees incurred up to the point of termination and that payment is due at the time files are released by our firm. Upon discharge or withdrawal, you agree to pay all earned fees, costs and expenses.

Entire Agreement. This agreement contains the entire agreement of the parties. No other agreement, statement or promise made will be binding on the parties.

Jeff & Nancy Ott
Jim & Cheryl Demaroo
*Representation Agreement*
September 25, 2008
Page 3 of 3

**Severability in Event of Partial Invalidity.** If any provision of this agreement is held in whole or in part to be unenforceable for any reason, then that provision or portion thereof shall be severed and the remainder of the entire agreement and the remainder of that provision shall remain in effect.

**Modification by Subsequent Agreement.** This agreement may be modified by subsequent agreement of the parties only by an instrument in writing signed by both of them or an oral agreement to the extent that the parties carry it out.

If these terms meet with your approval, please sign this letter where indicated and return it to our offices as soon as possible along with a check for your retainer. I appreciate the opportunity to be of service.

Very truly yours,

Joseph E. Wrona

Jeff Ott
Date: 9/29/08

Nancy Ott
Date: _____

Jim Demaroo
Date: _____

Cheryl Demaroo
Date: 9/29/08

# EXHIBIT B

Re: engagement

Joe Wrona

| | |
|---|---|
| **From:** | Ott, Jeff [JOtt@biljax.com] |
| **Sent:** | Thursday, January 08, 2009 9:34 AM |
| **To:** | Joe Wrona |
| **Subject:** | Re: engagement |

Ott:

Jeff Ott

Bil-Jax Haulotte Group

419-445-8915
Jott@biljax.com

www.biljax.com

—— Original Message ——
From: Joe Wrona <wrona@wasatchlaw.com>
To: Ott, Jeff
Sent: Wed Jan 07 18:24:36 2009
Subject: RE: engagement

Jeff:

I am getting ready to send a final invoice.  You owed us $2,817.50 as of the end of November and I sent you an invoice in that amount on 12/1.  I billed $1223 in December that will get tacked on to the new invoice along with $32.83 in interest.  If you will cut us a check for the $2,817.50 that was previously billed on 12/1, I will eat the interest and the $1223 of December billing as a courtesy to wind things up.

Joseph E. Wrona

Wrona Law Offices, P.C.
Park City Office

1816 Prospector Ave., Suite 100

Park City, Utah 84060

Tele: (435) 649-2525

Fax: (435) 649-5959

Cell: (435) 901-1381

Draper Office

11650 South State Street, Suite 103
Draper, Utah 84020

Tele: (801) 676-5252

Fax: (801) 676-5262

email: wrona@wasatchlaw.com

NOTICE. This message and any attachment hereto constitutes a confidential attorney-client communication. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this communication in error, do not read it. Please delete it from your system without copying it, and notify the sender by reply e-mail or by calling (435) 649-2525 so that our address record can be corrected.

CIRCULAR 230 DISCLOSURE: Pursuant to Regulations Governing Practice Before the Internal Revenue Service, any tax advice contained herein is not intended or written to be used and cannot be used by a taxpayer for the purpose of avoiding tax penalties that may be imposed on the taxpayer.

We do not give tax or securities advice or counsel to our clients.  You should seek tax or securities professionals for such advice or counsel.

From: Ott, Jeff [mailto:JOtt@biljax.com]
Sent: Wednesday, January 07, 2009 1:04 PM
To: Joe Wrona
Subject: Re: engagement

Yes wind up. We will provide instructions as to who to forward any amterials to. Thanks.

Jeff Ott

Bil-Jax Haulotte Group

419-445-8915
Jott@biljax.com

www.biljax.com

6/8/2009

Re: engagement

—— Original Message ——
From: Joe Wrona <wrona@wasatchlaw.com>
To: Joe Wrona <wrona@wasatchlaw.com>; Ott, Jeff
Sent: Wed Jan 07 09:42:25 2009
Subject: RE: engagement

Jeff:

Can you please reply to the email I sent you on 12/21?  It is unwise for us to remain in limbo regarding status of ongoing representation.

Joe

From: Joe Wrona
Sent: Sunday, December 21, 2008 8:32 PM
To: 'Ott, Jeff'
Subject: RE: engagement

Jeff:

Given that you are working with other counsel, perhaps it is best if we wind up my firm's representation of your group.  Do I need to transfer any files to your new counsel?

Joe

From: Ott, Jeff [mailto:JOtt@biljax.com]
Sent: Friday, December 19, 2008 8:03 PM
To: Joe Wrona
Subject: Re: engagement

No we are not.  We are considering filing a lawsuit against Paladin as we have previously discussed with you.  We are reviewing this option with other counsel.  We will let you know our decision. But in the meantime please cease all work.  Thank you.

Jeff Ott

Bil-Jax Haulotte Group

419-445-8915
Jott@biljax.com

www.biljax.com

—— Original Message ——
From: Joe Wrona <wrona@wasatchlaw.com>
To: Ott, Jeff
Cc: Angela Fan <angela.fan@verizon.net>
Sent: Fri Dec 19 18:33:05 2008
Subject: RE: engagement

Jeff:

I have not performed work for you in some time.  Are you speaking directly with Paladin?

Joseph E. Wrona

Wrona Law Offices, P.C.
Park City Office

1816 Prospector Ave., Suite 100

Park City, Utah 84060

Tele: (435) 649-2525

Fax: (435) 649-5959

Cell: (435) 901-1381

Draper Office

11650 South State Street, Suite 103
Draper, Utah  84020

Tele: (801) 676-5252

6/8/2009

Re: engagement

Fax: (801) 676-5262

email: wrona@wasatchlaw.com

NOTICE. This message and any attachment hereto constitutes a confidential attorney-client communication. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this communication in error, do not read it. Please delete it from your system without copying it, and notify the sender by reply e-mail or by calling (435) 649-2525 so that our address record can be corrected.

CIRCULAR 230 DISCLOSURE: Pursuant to Regulations Governing Practice Before the Internal Revenue Service, any tax advice contained herein is not intended or written to be used and cannot be used by a taxpayer for the purpose of avoiding tax penalties that may be imposed on the taxpayer.

We do not give tax or securities advice or counsel to our clients.  You should seek tax or securities professionals for such advice or counsel.

