**WRONA LAW FIRM, P.C.**
Joseph E. Wrona (#8746)
Jared C. Bowman (#11199)
1745 Sidewinder Drive
Park City, Utah 84060
Telephone: (435) 649-2525
Facsimile: (435) 649-5959
Attorneys for Defendants Joseph Wrona and
Wrona Law Offices, P.C.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JAMES DE MARCO; CHERYL DE MARCO; GEORGE DE MARCO; JEFFREY OTT; NANCY OTT; SLOPESIDE PROPERTIES; LLC and JOHN/JANE DOES 26-50,<br><br>Plaintiffs,<br><br>vs.<br><br>MICAHEL LAPAY, HEATHER PETERSON, CARRIE SHOAF, DUSTY ORRELL, KEELIE WEST, DICK STONER, as individuals and/or as agents for Prudential Utah Real Estate; PRUDENTIAL UTAH REAL ESTATE; PALADIN DEVELOPMENT PARTNERS, LLC, a Utah limited liability company; MICHAEL LAPAY, RORY MURPHY, GEORGE BRYANT, and CHRISTOPHER CONABEE, as individuals and/or as agents and/or as managers of Paladin Development Partners, LLC; ORCO CONTRACTING, LLC; WILLIAM R. OKLAND; BRETT J. OKLAND; PREMIER RESORTS aka DEER VALLEY LODGING, JOE WRONA individually and WRONA OFFICES, PC and | **DEFENDANTS JOE WRONA AND WRONA OFFICES, P.C.'S OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT DISMISSING COUNTERCLAIMS**<br><br>Case No. 2:09cv00190<br><br>Judge: Ted Stewart |

JOHN/JANE DOES 1-25,

        Defendants.

Defendants Joseph E. Wrona ("Wrona") and Wrona Offices, P.C. (collectively, "Wrona"), pursuant to Rule 56 of the Federal Rules of Civil Procedure, hereby submit their Opposition to Plaintiffs' (collectively "DeMarcos") Motion for Summary Judgment Dismissing Counterclaims of Defendants Joseph E. Wrona and Wrona Law Offices, P.C.

## INTRODUCTION

When Wrona Law filed a small claim collection action against the DeMarcos for attorney fees, the DeMarcos retaliated by filing a host of multi-million dollar claims against Wrona Law and Joseph Wrona. The DeMarcos conjured up a series of utterly baseless allegations against Mr. Wrona that tried to portray him as a scheming liar and cheat. The DeMarcos then refused to dismiss their claims against Wrona and instead used this action to try to compel Wrona Law into abandoning its collection efforts against the DeMarcos. The facts, when viewed in favor of Wrona, support a finding that the DeMarcos filed, served and maintained their claims against Wrona for an "improper purpose" and that they undertook a series of willful acts to accomplish that purpose. That finding alone establishes Wrona's abuse of process claim. With regard to Wrona's intentional infliction of emotional distress claim, that claim does not merely arise from the filing of the DeMarcos' Complaint. It arises from everything that the DeMarcos have done since filing the Complaint to inflict emotional harm on Wrona and compel Wrona into abandoning his firm's collection effort. For this reason, and because the Plaintiffs have

2

incorrectly relied on a distinguishable and inapplicable case, Wrona's intentional infliction of emotional distress is a viable claim that should be tried to the jury.

## STATEMENT OF ADDITIONAL FACTS

1. In or about December of 2008, the DeMarcos became delinquent on paying their legal fees to Wrona. *See* Memorandum Decision and Order Granting Defendants Joe Wrona and Wrona Offices, P.C.'s Motion for Summary Judgment, dated May 9, 2011 at 2 (the "Summary Judgment Order") (Ex. A).

2. On or about January 7, 2009, Wrona withdrew as their legal counsel. *See id.*

3. Wrona, however, continued to send monthly invoices to the DeMarcos so that the DeMarcos would know the amount they owed to Wrona, and Wrona did so until January 7, 2011. *See* Supplemental Affidavit of Joseph E. Wrona (Ex. B).

4. Despite these monthly invoices and Wrona's attempts to negotiate a resolution to the payment issue, the DeMarcos refused to pay the attorney fees they owed Wrona. *See id.*

5. On February 11, 2009, Wrona filed a collection action in small claims court against the DeMarcos to collect unpaid attorney fees. *See* Docket Report for Wrona Law Offices, P.C. v. Cheryl L DeMarco, Case No. 098500044 at 1 ("Small Claims Docket") (Ex. C).

