**Minaret Legal Services, APC**
JOHN S. MANZANO (State Bar No. 170546)
legalservice@mammothattorney.com
181 Sierra Manor Road, #4
P.O. Box 8931
Mammoth Lakes, CA 93546
Telephone: (760) 934-4660
Facsimile: (760) 924-7992

Attorney for Plaintiffs

---

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
## CENTRAL DISTRICT, STATE OF UTAH

---

<div style="writing-mode: vertical-rl">Minaret Legal Services, APC<br>181 Sierra Manor Rd. #4<br>Mammoth Lakes, CA 93546</div>

| | |
|---|---|
| JAMES DEMARCO, et al.<br><br>                    Plaintiffs,<br>vs.<br><br>MICHAEL LAPAY, et al.<br><br>                    Defendants. | **OPPOSITION TO MOTION OF DEFENDANTS JOSEPH E. WRONA AND WRONA LAW OFFICE, P.C.  SEEKING LEAVE TO FILE AMENDED COUNTER-COMPLAINT**<br><br>CASE NO. 2:09 CV 00190<br><br><br>District Judge Ted Stewart<br><br>Magistrate Judge Paul Warner |

Plaintiffs, James DeMarco, Cheryl DeMarco, Jeffrey Ott, Nancy Ott, and Slopeside

Properties, LLP, through counsel of record, submit this Opposition to the Motion of Defendants'

Joseph Wrona and Wrona Law Office, P.C. (collectively, the "Wrona Defendants") Seeking

Leave to Amend Their Counter-Complaint. For the reasons stated in the accompanying

Memorandum, the Wrona Defendants' Motion should be denied.

<u>**MEMORANDUM**</u>

After a responsive pleading has been filed, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Denial of a motion seeking leave to amend may be appropriate, however, upon a showing of "undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. W., Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993). In this case, the motion of defendants Joseph Wrona and Wrona Law Office, P.C. seeking leave to amend their counter-complaint to include a claim for "wrongful use of civil proceedings" should be denied in light of: (1) Wrona's undue delay in moving to amend; (2) the resulting prejudice to plaintiffs; (3) the futility of Wrona's proposed claim; and (4) Wrona's demonstrable bad faith in bringing this eleventh-hour motion as a tactical maneuver. The following discussion addresses these considerations in turn.

I.    THE MOTION IS UNTIMELY AND WRONA OFFERS NO EXPLANATION FOR HIS YEARLONG DELAY IN SEEKING LEAVE TO AMEND.

Wrona states, in his motion, that plaintiffs "cannot argue that the amendment is untimely" because Wrona is, ostensibly, "moving to amend its Counterclaim within the time the Court set for doing so under the Amended Scheduling Order." (Motion, pp. 2-9). This is inaccurate. The original scheduling order, entered by this court on March 10, 2010, set a deadline of "*May 1, 2010*" as the "Last Day to File Motion[s] to Amend Pleadings." (Dkt. No. 39, p. 2) (original emphasis). This deadline was not changed by the Amended Scheduling Order of November 9, 2011, (Dkt. No. 107), and was *explicitly reiterated* in the most recent Amended Scheduling Order of February 17, 2012. (Dkt. No. 150, p. 2). Thus, Wrona's suggestion that his motion is authorized under an extended deadline for filing motions to amend is simply not true. The instant motion comes *two years* after the deadline for filing motions to amend, and nearly *six months* after the close of fact discovery. (Dkt. No. 150). It was also filed nearly two months after the deadline for dispositive motion practice.

"It is well settled in this circuit that untimeliness alone is a sufficient reason to deny leave