---

From: Ott, Jeff [mailto:JOtt@biljax.com]
Sent: Friday, December 19, 2008 1:23 PM
To: Joe Wrona
Cc: Angela Fen
Subject: engagement

Joe,

We need you to stop performing any services on behalf of Slopeside on the Silverstar complaint as we review other options.

Thank you,

Jeff Ott

Bil-Jax Haulotte

www.biljax.com

www.haulotte-usa.com

419-445-8915

The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and delete the material from your system.

The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and delete the material from your system.

The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and delete the material from your system.

The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privilege

6/8/2009

EXHIBIT "B"



**WRONA LAW OFFICES**
ATTORNEYS AT LAW

September 25, 2008

VIA ELECTRONIC MAIL: jott@biljax.com

Jeff and Nancy Ott
Jim and Cheryl Demarco

RE:   *Legal Representation for Silver Star Dispute*

Ladies and Gentlemen:

You have asked Wrona Law Offices, P.C. to represent you in a dispute with the developers of the Silver Start project in Park City, Utah. I spoke with Cheryl via telephone about the dispute, and I have also spoken to Jeff about the dispute. I have disclosed both times that I formerly served as general legal counsel to Prudential Utah Real Estate, and that I am precluded from representing you in litigation against Prudential Utah Real Estate. You are aware that Michael LaPay is a Prudential agent and that Mr. LaPay was the listing agent for the Silver Star project. Unless and until it appears that a legitimate claim exists against Mr. LaPay and/or Prudential, I am able to represent you in this matter pursuant to the terms set forth below:

Fees and Costs. I will be principally responsible for this matter. My rate for such work is $350.00 per hour. Other partners and associates may assist in this matter. Their billing rates for such work range between $175.00 and $350.00 per hour, and our paralegal billing rate for such work is $75.00 to $100.00 per hour. Although rates are subject to change, you will be notified in writing of any such changes. Please note that in addition to our hourly rates you may also be charged for the firm's out of pocket costs incurred (for example, filing documents, photocopying expenses, long distance phone charges).

Billing and Payment. You will be billed monthly and receive a monthly statement for all services rendered and costs incurred during the previous month. Payment is due upon receipt. We reserve the right to charge interest at the rate of eighteen percent (18%) per annum on your account in the event it is not timely paid. Non-payment may also be a basis for terminating our future services. In the event that you do not pay your bill, you will be liable for collection costs, including attorney fees.

1816 Prospector Avenue, Suite 100 ♦ Park City, UT 84060 ♦ Phone 435.649.2525 ♦ Fax 435.649.5959 ♦ www.wasatchlaw.com

Jeff & Nancy Ott
Jim & Cheryl Demarco
*Representation Agreement*
September 25, 2008
Page 2 of 3

    Right to Lien.  You hereby grant the firm the right to record and foreclose upon a lien against any real property owned by you or any entity in which you have an ownership interest in the amount of any costs and/or fees owed by you to our firm that remain unpaid thirty (30) days after receipt of our invoice.

    Waiver and Estoppel Regarding Payment and Services.  You acknowledge that this firm is providing legal service to you in reliance on your agreement to pay each monthly invoice in the same month it is issued.  You also acknowledge that it is the policy of this firm to stop work when invoices are not paid in full in the same month in which the invoice is generated.  You agree that should you have any questions, comments, or objections to any information or calculation of an amount due that is set forth in a particular invoice, you will contact this law firm in writing within ten days of the date the invoice is issued to discuss your question and/or objection.  If you fail to contact the firm in writing within this ten day time frame, you acknowledge and agree that you will have deemed the information contained in the invoice as accurate and reasonable and you will at that point waive any right you may possess to challenge the accuracy or reasonableness of that invoice in the future.  In the event that the firm continues to perform work for you after the expiration of the ten day notice period, you acknowledge and agree that the firm is performing that work in reliance on your acceptance of the invoice as accurate and reasonable, and you acknowledge and agree you will thereafter be estopped from disputing the information and/or amount due for that invoice.  You acknowledge and agree that should you fail to receive an invoice from this firm in a given month, it is your responsibility to contact the firm and request an invoice, and that any failure by you to request an invoice will not excuse you from being bound by the terms of this paragraph.

    Retainer:  We have agreed that you will provide a retainer in the amount of $5,000.00 to serve as an initial retainer in this matter.  Your retainer will be used to pay for fees as they accrue and you will need to replenish the retainer as it becomes necessary.  At the conclusion of the matter, the retainer will be applied to any balance owed and any remaining retainer amount will be returned to you.

    Results not Guaranteed.  This letter confirms that this firm cannot and does not guarantee any particular result to this matter.

    Discharge or Withdrawal.  The firm reserves the right to withdraw from this matter and discontinue representing you for the following reasons: (1) there is insufficient law in support of your position; (2) you fail to cooperate or timely pay the fees and costs; or (3) any other grounds provided by law.  You also have the right to discharge the firm for any reason upon giving us reasonable notice and upon execution of any Substitution of Attorney as may be required.  In the event that you terminate our representation, you agree to immediately pay all fees incurred up to the point of termination and that payment is due at the time files are released by our firm.  Upon discharge or withdrawal, you agree to pay all earned fees, costs and expenses.

    Entire Agreement.  This agreement contains the entire agreement of the parties.  No other agreement, statement or promise made will be binding on the parties.

1816 Prospector Avenue, Suite 100 ♦ Park City, UT 84060 ♦ Phone 435.649.2525 ♦ Fax 435.649.5959 ♦ www.wasatchlaw.com

Jeff & Nancy Ott
Jim & Cheryl Demaroo
*Representation Agreement*
September 25, 2008
Page 3 of 3

Severability in Event of Partial Invalidity. If any provision of this agreement is held in whole or in part to be unenforceable for any reason, then that provision or portion thereof shall be severed and the remainder of the entire agreement and the remainder of that provision shall remain in effect.

Modification by Subsequent Agreement. This agreement may be modified by subsequent agreement of the parties only by an instrument in writing signed by both of them or an oral agreement to the extent that the parties carry it out.

If these terms meet with your approval, please sign this letter where indicated and return it to our offices as soon as possible along with a check for your retainer. I appreciate the opportunity to be of service.