6. On February 20, 2009, Wrona served the collection action on the DeMarcos. *See id* at 2.

7. On March 3, 2009, eleven days after service of the collection action on the DeMarcos, the DeMarcos filed the present Federal Action asserting outrageous claims against Wrona. *See* Court Record.

3

8.      The DeMarcos thereafter continued refusing to pay Wrona. *See* Supplemental Affidavit of Joseph E. Wrona.

9.      On March 26, 2009, the DeMarcos responded to Wrona's collection action and requested dismissal of the collection action on the grounds that the DeMarcos had brought claims against Wrona in federal court. *See* Small Claims Response to Affidavit and Request for Dismissal (Ex. D).

10.     On or about March 30, 2009, Wrona telephoned the DeMarcos' counsel, informed that counsel of the falsity of the DeMarcos' accusations, and then provided written evidence of that falsity. *See* Letter from Joseph E. Wrona to Thomas J. Klc, dated March 30, 2009 (Ex. E) *and* Supplemental Affidavit of Joseph E. Wrona.

11.     When the DeMarcos' counsel refused to withdraw the DeMarcos' Complaint, the small claims court set a bench trial for April 15, 2009. *See* Small Claims Docket at 2.

12.     The DeMarcos failed to appear on April 15, 2009, and thus the small claims court entered a default judgment against the DeMarcos in the amount of $3,226.41. *See* Small Claims Judgment, dated April 15, 2009 (Ex. F).

13.     The DeMarcos thereafter refused to pay the small claims court judgment. *See* Supplemental Affidavit of Joseph E. Wrona.

14.     On April 23, 2009, the DeMarcos moved the small claims court to set aside the default judgment. *See* Motion to Set Aside & Order (Ex. G).

15.     On May 6, 2009, the small claims court set aside the default judgment and set a second bench trial for July 15, 2009. *See id.*

16.     On May 7, and May 9, 2009, the DeMarcos served Wrona with this Federal Action. *See* Court Record.

17.     On June 6, 2009, Wrona filed its initial Counterclaim. *See* Court Record.

18.     On June 12, 2009, just three days after Wrona filed its Counterclaim, the DeMarcos filed their Counterclaim against Wrona in the collection action. *See* Small Claims Docket at 3.

19.     On July 15, 2009, the small claims court held a bench trial at which all the parties were present. *See* Small Claims Judgment, dated July 15, 2009 (Ex. H).

20.     At the bench trial, the small claims court again awarded judgment to Wrona in the amount of $2,113.33 in principal, and 18% interest on that amount until collected, as well as court costs of $292.50. *See id.*

21.     The DeMarcos, however, still refused to pay Wrona despite the judgment against the DeMarcos. *See* Supplemental Affidavit of Joseph E. Wrona.

22.     On May 9, 2011, Wrona obtained summary judgment against the DeMarcos on all of the DeMarcos' claims against Wrona in this Action after the DeMarcos failed to even respond to Wrona's Motion for Summary Judgment. *See* Summary Judgment Order.

23.     Despite acknowledging the meritlessness of their claims against Wrona and failing to appeal any of the judgments against them, the DeMarcos still have never paid Wrona. *See* Supplemental Affidavit of Joseph E. Wrona.

24.     In their current Motion for Summary Judgment, the DeMarcos suggest that because Wrona's abuse of process claim faults the DeMarcos for the wrongful initiation of a

frivolous lawsuit, Wrona's claims is essentially a malicious prosecution claim, i.e., a wrongful use of civil proceedings claim.   *See, e.g.,* Motion for Summary Judgment Dismissing Counterclaims of Defendants Joseph E. Wrona and Wrona Law Office, P.C. ("Summary Judgment Motion) at 4.

25.     On February 23, 2012, the Court entered an Amended Scheduling Order in this Case that allowed the parties to move to amend their pleadings on or before May 1, 2012. *See* Amended Scheduling Order at 2 (Ex. I).

### WRONA'S RESPONSES TO PLAINTIFFS' "STATEMENT OF UNDISPUTED MATERIAL FACTS"

1.     **SOF ¶ 1:**     In 2005 and 2006, plaintiffs, James DeMarco, Cheryl DeMarco, George DeMarco, Nancy Ott and Jeffrey Ott entered into contracts (the "Purchase Agreements") with defendants Paladin Development Partners, LLC ("Paladin") for the purchase of four residential units (the "Units") at the Silver Star at Park City ("Silver Star"), a planned residential community in Park City, Utah.