Minaret Legal Services, APC
181 Sierra Manor Rd. #4
Mammoth Lakes, CA 93546

to amend, especially when the party filing the motion has no adequate explanation." *Frank v. U.S. West, Inc*., 3 F.3d 1357, 1366 (10th Cir.1993) (internal citations omitted). *See, e.g.*, *Viernow v. Euripides Dev. Corp.*, 157 F.3d 785, 799 (10th Cir. 1998). Moreover, where, as here, a scheduling order governs the case, the Tenth Circuit has interpreted Fed. R. Civ. P. 16 as imposing a "good cause" standard to untimely motions to amend. *See Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 n. 4 (10th Cir.2006). "This requires the moving party to show that it has been diligent in attempting to meet the deadlines, which means it must provide an adequate explanation for any delay." *Id. See Denmon v. Runyon*, 151 F.R.D. 404, 407 (D.Kan.1993) (affirming an order denying the plaintiff's motion to amend after the deadline the scheduling order established had passed and stating that, "[t]o establish 'good cause,' the party seeking to extend the deadline must establish that the scheduling order's deadline could not have been met with diligence"); *SIL–FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1518–19 (10th Cir.1990) (affirming, under rule 16(b), denial of a motion to amend an answer to include a compulsory counterclaim filed three months after the scheduling order deadline). *C.f. Kee v. Fifth Third Bank*, 2008 WL 183384, at *1 (D.Utah Jan. 17, 2008) (finding "good cause" to amend court's scheduling order when there was a withdrawal of counsel from the action).

Wrona's moving papers fail to offer an adequate explanation for his extended delay in filing the instant motion. Wrona states that "because a claim for wrongful use of civil proceedings (and malicious prosecution) requires that the offending proceedings terminate in the claimant's favor before a cause of action will accrue, Wrona was prohibited from asserting a claim of wrongful use of civil proceedings before now." (Motion, p. 8). Apparently, Wrona contends that the court's May 9, 2011 interlocutory order granting summary judgment constituted a final termination of the "offending proceedings." (Dkt. No. 88). As explained further below, such is not the case. But even if it were, Wrona has offered no explanation whatsoever for why he waited an additional *twelve months* before filing the instant motion. This delay is not indicative of "reasonable diligence." At the very least, in order to establish good cause for his untimely motion, Wrona must offer *some* explanation for the delay. He has provided none. Thus, Wrona has failed to meet his burden of showing "good cause," under Rule 16(b), to permit an amendment more than

two years after the deadline for filing motions to amend and more than six months after the discovery cutoff. *See also Kelly v. Hard Money Funding, Inc.*, 2004 UT App 44, 87 P.3d 734, 742 ("[M]otions to amend are typically deemed untimely when they are filed in the advanced procedural stages of the litigation process, such as after the completion of discovery[.]"). The motion may be denied on this basis alone.

II.       WRONA'S PROPOSED AMENDMENT TO ADD A CLAIM FOR "WRONGFUL USE OF CIVIL PROCEEDINGS" IS FUTILE.

"Although Fed. R. Civ. P. 15(a) provides that leave to amend shall be given freely, the district court may deny leave to amend where amendment would be futile. A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Jefferson County Sch. Dist. No. R–1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 859 (10th Cir.1999); *see also Bellmon*, 935 F.2d at 1109–10 ("Although dismissals under Rule 12(b)(6) typically follow a motion to dismiss ..., a court may dismiss sua sponte when it is patently obvious that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity  to amend his complaint would be futile.") (citations omitted).

Wrona has not adequately alleged and, as a matter of law, cannot maintain a counterclaim for wrongful use of civil proceedings for two very simple reasons: (1) no such cause of action can accrue prior to entry of a final judgment, which has not occurred in this matter; and (2) even if such a claim has accrued, it cannot be litigated as a counterclaim in the very action that the counter-complainant alleges was wrongfully instituted.

"Utah courts have adopted the Restatement's requirement that the underlying proceeding must be terminated in favor of the accused before a claim for the wrongful use of civil proceedings can be brought." *Hatch v. Davis*, 102 P.3d 774, 780-81 (Utah App., 2004). Thus, "[a] claim for wrongful use of civil proceedings is not ripe" until the underlying action is finally terminated. *Ashley Creek Phosphate Co. v. Chevron USA, Inc.*, 315 F.3d 1245, 1265-66 (10th Cir. 2003). In a recent decision, *Stitching Mayflower Mountain Fonds v. City of Park City Utah*, 2008 WL 4569888 (D. Utah Oct. 8, 2008) this court addressed what constitutes successful "termination" as follows:

Minaret Legal Services, APC
181 Sierra Manor Rd. #4
Mammoth Lakes, CA 93546

3

Minaret Legal Services, APC
181 Sierra Manor Rd. #4
Mammoth Lakes, CA 93546

> Section 674 of the Restatement (Second) of Torts, which was relied on by the Utah Supreme Court to provide the elements of a claim for wrongful use of civil proceedings in Utah, contains comments relating to when a proceeding is considered terminated. The Comment on Clause (b) provides that a case may be terminated by "the favorable adjudication of the claim by a competent tribunal." Restatement (Second) of Torts § 674 comment on Clause (b) (1977). That adjudication is "a sufficient termination of the proceedings, unless an appeal is taken. If an appeal is taken, the proceedings are not terminated until the final disposition of the appeal and of any further proceedings that it may entail."
>
> In this case, the court's August 29 Order [dismissing Stitching's claims against UPCM] is not a final adjudication of the claim. Under Rule 54(b) of the Federal Rules of Civil Procedure, "any order or other decision, however designated, that adjudicates *fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.*" Fed.R.Civ.P. 54(b). Even though the court's August 29 Order dismissed Stichting's claims, the order cannot be considered a final adjudication of the claim because that Order can be revised at any time prior to a final adjudication of all the claims in this action. Stichting attempted to appeal the court's dismissal of its claims, but the court denied Stichting's request to certify the court's August 29 Order as final under Rule 54(b).

*Id.* Accordingly, the court concluded "that UPCM's counterclaim for wrongful use of civil proceedings is premature." *Id.* This construction of what constitutes a successful "termination" is consistent, not only with the Utah Supreme Court's general pronouncements regarding the tort of wrongful use of civil proceeding, but also with the overwhelming weight of out-of-state precedent holding that a claim for malicious prosecution does not accrue, if at all, until a *final judgment* has completely disposed of all claims and issues between the parties in the underlying action. An interlocutory order granting summary judgment as to some, but not all issues and claims, does not qualify. *See Levy v. Ohl,* 477 F.3d 988 (8th Cir. 2007) (holding that physician's cause of action for malicious prosecution against patient accrued on date when patient's underlying malpractice action against physician and medical center was dismissed *in its entirety*, even though physician had previously been dismissed from suit). *Levy v. Ohl,* 477 F.3d 988 (8th Cir. 2007); *Linn v. Moffitt,* 73 S.W.3d 629 (Mo. Ct. App. E.D. 2002) ("A claim for malicious prosecution accrues when the underlying proceeding is terminated in the plaintiff's favor; termination is effected by a final judgment on the merits"); *Chrysler Corp. v. Fedders Corp.*, 540 F.Supp. 706 (S.D.N.Y. 1982)

(holding that to extent that the malicious prosecution claims rested upon litigation between the parties which had not terminated, the claims were premature. *Chrysler Corp. v. Fedders Corp.*, 540 F.Supp. 706 (S.D.N.Y. 1982)). *Haas v. Tulsa Police Dept.*, 58 Fed.Appx. 429 (10th Cir.2003) (holding that an order that grants summary judgment in part and denies it in part is an interlocutory order, not a final judgment).[1] Because an element of wrongful use of civil proceedings is prior termination of the objectionable civil action, "the cause of action for wrongful institution of a civil proceeding does not accrue until such termination; therefore, such a cause *cannot be interposed in a counterclaim in the very civil proceeding that was allegedly instituted wrongfully*." *Wiener v. Wiener*, 84 A.D.2d 814, 815 (N.Y., 1981) (emphasis added).

This conclusion is supported, not only by concepts of accrual, but also by practical considerations of avoiding confusion of the issues at trial and preventing the use of such claims for merely tactical or retaliatory purposes. *See, e.g., Higgins v. Shenango Pottery Co.*, 99 F.Supp. 522 (Pa., 1951) (holding that counterclaims against plaintiff for libel or malicious prosecution should be dismissed on motion, since trial of such issues along with issues raised in complaint would confuse the jury); *Salt Lake City v. Utah Lake Farmers Ass'n*, , 286 P.2d 773, 778 (Utah, 1955) (noting that it "would not be an aid to the swift and just disposition of the matter to permit the issues to be confused by an uncertain claim, the substance of which is contingent upon the outcome of the principal action."). Thus, Wrona cannot assert a claim for wrongful use of civil proceedings as a counter-claim in this case.