Very truly yours,

Joseph E. Wrona

Jeff Ott
Date: 9/29/08

Nancy Ott
Date:

Jim Demaroo
Date:

Cheryl Demaroo
Date: 9/29/08

EXHIBIT "C"

Re: engagement

Joe Wrona

**From:** Ott, Jeff [JOtt@biljax.com]
**Sent:** Thursday, January 08, 2009 9:34 AM
**To:** Joe Wrona
**Subject:** Re: engagement

Ok:

Jeff Ott

Bil-Jax Haulotte Group

419-445-8915
Jott@biljax.com

www.biljax.com

—— Original Message ——
**From:** Joe Wrona <wrona@wasatchlaw.com>
**To:** Ott, Jeff
**Sent:** Wed Jan 07 18:24:36 2009
**Subject:** RE: engagement

Jeff:

I am getting ready to send a final invoice.  You owed us $2,817.50 as of the end of November and I sent you an invoice in that amount on 12/1.  I billed $1223 in December that will get tacked on to the new invoice along with $32.83 in interest.  If you will cut us a check for the $2,817.50 that was previously billed on 12/1, I will eat the interest and the $1223 of December billing as a courtesy to wind things up.

Joseph E. Wrona

Wrona Law Offices, P.C.
Park City Offices

1816 Prospector Ave., Suite 100

Park City, Utah 84060

Tele: (435) 649-2525

Fax: (435) 649-5959

Cell: (435) 901-1381

Draper Office

11650 South State Street, Suite 103
Draper, Utah  84020

Tele: (801) 676-5252

Fax: (801) 676-5262

email: wrona@wasatchlaw.com

NOTICE. This message and any attachment hereto constitutes a confidential attorney-client communication. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this communication in error, do not read it. Please delete it from your system without copying it, and notify the sender by reply e-mail or by calling (435) 649-2525 so that our address record can be corrected.

CIRCULAR 230 DISCLOSURE: Pursuant to Regulations Governing Practice Before the Internal Revenue Service, any tax advice contained herein is not intended or written to be used and cannot be used by a taxpayer for the purposes of avoiding tax penalties that may be imposed on the taxpayer.

We do not give tax or securities advice or counsel to our clients.  You should seek tax or securities professionals for such advice or counsel.

**From:** Ott, Jeff [mailto:JOtt@biljax.com]
**Sent:** Wednesday, January 07, 2009 1:04 PM
**To:** Joe Wrona
**Subject:** Re: engagement

Yes wind up. We will provide instructions as to who to forward any materials to. Thanks.

Jeff Ott

Bil-Jax Haulotte Group

419-445-8915
Jott@biljax.com

www.biljax.com

6/8/2009

Re: engagement

----- Original Message -----
From: Joe Wrona <wrona@wasatchlaw.com>
To: Joe Wrona <wrona@wasatchlaw.com>; Ott, Jeff
Sent: Wed Jan 07 09:42:25 2009
Subject: RE: engagement

Jeff:

Can you please reply to the email I sent you on 12/21? It is unwise for us to remain in limbo regarding status of ongoing representation.

Joe

From: Joe Wrona
Sent: Sunday, December 21, 2008 8:32 PM
To: 'Ott, Jeff'
Subject: RE: engagement

Jeff:

Given that you are working with other counsel, perhaps it is best if we wind up my firm's representation of your group. Do I need to transfer any files to your new counsel?

Joe

From: Ott, Jeff [mailto:JOtt@biljax.com]
Sent: Friday, December 19, 2008 8:03 PM
To: Joe Wrona
Subject: Re: engagement

No we are not. We are considering filing a lawsuit against Paladin as we have previously discussed with you. We are reviewing this option with other counsel. We will let you know our decision. But in the meantime please cease all work. Thank you.

Jeff Ott

Bil-Jax Haulotte Group

419-445-8915
Jott@biljax.com

www.biljax.com

----- Original Message -----
From: Joe Wrona <wrona@wasatchlaw.com>
To: Ott, Jeff
Cc: Angela Fan <angela.fan@verizon.net>
Sent: Fri Dec 19 18:33:05 2008
Subject: RE: engagement

Jeff:

I have not performed work for you in some time.  Are you speaking directly with Paladin?

Joseph E. Wrona

Wrona Law Offices, P.C.
Park City Office

1816 Prospector Ave., Suite 100

Park City, Utah 84060

Tele: (435) 649-2525

Fax: (435) 649-5959

Cell: (435) 901-1381

Draper Office

11650 South State Street, Suite 103
Draper, Utah  84020

Tele: (801) 676-5252

6/8/2009

## Re: engagement

Fax: (801) 676-5292 .

email: wrona@wasatchlaw.com

NOTICE. This message and any attachment hereto constitutes a confidential attorney-client communication. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this communication in error, do not read it. Please delete it from your system without copying it, and notify the sender by reply e-mail or by calling (435) 649-2525 so that our address record can be corrected.

CIRCULAR 230 DISCLOSURE: Pursuant to Regulations Governing Practice Before the Internal Revenue Service, any tax advice contained herein is not intended or written to be used and cannot be used by a taxpayer for the purpose of avoiding tax penalties that may be imposed on the taxpayer.

We do not give tax or securities advice or counsel to our clients.  You should seek tax or securities professionals for such advice or counsel.

From: Ott, Jeff [mailto:JOtt@billjax.com]
Sent: Friday, December 19, 2008 1:23 PM
To: Joe Wrona
Cc: Angela Fan
Subject: engagement

Joe,

We need you to stop performing any services on behalf of Slopeside on the Silverstar complaint as we review other options.

Thank you,

Jeff Ott

Bil-Jax Haulotte

www.billjax.com

www.haulotte-usa.com

419-445-8915

The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and delete the material from your system.

The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or otherwise of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and delete the material from your system.

The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or otherwise of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and delete the material from your system.