**RESPONSE:** Disputed.  Civil Rule 56(c) requires the Plaintiffs to support their factual assertions with citations to admissible evidence.  FED. R. CIV. P. 56(c).  Because the Plaintiffs have failed to cite any materials supporting SOF ¶ 1, SOF ¶ 1 cannot be the basis for summary judgment and should be stricken.

2.     **SOF ¶ 2:**     The seller's broker for the transactions was Prudential Utah Real Estate ("Prudential").  Prudential agent, defendant Michael Lapay, served as the listing agent for the development.  Lapay is also a member of the Paladin partnership.

**RESPONSE:** *See* Response to SOF ¶ 1.

3.     **SOF ¶ 3:**     Plaintiffs made substantial earnest money deposits on all four Units.

**RESPONSE:** *See* Response to SOF ¶ 1.

4.    **SOF ¶ 4:**    Pursuant to the terms of the Purchase Agreements, construction of the Units was to be completed no later than 18 months after the dates of the respective Purchase Agreements, time being of the essence. True and accurate copies of the purchase agreements are attached hereto as Exhibit A.

**RESPONSE:** Not disputed.

5.    **SOF ¶ 5:**    The completion of the subject Units was substantially delayed beyond the 18-month contractual deadline.

**RESPONSE:** *See* Response to SOF ¶ 1.

6.    **SOF ¶ 6:**    Plaintiffs eventually closed on one of the four Units. However, as to the remaining three, Plaintiffs terminated the sale and requested the return of their earnest money deposits, claiming that Paladin had materially breached in contractual obligations.

**RESPONSE:** *See* Response to SOF ¶ 1.

7.    **SOF ¶ 7:**    Paladin refused to return the deposits.

**RESPONSE:** *See* Response to SOF ¶ 1.

8.    **SOF ¶ 8:**    Thomas John Klc is an attorney licensed to practice law in the State of Utah.

**RESPONSE:** *See* Response to SOF ¶ 1.

9.    **SOF ¶ 9:**    In May 2008, plaintiffs retained Klc to represent them in their ongoing dispute with Paladin. (Dkt. No. 70-1, Klc Affidavit, p. 1 ¶ 2).

**RESPONSE:** Not disputed.

10.    **SOF ¶ 10:**    Klc drafted a proposed complaint in August 2008 based on his independent investigation and research into potential claims against the parties involved in the underlying transaction. The draft complaint included claims for, among other things, broker malpractice against the broker, Prudential. (Dkt. No. 70-1, Klc Affidavit, p. 2 ¶ 4).

**RESPONSE:** Wrona does not dispute that Klc drafted a proposed complaint in August 2008 or that the draft complaint included false claims for broker malpractice against Wrona. Wrona disputes the allegation that Klc drafted the proposed complaint based on his research because the documents Klc obtained during his research, and which Klc attached to his affidavit, show that Wrona was nothing more than an applicant, and not the owner or broker of Prudential Utah Real Estate. For example, the Printout from the Utah Department of Commerce's online business entity search, which search Klc purportedly made on August 28, 2008, lists Mr. Wrona as only the applicant for the business name "Prudential Utah Real Estate." *See* Utah Dept. of Comm. Bus. Entity Search Printout, dated August 28, 2008 (Ex. J). The Application submitted to the Department of Commerce also specifically and repeatedly identifies Mr. Wrona as the "Old Applicant," and not the owner or broker. *See* Utah Department of Commerce Application, received November 18, 2008 (Ex. K). Thus, Klc could not have based the Complaint on his research because his research does not state that Wrona owned Prudential Utah Real Estate or that Mr. Wrona was the broker of Prudential Utah Real Estate.

11. **SOF ¶ 11:**   Klc's efforts to engage Paladin in settlement discussions proved unfruitful. (Dkt. No. 70-1, Klc Affidavit, p. 2 ¶ 3).

**RESPONSE:** Not disputed.

12. **SOF ¶ 12:**   Defendant Joseph Wrona is an attorney licensed to practice law in the State of Utah. He is a member of the law firm, defendant Wrona Law Offices, P.C. ("Wrona Law"), which is a professional corporation organized under the laws of the State of Utah. (Dkt. No. 11, Wrona Answer and Counterclaim, p. 12, ¶ 2).