III.     WRONA'S MOTION TO AMEND IS OCCASSIONED BY BAD FAITH.

Even assuming *arguendo* that "successful termination," for purposes of establishing a claim for

---

[1]     Indeed, some courts have gone so far as to hold that a malicious prosecution claim does not accrue until the *right of appeal* from the action is finally extinguished. *See Webb v. Airlines Reporting Corp.*, 825 F. Supp. 273, 275-77 (D. Kan. 1993) ("The court believes that the Kansas Supreme Court, if presented with this question under the circumstances of this case, would hold that Webb's cause of action accrued on December 13, 1991, the final day on which an appeal could have been filed."); *Toranto v. Wall*, 891 S.W.2d 3 (Tex. App. 1994) (holding that cause of action for malicious prosecution accrued from time underlying malpractice action ended in favor of doctor, on date summary judgment in doctor's favor became final, 30 days following order, at end of trial court's plenary power). It is for this reason that "a claim for damages growing out of the institution of the action or dependent or contingent on its outcome *is not a proper counterclaim*." *Salt Lake City v. Utah Lake Farmers Ass'n*, , 286 P.2d 773, 778 (Utah, 1955) (internal quotation marks and citations omitted, emphasis added); *Hatch v. Davis*, 102 P.3d 774 (Utah App., 2004) (rejecting counter-complainant's contention that "it was not improper for his action for malicious prosecution to be brought as part of a counterclaim.").

Minaret Legal Services, APC
181 Sierra Manor Rd. #4
Mammoth Lakes, CA 93546

wrongful use of civil proceedings, was satisfied by this court's interlocutory order of May 9, 2011, Wrona waited for nearly a year after learning of that order to file the instant motion. Notably, he did so only *after* the court-ordered summary judgment deadline passed and only *after* plaintiff filed a summary judgment motion seeking dismissal of his unsustainable abuse-of-process claim. "[A]wareness of facts and failure to include them in the complaint [may] give rise to the inference that the [claimant] was engaging in tactical maneuvers to force the court to consider various theories seriatim. In such a case, where the movant first presents a theory difficult to establish but favorable and, only after that fails, a less favorable theory, denial of leave to amend on the grounds of bad faith may be appropriate." *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 599 (5th Cir. 1981). *See Koch v. Koch Industries,* 127 F.R.D. 206. (D.Kan.1989) (holding that amendment adding causes of action to complaint will be denied if sought in bad faith and movant's bad faith is apparent from evidence of record).

    A claim for abuse of process presents at least one clear tactical advantage over a claim for wrongful use of civil proceedings. "An abuse of process claim *can be raised as a counterclaim* under Utah law" and need not be instituted as a separate action. *Ashley Creek Phosphate Co. v. Chevron USA, Inc.*, 315 F.3d 1245, 1265-66 (10th Cir. 2003). Indeed, "[s]ince no cause of action for malicious prosecution arises until the proceedings have terminated, a counterclaim for malicious prosecution interposed in the very proceeding complained about *is not compulsory. . . [and] is not barred by the compulsory counterclaim rule when it is asserted in a subsequent suit.*" *United States v. Levering,* 446 F. Supp. 977, 979 (D. Del. 1978) (emphasis added).

    This begs the question: if Wrona honestly believed that a claim for wrongful use of civil proceedings ripened upon this court's granting of summary judgment in May 2011, why did he not simply file a separate action asserting the claim? As Wrona freely admits in his moving papers, the parties conducted no discovery with regard to his counter-complaint in this action, and the litigation is already in its late procedural stages. At trial, Wrona's allegations of "wrongful use of civil proceedings" would be wholly collateral to the claims between plaintiffs and the Paladin Defendants for breach of real estate contract, fraud, and construction defects. Why has Wrona gone to such extraordinary lengths: (1) to defend an obviously deficient "abuse

Minaret Legal Services, APC
181 Sierra Manor Rd. #4
Mammoth Lakes, CA 93546

of process" claim in this action; and (2) to jury-rig his counter-complaint with a claim for

wrongful use of civil proceedings that would more properly be litigated as a separate lawsuit?