The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privilege

6/8/2009

EXHIBIT "D"

 

## Third District Court, State of Utah
### Summit County, Silver Summit Department
6300 N. Silver Creek Drive, Park City, Utah 84098

Wrona, law office P.C.
Name of Plaintiff(s)                                                )
                                                                    )
Agent & Title                                                       )
1985 Sidewinder Dr.                                                 )          SMALL CLAIMS
Street Address                                                      )          JUDGMENT
Park City UT 84060                                                  )
City, State, ZIP              Daytime Phone                         )
                                                                    )
Cherly Demarco / Jeffrey Ott                                        )
Name of Defendant(s)                                                )   Case No. 095500044
20361 Kelvindrove ln Huntington Beach CA 92646                      )
Social Security Number                                              )
532 laguna Point                                                    )
Street Address                                                      )
Holland OH 43528                                                    )
City, State, ZIP              Daytime Phone                         )

DATE OF TRIAL: April 15, 2009

PARTIES APPEARING:   [✓] Plaintiff   [ ] Defendant

THE COURT ORDERS JUDGMENT AS FOLLOWS:

[✓] FOR PLAINTIFF       [ ] FOR DEFENDANT ON COUNTER AFFIDAVIT
    $ 2126.41      Principal
    $ 1100.00      Court Costs
    $ 3226.41      Total Judgment, with interest at the current state post-judgment rate, until paid.


[ ] FOR DEFENDANT       [ ] FOR PLAINTIFF ON COUNTER AFFIDAVIT
    [ ] No Cause of Action
    [ ] Dismissal With Prejudice (claim may not be refiled)
    [ ] Dismissal Without Prejudice (claim may be refiled)

**This judgment is effective for 8 years.**

Dated April 15 , 20 09          _____
                                          JUDGE

### NOTICE OF JUDGMENT
*(ORIGINAL TO BE FILED WITH COURT)*

On this date I certify that I [✓] mailed [✓] delivered a copy of this judgment to   [✓] Plaintiff [✓] Defendant

Dated April 15 , 20 09          B. Mitchell
                                Signature of Person Giving Notice of Judgment

**READ INSTRUCTIONS ON BACK OF THIS FORM**

# EXHIBIT "E"



WRONA LAW OFFICES
ATTORNEYS AT LAW

March 30, 2009

Thomas J. Klc
Attorney at Law
4725  South Holladay Blvd., #110
Salt Lake City, Utah  84117-5402

Re:     *James De Marco, et al. v. Michael LaPay, et al.*
        Case No.: 2:09cv00190

Dear Mr. Klc:

You have filed a civil action naming me and my law firm as defendants in case no.
2:09cv00190.  I have already spoken to you on the telephone and informed you that contrary to
the blatantly false allegations in your Complaint:

1.   I have never acted as a real estate agent and have never held a real estate agent's
     license;
2.   I have never acted as a real estate broker and have never held a real estate broker's
     license; and
3.   I have never been an owner, partner, shareholder, member, officer or employee of
     Prudential Utah Real Estate.

During my telephone call to you, I also informed you that:

1.   Prudential Utah Real Estate is a dba of Extreme Holding, LLC;
2.   The principal broker of Prudential Utah Real Estate for the past six years has been
     Dougan Jones; and
3.   The registered agent for Prudential Utah Real Estate and of Extreme Holding,
     LLC is attorney Keith W. Meade.

Enclosed is a certificate of fact issued by the Utah Department of Commerce confirming
that Prudential Utah Real Estate is a dba registered by Extreme Holding, LLC on April 6, 2001,
and that Keith W. Meade is the registered agent for Prudential Utah Real Estate.  Also enclosed
is a letter issued by Keith W. Meade to you which separately confirms that I am not a principal
of Prudential Utah Real Estate, and a certified record from the Utah Division of Real Estate
confirming that Dougan T. Jones has been the principal broker of Prudential Utah Real Estate
since 2002.

1816 Prospector Avenue, Suite 100 ·· Park City, Utah 84060 ·· Phone 435.649.2525 ·· Fax 435.649.5959 ·· www.wasatchlaw.com
11650 South State Street, Suite 103 ·· Draper, Utah 84020 ·· Phone 801.676.5252 ·· Fax 801.676.5262 ·· www.wasatchlaw.com

Thomas J. Kic
March 26, 2009 Letter
Page 2


Federal Civil Rule 11 requires you to conduct an investigation into the actual allegations set forth in any pleading that you sign.   Civil Rule 11 also requires that you correct any misrepresentations of fact once you become aware of an inaccuracy in a pleading.  If you persist in asserting wrongful claims against me or my law firm in this matter, I will file a motion for Rule 11 sanctions in conjunction with a motion to dismiss me and my firm from this action.  I will also file a grievance with the Utah Bar Association, and I will file suit against you and your clients for abuse of process.

By this letter, I am demanding that you immediately amend your complaint and remove me and my firm as named defendants. Please do not force me to take any additional action.

Sincerely,

Joseph E. Wrona

Encl.

CERTIFIED COPY





**Utah Department of Commerce**
Division of Corporations & Commercial Code
160 East 300 South, 2nd Floor, S.M. Box 146705
Salt Lake City, UT 84114-6705
Phone: (801) 530-4849
Toll Free: (877) 526-3994 Utah Residents
Fax: (801) 530-6438
Web Site: http://www.commerce.utah.gov

March 19, 2009

Registration Number: 4902115-0151
Business Name:     PRUDENTIAL UTAH REAL ESTATE
Registered Date:   APRIL 06, 2001

# CERTIFICATE OF FACT

THE UTAH DIVISION OF CORPORATIONS AND COMMERCIAL CODE ("DIVISION") HEREBY
CERTIFIES THAT THE FOLLOWING ARE PRINCIPALS CURRENTLY ON FILE WITH THE ABOVE
NAMED BUSINESS, HAVING MET ALL REQUIREMENTS FOR REGISTRATION IN THE STATE OF
UTAH.

     KEITH W MEADE-REGISTERED AGENT
     EXTREME HOLDING, L.L.C.-APPLICANT
     NO ADDITIONAL PRINCIPALS LISTED



Kathy Berg
Division Director of
Corporations and Commercial Code

| Dept. of Professional Licensing | Real Estate | Public Utilities | Securities | Consumer Protection |
|---|---|---|---|---|
| (801)530-6628 | (801)530-6747 | (801)530-6651 | (801)530-6600 | (801)530-6601 |



State of Utah
Department of Commerce
Division of Real Estate

JON HUNTSMAN, JR.
Governor

FRANCINE GIANI
Executive Director

MARK B. STEINAGEL
Real Estate Division Director

March 19, 2009

## CERTIFICATION OF DOCUMENTS

I hereby certify that the attached documents are copies of official Utah Division of Real Estate documents.