**RESPONSE:** Not disputed.

13.     **SOF ¶ 13:**     In September 2008, plaintiffs retained Wrona to assist them in their dispute with Paladin, based on Wrona's claims that he had successfully negotiated and resolved similar disputes on behalf of other unit owners, without the need for litigation. (Dkt. No. 11, Wrona Answer and Counterclaim, p. 13, ¶¶ 5, 6). Wrona encouraged plaintiffs to negotiate with the Developer rather than pursue litigation. (Dkt. No. 11, Wrona Answer and Counterclaim, p. 13 ¶ 8).

    **RESPONSE:** Not disputed.

14.     **SOF ¶ 14:**     On September 29, 2008, plaintiffs executed a Representation Agreement retaining Wrona Law to represent them in the dispute with Paladin. A true and accurate copy of the Representation Agreement is attached hereto as Exhibit B.

    **RESPONSE:** Not disputed.

15.     **SOF ¶ 15:**     As set forth in the agreement, Wrona notified plaintiffs that he "formally served as general legal counsel to Prudential Utah Real Estate" and that "Michael LaPay is a Prudential agent and [was] the listing agent for the Silver Star project." Nevertheless, as set forth in the agreement, Wrona advised that "[u]nless and until it appears that a legitimate claim exists against Mr. LaPay and/or Prudential, I [Wrona] am able to represent you [plaintiffs] in this matter[.]" (See Exh. B, Representation Agreement).

    **RESPONSE:** Not disputed.

16.     **SOF ¶ 16:**     With plaintiffs' approval, Wrona attempted to negotiate a settlement with Paladin. During the course of the negotiations, Paladin made several settlement offers, none of which were satisfactory to Plaintiffs. (Dkt. No. 11, Wrona Answer & Counterclaim, pp. 13-14, ¶¶ 10-11).

    **RESPONSE:** Not disputed.

17.     **SOF ¶ 17:**     In Fall 2008, Klc advised plaintiffs that Wrona was not merely Prudential's former Counsel, but that he was one in the same with Prudential, Paladin's agent. Klc reached this conclusion based on the results of an online public-records search showing Joseph E. Wrona as the applicant/owner of the "Prudential Utah Real Estate" fictitious business name. (Dkt. No. 70-1, Klc Affidavit, p. 2 ¶ 5; p. 3 ¶ 8). Consequently, the complaint that Klc drafted for the plaintiffs identified the broker defendant, Prudential, as "Joseph E. Wrona doing business as Prudential Utah Real Estate." (Dkt. No. 70-1, Klc Affidavit, p. 2 ¶ 7).

**RESPONSE:** Wrona does not dispute what Klc told the Plaintiffs or that the Plaintiffs' Complaint falsely accused Wrona of being Prudential. Wrona disputes the allegation that Klc reached his conclusion based on Klc's research. The documents obtained in Klc's research show that Wrona was nothing more than an applicant for a business "dba", and not the owner of Prudential Utah Real Estate. *See* Response to SOF ¶ 10.

18.     **SOF ¶ 18:**     In November 2008, after Wrona was unable to broker a mutually satisfactory deal between the parties, plaintiffs instructed him to cease all work on the Paladin matter. (Dkt. No. 11, Wrona Answer and Counterclaim, pp. 13-14, ¶¶ 10-11).

**RESPONSE:** Disputed.     Wrona successfully negotiated a settlement solution with Paladin. *See* Summary Judgment Order at 3. The Plaintiffs, however, rejected the proposal Wrona negotiated. *See id.* At about this same time, the Plaintiffs became delinquent in paying Wrona. *See id.* On December 21, 2008, Wrona then informed the Plaintiffs that it was necessary for Wrona to withdraw as their counsel due to non-payment. *See id.* On January 7, 2009, the Plaintiffs consented to Wrona's withdrawal. *See id.*

19.     **SOF ¶ 19:**     A fee dispute eventually arose between plaintiffs and Wrona regarding the amount of Wrona Law's final invoice. This dispute culminated in Wrona Law filing a small claims action against plaintiffs on February 2, 2009.