A letter to plaintiffs' counsel from Wrona, dated November 21, 2011, reveals the reason[2]:

> I appeared at the recent mediation conference willing to settle for $50,000, an amount that is less than the cost to my firm in defending against your clients' frivolous claims. As a matter of state law, I am entitled to recover attorney fees because the claims arise from or relate to the original fee dispute that is governed by my representation agreement and the attorney fees provision in that agreement. Additionally, I intend to continue to pursue the existing counterclaims against your clients for much higher damages. . . .
>
> **At trial, I will have no choice but to produce all of the evidence in my possession that demonstrates that your clients are using this action to cover the losses they incurred as a result of their unwise real estate speculation [with Paladin].** I will also introduce the evidence of your clients' refusal to pay fees they previously promised to pay, and my firm's Judgment against your clients. I will need to introduce the written requests by my firm for voluntary dismissal, and your clients' refusal to retract the false allegations in their Complaint.
>
> Each and every time I am forced to devote time and attention to this matter, it costs me that amount of billable time because I am prevented from performing billable work for other clients. Therefore, the settlement amount I am willing to accept to dismiss my firm's counterclaims will continue to increase each and every day that I remain involved in this action. Today, I will agree to dismiss my counterclaims provided that payment in the amount of $55,000 is provided to my firm on or before the close of business on November 30, 2011.

(*See* Exh. A., Nov. 21, 2011 Letter from Wrona to Manzano) (emphasis added). Regardless of

whether Wrona, in fact, possesses such "evidence" (he doesn't), the contents of this letter are

deeply troubling from both a legal and ethical standpoint. A threat to reveal adverse "evidence"

and the implicit corollary of that threat—a promise to withhold evidence in exchange for

payment—amounts to extortion. *See State v. Harrington,* 128 Vt. 242 (1969) (attorney's

suggestion in letter demanding $175,000 settlement in divorce case that he might advise his client

to report husband to Internal Revenue Service and United States Custom Service constituted

---

[2]     A true and accurate copy of the letter is attached hereto as Exhibit A.

Minaret Legal Services, APC
181 Sierra Manor Rd. #4
Mammoth Lakes, CA 93546

"veiled threats [that] exceeded the limits of respondent's representation of his client in divorce action" and supported attorney's extortion conviction); *See Barton v. State Bar*, 2 Cal.2d 294, 297 (1935) (the conduct of an attorney who threatened an oil company with reporting adulteration of its gasoline to the prosecutor unless it paid his clients was not only grounds for disbarment but "constituted an attempt to extort money as said crime is defined in sections 518, 519 and 524 of the Penal Code"). Here, it is especially egregious. Wrona *represented plaintiffs as their attorney* in the underlying dispute with the Paladin Defendants. Information which plaintiffs purportedly disclosed to Wrona in the course of that representation is not "evidence"; it is protected attorney-client confidences. To the extent Wrona's November 21, 2011 letter seeks to extract money from his former clients by threatening to fabricate and disclose confidences that would be damaging to plaintiffs in their case against the Paladin Defendants, the letter demonstrates extreme moral turpitude and amounts to a flagrant breach of Wrona's ethical obligations as an attorney. This letter must also be viewed in light of the deposition testimony given Paladin's representative, defendant Rory Murphy, [3] indicating that Wrona already committed a serious ethical breach in the course of this litigation:

> Q.      [by Mr. Manzano] Do you ever formulate an
> opinion as to why the DeMarcos didn't want to close
> on three of the units?
> A.      Have I formed a personal opinion?
> Q.      Yes.
> A.      Can I confer with my attorney. Am I
> allowed to do that?
>         MR. MANZANO: Yes.
>         MR. LEEMAN: I think so.
>         THE WITNESS: I mean, is it -- am I
> allowed to speak my emotions? Is it...
> MR. LEEMAN: You can express your opinion.
> THE WITNESS: They're real estate
> speculators. They were making a play on us and it
> didn't work out the way they wanted it to, so they
> walked away, and they tried to come up with a bunch
> of different reasons, like they're trying to do now,
> to get out of their obligation that they signed for.
>         Q. (By Mr. Manzano) Are there any facts that
> you used to formulate that opinion?
>         A. Their attorney, you know, their original
> attorney who's now suing them told me that, so...
>         Q. Their original attorney?