Division of Real Estate

Julie Price
Office Specialist

State of Utah        )
                     ) ss.
County of Salt Lake  )

On this _19_ day of _March_, 2009, I certify that the preceding or attached document, is a true, exact, complete and unaltered photocopy made by me of the mortgage statistics documents, presented to me by the document's custodian, Julie Price.

_Renda Christensen_
Notary Public



NOTARY PUBLIC
RENDA CHRISTENSEN
160 East 300 South, 2nd Floor
Salt Lake City, UT 84111
COMMISSION EXPIRES
February 14, 2011
STATE OF UTAH

# COHNE
# RAPPAPORT
# & SEGAL
*A PROFESSIONAL CORPORATION*

ATTORNEYS AT LAW

257 EAST 200 SOUTH, Suite 700
SALT LAKE CITY, UTAH 84111
(801) 532-2666
(801) 355-1813 FAX

*Mailing Address*
POST OFFICE BOX 11008
SALT LAKE CITY, UTAH
84147-0008

Richard A. Rappaport
Roger G. Segal
Jeffrey L. Silvestrini
David S. Dolowitz
Vernon L. Hopkinson
Keith W. Meade
Ray M. Beck
A. O. Headman, Jr.
Julie A. Bryan
Jeffrey R. Oritt

Daniel J. Torkelson
Leslie Van Frank
Larry R. Keller
Desh C. Sarandos
Edward T. Vasquez
Joshua K. Peterman
Kevin A. Turney
Bradley M. Strassberg
Pete B. Sarandos
Matthew G. Nielsen

March 11, 2009

Thomas J. Klc.
4725 South Holladay Blvd., Suite 110
Salt Lake City, UT 84117

Dear Mr. Klc:

I am the registered agent for Prudential Utah Real Estate. I am authorized to accept service on behalf of Prudential Utah Real Estate and the individual agents of the company that you have identified in the Complaint in the matter entitled James DeMarco v. Michael LaPay, et al., Case No. 2:09cv00190. If you want to send me an acceptance of service, we will cooperate with you.

Joseph E. Wrona is not the registered agent for Prudential Utah Real Estate. Neither is he "doing business as Prudential Utah Real Estate".

I am not aware that any of the agents of Prudential or the company itself have been served with the Summons or Complaint in this matter. It is my intention to file a written response if service is effected.

Very truly yours,

COHNE, RAPPAPORT & SEGAL, P.C.

Keith W. Meade

F:\LAWAYNE\\ KEITH\LETTERS\Klc Thomas 031109.wpd



**SENDER: COMPLETE THIS SECTION**

- ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

THOMAS J. KEE
Attorney at Law
4725 S. Holladay Blvd
#110
Salt Lake City UT 84117

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _Eloise Johnson_   □ Agent   □ Addressee

B. Received by (Printed Name)   C. Date of Delivery

Eloise Johnson   7/7/09

D. Is delivery address different from item 1?   □ Yes
   If YES, enter delivery address below:   □ No

3. Service Type
   ☒ Certified Mail   □ Express Mail
   □ Registered   □ Return Receipt for Merchandise
   □ Insured Mail   □ C.O.D.

4. Restricted Delivery? (Extra Fee)   □ Yes

2. Article Number
   (Transfer from service label)

7007 2560 0000 3951 7213

PS Form 3811, February 2004      Domestic Return Receipt      102595-02-M-1840

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

DeMario Federal Litigation
Wrona Law Offices file
1745 Sidewinder Dr
Park City UT 84060

# UNPUBLISHED DECISIONS



LEXSEE 2009 U.S. DIST. LEXIS 112098

**BRIAN GOFF, Plaintiff, vs. UTAH FUNDING COMMERCIAL, INC., PAULA STONESTREET, and JOHN DOES 1 through 5, Defendants.**

Case No. 2:09-cv-00680

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

*2009 U.S. Dist. LEXIS 112098*

November 30, 2009, Decided
December 2, 2009, Filed

COUNSEL: [*1] For Brian Goff, Plaintiff: Robert G. Culas, LEAD ATTORNEY, SANDY, UT.

For Paula Stonestreet, Defendant: Stephen B Watkins, LEAD ATTORNEY, HALLIDAY & WATKINS, SALT LAKE CITY, UT.

JUDGES: Dee Benson, U.S. District Court Judge.

OPINION BY: Dee Benson

OPINION

MEMORANDUM DECISION

Plaintiff, Brian Goff, brought this lawsuit seeking to rescind two loans Utah Funding Commercial extended to Goff. Goff argues that the loans were made in violation of the Truth in Lending Act (TILA), *15 U.S.C. § 1601 et seq.*, because the defendants failed to provide certain disclosures, including the interest rate and fees and costs associated with the loan, and Goff's right to rescind the loan. Goff also alleges several claims under state law including fraud, conspiracy, and negligence. In response, defendant Stonestreet filed a Motion to Dismiss under *Federal Rule of Civil Procedure 12(b)(1)* arguing that this court does not have jurisdiction because TILA does not apply to the underlying loan transaction. Stonestreet also filed a Rule 11 motion arguing that Goff was

pursuing frivolous claims in an attempt to impede her from foreclosing on the property. Oral argument was held on October 29, 2009. Robert J. Culas represented the plaintiff, Brian [*2] Goff. Stephen B. Watkins represented defendant Paula Stonestreet.

BACKGROUND

In May 2008, Utah Funding Commercial lent Brian Goff $ 500,000 by extending two separate loans for $ 250,000 each. Both loans were secured by a downtown Salt Lake City tri-plex owned by Mr. Goff. Ms. Stonestreet funded one of these loans and the deed of trust securing the loan was later assigned to her. Beginning in December 2008, Mr. Goff defaulted on the payments he owed on the note assigned to Ms. Stonestreet. Ms. Stonestreet began nonjudicial foreclosure proceedings in March 2009. In May 2009, the second note and trust deed matured and also went into default due to Mr. Goff's failure to make the required loan payments. Ms. Stonestreet paid off this note in order to protect her interest in the property. On August 4, 2009, Ms. Stonestreet purchased the property securing Mr. Goff's loans at a trustee's sale. One day before, Mr. Goff filed his complaint in this court seeking rescission, arguing that Utah Funding Commercial and Stonestreet had violated TILA by failing to provide required disclosures including the loans' interest rates, fees and costs, and Mr. Goff's right to rescind the transactions. Ms.