**RESPONSE:** Disputed. Civil Rule 56(c) requires the Plaintiffs to support their factual assertions with citations to admissible evidence. FED. R. CIV. P. 56(c). Because the Plaintiffs have failed to cite any materials supporting SOF ¶ 19, SOF ¶ 19 cannot be a basis for summary judgment and should be stricken. Moreover, *see* Response to SOF ¶ 18. In addition, after Wrona withdrew, Wrona attempted to negotiate with the Plaintiffs to resolve the attorney fee dispute. *See id.* The Plaintiffs, however, failed to agree to a resolution. *See id.* Wrona was then

forced to file a collection action against the Plaintiffs, which eventually led to a judgment on July

15, 2009. *See id.* The Plaintiffs to date have never disputed a particular billing entry in a Wrona

Law invoice.

20.    **SOF ¶ 20:**    On March 3, 2009, plaintiffs commenced the instant action in federal court against Paladin and numerous other named entities and individuals, including "Joseph E. Wrona doing business as Prudential Utah Real Estate," "Joseph E. Wrona, individually, and the Wrona Law Offices, P.C." (Dkt. No. 1, Complaint, p. 1). The complaint charged "Joseph E. Wrona doing business as Prudential Utah Real Estate" with securities fraud and real estate broker malpractice. The complaint also included allegations of legal malpractice against Wrona, individually, and Wrona Law Offices, P.C. based on a purported conflict of interest stemming from Wrona Law's representation of plaintiffs in negotiations with Paladin. *Id.*

**RESPONSE:** Wrona does not dispute that the Plaintiffs' Complaint wrongfully accused

Wrona of doing business as Prudential Utah Real Estate. Wrona also does not dispute that the

Plaintiffs falsely accused Wrona of securities fraud, real estate broker malpractice, and legal

malpractice. Wrona also adds that the Court dismissed all of the Plaintiffs' claims against Wrona

on summary judgment. *See* Summary Judgment Order.

21.    **SOF ¶ 21:**    On March 30, 2009, Wrona served on Klc a Fed. R. Civ. P. 11 safe-harbor letter, demanding withdrawal of the Complaint against him and his firm. (Dkt. No. 11, Wrona Answer & Counterclaim, pp. 13-14, ¶¶ 10-11).

**RESPONSE:** Not disputed.

22.    **SOF ¶ 22:**    On April 15, 2009, Wrona Law obtained a default judgment against plaintiffs in the small claims action, in the amount of $2,405.83 (Dkt. No. 69, Wrona Aff., p. 23, ¶ 19).

**RESPONSE:** Not disputed.

23.    **SOF ¶ 23:**    On May 7, 2009, the federal district court issued a Summons as to the Wrona Defendants. (Dkt. No. 4).

**RESPONSE:** Not disputed.

24.     **SOF ¶ 24:**     Plaintiffs subsequently caused the Summons and Complaint to be served upon the Wrona Defendants.  (See Dkt. No. 11, Wrona Answer and Counterclaim, p. 15, ¶ 26).

**RESPONSE:** Not disputed.

25.     **SOF ¶ 25:**     On June 9, 2009, the Wrona Defendants filed an Answer and Counter-Complaint for: (a) abuse of process; and (b) intentional infliction of emotional distress. (Dkt. No. 11).

**RESPONSE:** Not disputed.

26.     **SOF ¶ 26:**     On November 5, 2010, the Wrona Defendants filed a motion for Rule 11 sanctions against Klc.  (Dkt. No. 68).  The motion was denied on February 1, 2011. (Dkt. No. 76).

**RESPONSE:** Not disputed.

27.     **SOF ¶ 27:**     Thereafter, the Wrona Defendants sought and obtained summary judgment as to the claims against them.  (Dkt. No. 77, 78).

**RESPONSE:** Not disputed.

## STANDARD OF REVIEW

"Summary judgment is only appropriate 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'"  *State Farm Mut. Auto. Ins. Co. v. Fisher*, 618 F.3d 1103, 1106 (10th Cir. 2010) (quoting FED. R. CIV. P. 56(c)(2)).  In evaluating a motion for summary judgment "courts are required to view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the summary judgment motion.'"  *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quoting *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655

(1962)). In addition, the Court evaluates whether a material issue of fact exists by determining

whether the record could lead a reasonable jury could return a verdict for the nonmoving party.