---

[3]      A true and accurate copy of the relevant portions of the transcript of Murphy's deposition testimony, taken on November 2, 2011, is attached hereto as Exhibit B.

Minaret Legal Services, APC
181 Sierra Manor Rd. #4
Mammoth Lakes, CA 93546

Minaret Legal Services, APC
181 Sierra Manor Rd. #4
Mammoth Lakes, CA 93546

> A. Joe Wrona.
> Q. He told you that?
> A. Yes. Well, he's -- yes. Yes.

(See Exh. A., Murphy Depo. Tr. 123: 124:23-123:23). It is readily apparent that, by his continuing involvement in this litigation, Wrona intends to inflict as much collateral damage on his former clients as possible. His desire to remain a part of this lawsuit and insistence on asserting his purported "wrongful use of civil proceedings" claim by way of amended counter-claim, rather than by a separate action, is a continuation of that effort and is occasioned by bad faith. This is sufficient reason, in itself, to deny Wrona's motion to amend.  *See Trans Video Electronics, Ltd. v. Sony Electronics, Inc*., 2011 WL 5604063 (N.D.Cal.2011) (denying motion to amend where movant's "tactical decision" not to include "new" claim at outset of litigation and shifted its strategy and moved to amend "only after briefing was completed on [opposing party's] summary judgment motion and the hearing on the motion was a week and a half away—i.e., when the proverbial writing was on the wall.*").

IV.       FED. R. CIV. P. 15(b) IS INAPPLICABLE TO WRONA'S MOTION.

        In addition to citing Fed. R. Civ. P. 15(a), governing motions to amend prior to trial, Wrona also cites, in his moving papers,  Fed. R. Civ. P. 15(b), which governs amendments of pleadings to conform to proofs presented *at trial*. Fed. R. Civ. P. 15(b)(1) (entitled "Based on Objections At Trial") and 15(b)(2) (entitled "Issues Tried By Consent"). Section 15(b) does *not* apply to a *pre-trial* motion seeking leave to amend a complaint. *See, e.g.*, *Nunez v. Boseman*, 1997 WL 370777 (S.D.N.Y. July 1, 1997) ("To the extent plaintiff seeks to amend his complaint to conform to the proof, the motion is denied as premature. Such a motion should be made at the conclusion of the evidence offered at trial."); *Telecomm Technical Services, Inc. v. Siemens Rolm Communications, Inc.* ,1998 WL 35231650 (N.D. Ga. Dec. 16, 1998) (noting that pretrial "motion to amend under Federal Rule of Civil Procedure 15(b) would be premature in that the Rule applies to amending a complaint to conform with trial evidence."). *See also In re Rasmussen*, 299 B.R. 902 (W.D. Wis. 2003) (distinguishing motion brought under "Rule 15(a), prior to trial, and [one brought] under Rule 15(b) as a motion to amend the pleadings to conform to the evidence.").

**<u>CONCLUSION</u>**

For all the foregoing reasons, plaintiffs respectfully request that the court deny the motion of defendants' Joseph Wrona and Wrona Law Office, P.C. seeking leave to amend their counter-complaint.


Dated: May 18, 2012                          MINARET LEGAL SERVICES, APC


By: /s/ John S. Manzano
    John S. Manzano
    Attorney for Plaintiffs

Minaret Legal Services, APC
181 Sierra Manor Rd. #4
Mammoth Lakes, CA 93546

## CERTIFICATE OF SERVICE

I hereby certify that on this the 18th day of May, 2012, a true and correct copy of the above and forgoing, has been sent to the following counsel of record by means indicated below:

**CM/EFC**
John A. Snow, Alex B. Leeman
Van Cott Bagley Cornwall & McCarthy (SLC)
36  South State St. Suite 1900
P.O. Box 45340
Salt Lake City, UT 84111

**CM/EFC**
Bastiaan K. Coebergh
Wrona Law Offices (Park City)
1745 Sidewinder Dr.
Park City, UT 84060

MINARET LEGAL SERVICES, APC

By:   /s/ Nancy Steelman
          Nancy Steelman
          Paralegal

Minaret Legal Services, APC
181 Sierra Manor Rd. #4
Mammoth Lakes, CA 93546