Stonestreet [*3] responded by filing a motion to dismiss for lack of jurisdiction. Through counsel, Ms. Stonestreet notified Mr. Goff that she considered his claim frivolous and in bad faith and would seek sanctions if he did not withdraw the claim. After Mr. Goff filed a memorandum in opposition to her motion to dismiss, Ms. Stonestreet filed a motion for Rule 11 sanctions.

## DISCUSSION

## I.  THE  COURT  DOES  NOT  HAVE  SUBJECT MATTER JURISDICTION

Plaintiff brought this case in federal court, relying on his claims that the defendants violated TILA as grounds for federal court jurisdiction. Defendant Paula Stonestreet responded with a motion to dismiss for lack of jurisdiction, arguing that the loans were made for commercial purposes and, therefore, not subject to TILA. In response, Mr. Goff argued that Ms. Stonestreet's motion to dismiss should be converted to a motion for summary judgment because federal jurisdiction in this case is intertwined with the merits. Additionally, Mr. Goff argued that the loan was subject to TILA because it was made for personal purposes. The court agrees that the motion should be converted to a motion for summary judgment and concludes under that standard that TILA does not apply [*4] to Mr. Goff's claims; therefore Mr. Goff's claims are dismissed with prejudice for lack of jurisdiction.

### A. Ms. Stonestreet's Motion Is Converted to a Summary Judgment Motion

When subject matter jurisdiction is intertwined with the merits of a claim, the court is required to convert the *Rule 12(b)(1)* motion to a *Rule 12(b)(6)* motion or a *Rule 56* summary judgment motion. *Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995)*. "Subject matter jurisdiction and the merits are considered to be intertwined 'when subject matter jurisdiction is dependent upon the same statute which provides the substantive claim in the case.'" *Sizova v. Nat'l Inst. of Standards & Tech., 282 F.3d 1320, 1324 (10th Cir. 2002)* (quoting *Wheeler v. Hurdman, 825 F.2d 257, 259 (10th Cir. 1987)*). In this case, the issue of subject matter jurisdiction is intertwined with the merits because jurisdiction and the basis for Goff's claim rely on the same statute -the Truth in Lending Act. Therefore, the court will treat Ms. Stonestreet's motion as a motion for summary judgment. This will not affect the procedures

used in considering the motion, but instead the effect the ruling will have upon the parties. *Wheeler v. Hurdman, 825 F.2d at 259*. [*5] Unlike a dismissal under *12(b)(1)*, which "allows for the possibility of repleading the action to bring it within the subject matter jurisdiction of the court[, a] grant of summary judgment resolves the issue on the merits and thus is with prejudice." *Id.*

### B. The Court Grants Summary Judgment in Favor of Ms. Stonestreet Because Mr. Goff Does Not Have a Valid Claim under TILA

Summary judgment may be granted when the evidence shows "that there is no genuine issue as to any material fact and that the mov[ing party] is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(c)(2)*. Applying this standard, the court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990)*. The central issue to summary judgment in this case is whether the Truth in Lending Act applies to the underlying loan transaction, which Mr. Goff is attacking.

The Truth in Lending Act, codified at *15 U.S.C. § 1601, et seq.*, applies to consumer credit transactions but not commercial transactions. The Act defines consumer transactions as those [*6] made "primarily for personal, family, or household purposes," *15 U.S.C. § 1602(h)*, and specifically excludes "[c]redit transactions involving extensions of credit primarily for business, commercial, or agricultural purposes, . . . ." *15 U.S.C. § 1603(1)*." "Cases considering whether a transaction is primarily consumer or commercial in nature look to the transaction as a whole and the purpose for which credit was extended." *Gallegos v. Stokes, 593 F.2d 372, 375 (10th Cir. 1979)*. "[C]redit transactions secured by real or personal property used for ... commercial rental property fall outside the scope of TILA's coverage." *Antanuos v. First Nat. Bank of Ariz., 508 F. Supp.2d 466, 466 (E.D. Va. 2007)*.

Based on the evidence and arguments that the parties presented, the court concludes that there is not a genuine issue of fact relating to the applicability of TILA to Goff's claim; therefore, summary judgment is granted. Looking at the underlying credit transaction as a whole, the court finds that the loan transaction was undertaken for commercial purposes. First, like the loans in *Antanuos*, both loans were secured by a rental property

Case 2:09-cv-00190-TS-PMW   Document 69   Filed 11/05/10   Page 56 of 59

Page 3
2009 U.S. Dist. LEXIS 112098, *6

that Goff owned for commercial purposes. Additionally, the [*7] proceeds from the loans were used to pay off obligations related to the rental property. Finally, Stonestreet provided a copy of an Affidavit of Commercial Purpose, signed by Mr. Goff, stating that the loan would be used for a business or commercial purpose only. Mr. Goff was unable to provide any competent evidence that the proceeds were used for personal, family, or household purposes in order to establish an issue of fact. Therefore, the court concludes that the loan was for commercial purposes and not subject to TILA. Accordingly, the court grants summary judgment against Mr. Goff on all TILA claims in this case; without the federal question presented by the TILA claims, this court has no jurisdiction over this action. Without federal jurisdiction, the court declines to exercise supplemental jurisdiction over Goff's state-law claims.

## II.   THE COURT SANCTIONS MR. CULAS PURSUANT TO *FED. R. CIV. P. 11*

Also before the court is defendant Stonestreet's motion for sanctions pursuant to *Federal Rule Civil Procedure 11*, which asserts that Mr. Goff's claims were frivolous and asserted for an improper purpose. After hearing oral argument on both the dispositive motion resolved above and the [*8] motion for sanctions, the court must agree that the claims brought by Mr. Goff and his counsel were unwarranted by both fact and law. Additionally, the court is troubled by the careless manner in which the plaintiff's counsel litigated this case.