*See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**ANALYSIS**

## I.    WRONA'S ABUSE OF PROCESS CLAIM IS WELL PLEADED AND GROUNDED IN HARD FACTS.

The DeMarcos argue that Wrona's Abuse of Process Claim is unsustainable as a matter

of law.  Under Utah law, "[a]buse of process applies to one who uses legal process against

another primarily to accomplish a purpose for which it is not designed."  *Gilbert v. Ince*, 1999

UT 65, ¶ 17.  *See also Anderson Dev. Co. v. Tobias*, 2005 UT 36, ¶ 63.  It is the "ulterior

purpose" that is the touchstone of the claim, and the Utah Supreme Court has explained that,

> It is to be conceded that even though an action may have been properly initiated, and even though the process (the commitment) was lawfully issued, if it was used for an ulterior purpose for which it was not intended, that could be found to be actionable as an abuse of process.  This is so because the essence of that cause of action is a perversion of the process to accomplish some improper purpose, such as compelling its victim to do something which he would not otherwise be legally obliged to do.

*Crease v. Pleasant Grove City*, 519 P.2d 888, 890 (Utah 1974) (emphasis supplied).  The Tenth

Circuit has identified two elements to Utah's abuse of process claim.

> To establish a claim for abuse of process in Utah, the claimant must show (1) an ulterior purpose in bringing the suit, and (2) a willful act in the use of process not proper in the regular conduct of the proceedings.

*Rusakiewicz v. Lowe*, 556 F.3d 1095, 1103 (10th Cir. 2009).  Each of those two elements is

present in this case.

A. **The DeMarcos' Ulterior Purpose.**

The DeMarcos filed, then served, then maintained their claims against Wrona for the following ulterior purposes: (1) to avoid paying the attorney fees that the Plaintiffs owed Wrona; (2) to compel Wrona to abandon the prosecution of its small claim collection action against the Plaintiffs; and (3) once a Judgment was obtained against the DeMarcos, to compel Wrona to abandon its collection effort after obtaining judgment. In Utah, the "ulterior purpose" portion of an abuse of process claim "usually involves coercing another through the use of process to obtain something such as the surrender of money, or compelling the victim to do something which he would not otherwise be legally obligated to do." *Puttuck v. Gendron*, 2008 UT App 362, ¶ 14 (internal citations, quotations, and alterations omitted). An ulterior purpose is "using the process to put pressure upon the other to compel him to pay a different debt or to take some other action or **refrain from it.**" *See Hatch v. Davis*, 2004 UT App 378, ¶ 33 (emphasis supplied).

Eleven days after Wrona served the DeMarcos with the collection action, the DeMarcos retaliated by filing the present action against Wrona. Then when Wrona obtained a default judgment against the DeMarcos in small claim court, the DeMarcos invoked this action to set aside the default judgment. When Wrona thereafter refused to dismiss the small claim action, the DeMarcos retaliated by serving the present action on Wrona. Then when Wrona filed its Counterclaim in this Action, the DeMarcos retaliated by asserting this action as a counterclaim against Wrona in the collection action.

The chain of retaliatory acts by the DeMarcos constitutes evidence that the DeMarcos acted to "put pressure" on Wrona and "compel" Wrona to "refrain" from prosecuting a collection

14

action and collecting on a judgment. According to Utah law, that is the very definition of abuse of process. *See, e.g., Hatch*, 2004 UT App 378, ¶ 33.

The DeMarcos misrepresent that the collection action had ended by the time the DeMarcos served Wrona with the Federal Action. In reality, after Wrona obtained a default judgment on April 15, 2009, and on the DeMarcos' motion, the small claims court set aside the default judgment on May 6, 2009. The DeMarcos then served Wrona the very next day on May 7, 2009, and again on May 14, 2009, i.e., while the collection action was still ongoing. Indeed, the DeMarcos actually filed a counterclaim against Wrona in the collection action on June 12, 2009. It was not until July 15, 2009, two months after the DeMarcos served Wrona, that the collection action ended, and it ended with a judgment in Wrona's favor. The DeMarcos' misrepresentation of the record on this central point of their argument demonstrates that the DeMarcos' arguments for summary judgment are as baseless as their original claims against Wrona. There is ample evidence to support a finding that the DeMarcos filed their claims against Wrona for an ulterior purpose and that they acted willfully after filing those claims to pressure Wrona Law into dropping its collection action.

### B.    The DeMarcos' Willful Acts.

The DeMarcos argue that no willful act exists to support Wrona's abuse of process claim. In Utah, the second element of an abuse of process claim is a "willful act," which is defined as "conduct independent of the legal process itself that corroborates the alleged improper purpose." *See Hatch v. Davis*, 2006 UT 44, ¶ 39. It is this willful act that serves to confirm the ulterior purpose. *See id.* at ¶ 40.