*Rule 11* obligates the signer of a pleading, written motion, or other paper to conduct a reasonable inquiry into whether the claims set forth in the document are legally frivolous or factually unsupported. *Fed. R. Civ. P. 11(b); Monument Builders of Greater Kansas City, Inc. v. Am. Cemetery Ass'n of Kansas, 891 F.2d 1473, 1484-85 (10th Cir. 1989).* "*Rule 11* mandates sanctions against attorneys and/or their clients when pleadings, motions, or other signed papers in the district court are not grounded in fact, are not warranted by existing law or good faith argument for its extension, or are filed for an improper purpose." *Monument Builders of Greater Kansas City, Inc., 891 F.2d at 1484.* "In deciding whether to impose Rule 11 sanctions, a district court must apply an objective standard; it must determine whether a reasonable and competent attorney would believe in the merit of an argument." *Dodd Ins. Servs., Inc. v. Royal Ins. Co. of America, 935 F.2d 1152, 1155 (10th Cir. 1991).* [*9] In

this case, plaintiff's counsel failed to conduct a reasonable inquiry into the claims asserted by his client and as a result filed written motions and supporting memoranda not grounded in fact and not warranted by law.

The lack of facts supporting the arguments made by plaintiff's counsel was indicative of the lack of research plaintiff's counsel conducted in this case. The plaintiff's central, and only federal, claim was that the defendants in this case violated TILA. As discussed above, TILA applies only to consumer loans. It does not apply to loan transactions entered for a commercial purpose. Also discussed above, all the evidence presented in this case indicated that the transaction at issue was a commercial transaction. This was evident based on the core loan documents signed at the closing of the loan. This was also evident by the very use of the loan proceeds and the property securing the loan. At minimum, a reasonable and competent attorney would collect all documentation of a loan before challenging its legality. More specifically, a reasonable and competent attorney reviewing the loan documentation available in this case, which included a statement of commercial purpose, [*10] could not conclude that the loan was a consumer loan without relying on additional evidence that in some way contradicted the plain language of these loan documents; accordingly, a reasonable and competent attorney would conclude that a TILA violation claim was not supported by the facts or warranted by law. Therefore, the court concludes that by filing a complaint alleging TILA violations in this court, Mr. Goff's counsel violated *Rule 11(b)*.

When defendant Stonestreet pointed out the complaint's lack of factual and legal support, Mr. Goff's counsel responded with a Memorandum in Opposition that put forth several theories, none of which were supported by law or fact. In fact, counsel's argument as to the consumer-nature of the loan did not cite a single case or affidavit in support of his legal or factual assertions. The assertions included the following: the plaintiff was an individual not a business entity, the property provided as security for the loan is a triplex, the proceeds of the loan were used to retire plaintiff's personal liabilities on debts related to the triplex, and one of the units (the smallest) was the plaintiff's residence when he took out the loan. The first three [*11] facts are legally insignificant to the proper classification of a TILA claim. The last fact was unsupported and overwhelmingly controverted by the loan documentation presented by

Stonestreet. Plaintiff's counsel also asserted that "the standard for residential multi-unit loans is up to four units." This is not a legal standard nor a factor considered by the courts when evaluating the classification of a loan to determine whether it is subject to TILA. Due to the lack of legal and factual support, the court also finds plaintiff's counsel violated *Rule 11(b)* by submitting his memorandum in opposition to the motion to dismiss.

At the same time defendant Stonestreet served her motion to dismiss, she also served a motion for Rule 11 sanctions. After the safe-harbor period had passed and the motion for sanctions was formally filed in this court, plaintiff's counsel responded by asserting that Stonestreet's motion and supporting affidavits contained an "outrageous version of the facts" and "blatant lie[s]." Specifically, plaintiff's counsel stated that his client never signed the Affidavit of Commercial Purpose and that the loan was a "scheme by Stonestreet to obtain Plaintiff's property . [*12] . . ." The opposition memorandum containing these assertions was not accompanied with affidavits or other evidentiary support. The memorandum in opposition was however presented as a verified memorandum and allegedly signed by Mr. Goff.

Asserting that opposing counsel is lying and thereby implicitly asserting that he or she has fabricated evidence is a grave accusation with serious consequences. [1] In this case, the Affidavit of Commercial Purpose that plaintiff's counsel asserted his client did not sign was a notarized document, notarized by an employee of the title company that handled the closing of the loan transaction at issue. When pressed at oral argument as to why he made such an assertion, plaintiff's counsel explained that Mr. Goff had told him that he didn't remember signing the document, and that he had an obligation to put forth the claims of his client. This is a hollow explanation. As clearly stated by *Rule 11*, every attorney has an obligation to perform a reasonable inquiry into the factual contentions and denials of factual contentions to ensure they are supported by some evidence. This lack of

inquiry, which led to the incredulous assertion that Mr. Goff did not sign [*13] the notarized document and the subsequent accusation that Ms. Stonestreet's counsel lied about the document, is a clear Rule 11 violation. Additionally, Mr. Culas's lack of factual basis in the accusations he made against opposing counsel, and other unprofessional conduct, violated the Utah Standards of Professionalism and Civility.

> 1    Plaintiff's counsel directly asserted this accusation in his own motion for sanctions, which was withdrawn after oral argument on the matter.

Objectively reviewing the papers submitted to this court by plaintiff's counsel, the court concludes that plaintiff's counsel violated *Rule 11* in bringing Mr. Goff's complaint and in responding to defendant Stonestreet's motion to dismiss and Rule 11 motion because the claims and arguments contained therein were frivolous. The factual contentions contained in these pleadings and motions were completely lacking evidentiary support and contradictory to the existing evidence. Additionally, the legal contentions contained in his pleadings and moving papers were not warranted by existing law and did not contain a nonfrivolous argument for extending or reversing the existing law. Based on the violation, the court concludes [*14] that sanctions are warranted. *See Fed. R. Civ. P. 11(c)*. Mr. Goff's counsel is ordered to pay the attorney fees and costs Ms. Stonestreet incurred in defending this case.

IT IS SO ORDERED.

Dated this 30th day of November, 2009.

/s/ Dee Benson

Dee Benson

U.S. District Court Judge



LEXSEE 1994 U.S. APP. LEXIS 22897

BOWLES FINANCIAL GROUP, INC., Plaintiff, v. STIFEL, NICOLAUS & COMPANY, INC., Defendant-Appellee. LARRY D. BISHOP, Movant-Appellant.