15

The DeMarcos contend that service of the complaint and summons was not an abuse of process because it accomplished its "intended" goal of establishing jurisdiction. But the DeMarcos' "intent" is a question of fact. If the <u>primary</u> purpose of the DeMarcos' acts was to compel Wrona to dismiss its small claim action, then those acts combined with the DeMarcos' other acts constitute an abuse of process.

> As understood by the Restatement, abuse of process applies to 'one who uses a legal process against another <u>primarily</u> for a purpose for which it was not designed.' Abuse of process, as a term of art, is more narrowly construed by the Restatement than by many of our prior cases, which tended to employ it as a catch-all description for any private misuse of judicial resources.

*Gilbert v. Ince*, 1999 UT 65, ¶ 17.

The facts demonstrate that the DeMarcos filed their claims against Wrona in response to Wrona's pursuit of the collection action. The DeMarcos then invoked the existence of this Action to set aside the first default judgment against them in small claims court. The DeMarcos similarly used this Action to assert a counterclaim in small claims court against Wrona. After Wrona obtained a judgment in small claims court against the DeMarcos, the DeMarcos refused to dismiss their bogus claims and pay Wrona Law's judgment. The DeMarcos refused to dismiss their bogus claims even after Wrona provided the DeMarcos with proof that their claims were nonsense. The DeMarcos did nothing to prosecute their claims, and the DeMarcos forced Wrona to file a Motion for Summary Judgment to extinguish the claims. Only when the DeMarcos faced the prospect of having to pay for the legal work necessary to attempt to oppose summary judgment did the DeMarcos finally abandon their claims against Wrona. The DeMarcos never

conducted any discovery against Wrona, and the DeMarcos didn't even bother to file an opposition to Wrona's Motion for Summary Judgment.

This set of facts constitutes strong evidence that the primary purpose for filing claims against Wrona in this case was not to establish jurisdiction and pursue the prosecution of those claims, but to instead use the filing, service and ongoing presence of the claims against Wrona as a tool to compel Wrona to refrain from pursuing a collection action and thereafter recovering on a judgment that Wrona rightfully obtained against the DeMarco plaintiffs. This course of conduct constitutes the tort of abuse of process.

## II.   WRONA HAS MOVED TO AMEND ITS COUNTERCLAIM TO INCLUDE THE DEMARCOS' CHARACTERIZATION OF WRONA'S CLAIM.

The DeMarcos suggest that Wrona's pleadings articulate a malicious prosecution claim. But under Utah law, malicious prosecution applies only to instances where one party has falsely accused another party of a crime. *See Gilbert v. Ince*, 1999 UT 65, ¶ 18 ("Typically, then, malicious prosecution applies to the circumstances when a person with improper motive falsely accuses another individual of a crime."). The tort of "wrongful use of civil proceedings" is Utah's civil counterpart to malicious prosecution, and it applies when one party has commenced or maintained civil proceedings for an improper purpose and without a justifiable basis. *See id.* at ¶ 19. Wrona has timely filed a Motion to Amend to include this claim, and the Court should allow Wrona to amend its counterclaim to not only conform to the evidence, but also to clarify Wrona's abuse of process claim and add the wrongful use of civil proceedings claim.

III.   **WRONA'S CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS IS SUSTAINABLE UNDER UTAH LAW.**

Contrary to the DeMarcos' arguments, Wrona's cause of action for intentional infliction of emotional distress is sustainable under Utah law. The Utah Supreme Court has stated that,

> An action for intentional infliction of emotional distress protects the emotional well-being and security of the individual against intentional and outrageous acts designed to produce distress.

*Russell v. Thomson Newspapers, Inc.*, 842 P.2d 892, 905 (Utah 1992). The Utah Supreme Court has also stated that,

> Often, however, emotional distress does not so much occur as unfold—for example, where a defendant subjects a plaintiff, not to a single outrageous act, but to a pattern of intolerable acts tolerable by themselves though clearly intolerable in the aggregate.

*Retherford v. AT&T Comm. of the Mtn. States, Inc.*, 844 P.2d 949, 975 (Utah 1992). Most recently, the Utah Supreme Court has explained that,

> [W]hile a single insult, indignity, or threat may not give rise to liability for intentional infliction of emotional distress, <u>a continuance and ongoing pattern of the same may constitute extreme, intolerable, and outrageous conduct and thus result in liability.</u>

*Cabaness v. Thomas*, 2010 UT 23, ¶ 38 (emphasis supplied).