No. 93-6303

UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT

*1994 U.S. App. LEXIS 22897*

**August 22, 1994, Filed**

**NOTICE:** [*1] THIS ORDER AND JUDGMENT IS NOT BINDING PRECEDENT, EXCEPT UNDER THE DOCTRINES OF LAW OF THE CASE, RES JUDICATA, AND COLLATERAL ESTOPPEL. THE COURT GENERALLY DISFAVORS THE CITATION OF ORDERS AND JUDGMENTS; NEVERTHELESS, AN ORDER AND JUDGMENT MAY BE CITED UNDER THE TERMS AND CONDITIONS OF THE COURT'S GENERAL ORDER FILED NOVEMBER 29, 1993. 151 F.R.D. 470.

**SUBSEQUENT HISTORY:**    Reported in Table Case Format at: *33 F.3d 62, 1994 U.S. App. LEXIS 30840.*

**PRIOR HISTORY:**    (D.C. No. CIV-92-1187-C). (W.D. Okla.)

**JUDGES:** Before MOORE and KELLY, Circuit Judges, and BABCOCK, ** District Judge.

   ** Honorable Lewis T. Babcock, District Judge, United States District Court for the District of Colorado, sitting by designation.

**OPINION BY:** LEWIS T. BABCOCK

**OPINION**

   ORDER AND JUDGMENT *

   * This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. *151 F.R.D. 470.*

   After [*2] examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See *Fed. R. App. P. 34(a)*; 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

   Larry D. Bishop, attorney for Bowles Financial Group, appeals from an order imposing $ 5,124 in sanctions against him for violating *Fed. R. Civ. P. 11* and *28 U.S.C. 1927*. The issue is whether the district court abused its discretion in imposing the sanctions. We conclude it did not, and affirm.

   Bowles was involved in an arbitration proceeding with defendant Stifel, Nicolaus and Company. On June 5, 1992, an arbitration panel awarded Bowles $ 300,000. On June 25, 1992, Stifel informed Bowles that it intended to appeal the award and, in accordance with 31 of the Municipal Securities Rulemaking Board (MSRB) Arbitration Code, had deposited $ 300,000 in an escrow account to be maintained by Boatmen's First National

1994 U.S. App. LEXIS 22897, *2

Bank of Oklahoma (the escrow agent). The escrow agreement provided in relevant part that the deposit was made for the purpose of securing and staying execution of the [*3] arbitration award. It contained the following conditions: 1) if an appeal of the award was not filed by September 1, 1992 (the "appeal date"), or was filed by Stifel but later withdrawn prior to a final court order disposing of the appeal, the escrow agent would deliver the funds to Bowles within two business days of the appeal date or of the withdrawal date; 2) if an appeal was filed by Stifel and not withdrawn, the deposit was to be held until entry of a final court disposing of the appeal.

On June 30, 1992, Bowles commenced an action in federal district court pursuant to *9 U.S.C. 9* to confirm the arbitration award. Stifel filed an answer on July 21, 1992, alleging as an affirmative defense that Bowles improperly submitted a settlement offer to the arbitration panel. On September 2, 1992, one day after the "appeal date," Stifel filed a motion to vacate the award. The district court entered a judgment confirming the award on February 26, 1993.

On March 5, 1993, Stifel moved to stay execution of the judgment confirming the award. It proposed to secure the stay with the escrow account plus additional funds to cover accrued interest. On March 8, the [*4] district court granted the motion. It ordered that as a condition of the stay Stifel maintain the escrow agreement presently in effect and submit a supersedeas bond identical to that attached to its motion for a stay of execution.

On March 29, 1993, Bishop requested that the escrow agent disburse the $ 300,000 to Bowles on the ground that Stifel filed its appeal of the arbitration award one day past the September 1, 1992, appeal date. When the escrow agent refused, Bishop commenced a state court action against it on Bowles' behalf. Stifel moved to have Bowles found in contempt for attempting to violate the stay order.

The district court directed Bowles to show cause why it should not be held in contempt. Bishop, on Bowles' behalf, responded by filing a motion for contempt against Stifel, claiming that Stifel had obstructed Bowles' attempt to enforce the escrow agreement which the district court had ordered Stifel to maintain.

Based on Bishop's representation that he would immediately dismiss the state court action, the court did

not find Bishop or Bowles in contempt. However, it did find that Bishop had violated *Rule 11* by signing a pleading interposed for an improper purpose, and [*5] 1927 by multiplying the proceedings unreasonably and vexatiously. It later found Stifel's fee request of $ 5,124 to be reasonable.

The district court found that Bishop violated *Rule 11* by signing the motion to have Stifel found in contempt. The version of *Rule 11* in effect at the relevant time [1] provided in part that every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record, and that this signature constitutes certification by the signer that the document "is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." A failure to make reasonable inquiry and a failure to make claims cognizable under the law can support a determination of an improper purpose under *Rule 11*. *White v. General Motors Corp.*, 908 F.2d 675, 683 (10th Cir. 1990), cert. denied, 498 U.S. 1069, 112 L. Ed. 2d 850, 111 S. Ct. 788 (1991). "An attorney's actions must be objectively reasonable in order to avoid *Rule 11* sanctions." *Id. at 680.* We [*6] review all aspects of a district court's *Rule 11* decision for abuse of discretion, *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 L. Ed. 2d 359, 110 S. Ct. 2447 (1990), and accord extreme deference to a district court's *Rule 11* conclusions, *Dodd Insurance Services, Inc. v. Royal Insurance Co. of America*, 935 F.2d 1152, 1159 (10th Cir. 1991).

    1   *Rule 11* was amended effective December 1, 1993.

Bishop argues that he had a reasonable basis for the contempt motion in that the escrow agreement required the escrow agent to deliver $ 300,000 to Bowles when Stifel did not file an appeal by the appeal date, and the stay order directed Stifel to maintain the escrow agreement. Stifel's interference with Bowles' attempt to enforce that agreement violated the court's stay order, he maintains.

Stifel relies on *International Brotherhood of Electrical Workers v. Coral Electric Corp.*, 576 F. Supp. 1128, 1134 (S.D. Fla. 1983), [*7] to argue that the affirmative defense included in its July 21, 1992, answer constituted its appeal for purposes of the escrow agreement, and the appeal therefore was timely. We conclude this single district court authority does not