When a claimant seeks to recover for ongoing and continuous conduct, the claimant is entitled to collect for the entire course of the defendant's conduct. *Id.* at ¶ 27. Moreover, where reasonable minds could differ, it is for the jury to decide whether conduct or a given course of conduct is sufficiently extreme and outrageous to result in liability. *Id.* at ¶¶ 36 and 45. The jury

is also instructed that "reckless disregard of the likelihood of causing emotional distress" is actionable just as if the party's action was intentional. *See Retherford*, 844 P.2d at 970-71.

In the present case, the DeMarcos continued to inflict emotional distress on Wrona after filing the Complaint. The DeMarcos prolonged the collection action, forced Wrona to appear for an additional bench trial, and refused to dismiss their baseless claims against Wrona even after Wrona provided undeniable evidence that the DeMarcos' claims were simply wrong. When these actions are combined with the DeMarcos' public accusations that Wrona committed fraud, conspiracy, securities violations, and malpractice, their actions are sufficiently extreme and outrageous to result in liability. In sum, even if one of the DeMarcos' willful acts is not sufficient to establish a claim of intentional infliction of emotional distress standing alone, the accumulation of those acts is sufficiently outrageous to result in liability. At the very least, reasonable minds could differ on this point making summary judgment inappropriate as a matter of law. The jury should decide whether the DeMarcos acted with reckless disregard that their actions would cause Wrona emotional distress.

The DeMarcos argue that based on *Bennett v. Jones, Waldo, Holbrook &McDonough*, Wrona's claim must be dismissed because the filing of a lawsuit or the use of the legal process is not grounds for a claim of intentional infliction of emotional distress. 2003 UT 9. But *Bennett* involved a motion to dismiss under Rule 12(b)(6), not a Rule 56 motion for summary judgment. The distinction is important because in *Bennett,* the court focused on the plaintiff's failures to plead the essential elements of the claim. Specifically, the plaintiff failed to allege that he suffered any damage as a result of the defendants' actions. *See id.* at ¶ 62. This is not the case

here because Wrona has pled that he suffered damage. *See* Counterclaim at ¶ 35. Moreover, the plaintiff in *Bennett* failed to plead the intent element of claim. *See Bennett*, 2003 UT 9 at ¶ 69. In this case, Wrona pled the intent element in stating that the Plaintiffs "at the very least acted in reckless disregard" of the probability that their outrageous claims could cause emotional distress. *See* Counterclaim at ¶ 33.

  *Bennett* is also distinguishable because the *Bennett* language relied upon by the DeMarcos was based on a premise that "'a party acts in good faith to pursue its own legal rights....'" *See Bennett* at ¶ 66 (quoting *Cantu v. Resolution Trust Corp.*, 6 Cal.Rptr.2d 151, 169 (Ct. App. 1992)). Here, facts exist that prove the DeMarcos did not act in good faith. The DeMarcos possessed proof that their allegations against Wrona were false. Nonetheless, they still filed, served, and refused to dismiss their claims against Wrona. The DeMarcos did not pursue their claims or defend their claims against Summary Judgment. These facts suggest that the DeMarcos filed their claims <u>not</u> to pursue them, but to simply compel Wrona to drop its lawful collection efforts. This ulterior purpose overcomes a premise of good faith on the DeMarcos' part.

## CONCLUSION

  The relationship between the DeMarcos' acts in this case against Wrona and the DeMarcos' acts in Wrona's collection action demonstrate that the DeMarcos had an ulterior purpose in bringing baseless claims against Wrona. The DeMarcos also engaged in an entire series of "willful acts" designed to pressure Wrona into waiving its creditor rights. The facts support an abuse of process claim. The facts also support an intentional infliction of emotional

distress claim. The DeMarcos engaged in a course of conduct that was designed and intended to ratchet up the cumulative pressure on Wrona to the point where Wrona would drop its collection effort. The whole point of the DeMarcos' course of conduct was to inflict enough emotional distress on Wrona to cause Wrona to waive its creditor rights. For these reasons, the Plaintiffs' Motion for Summary Judgment should be DENIED.

DATED this 3rd day of May, 2012.

**WRONA LAW FIRM, P.C.**

/s/ Joseph E. Wrona
Joseph E. Wrona
Jared C. Bowman
Attorneys for Defendants Joseph Wrona and
Wrona Law Offices, P.C.