IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| JAMES DEMARCO, et al., <br><br> Plaintiffs, <br><br><br><br><br><br><br><br> vs. <br><br><br><br> MICHAEL LAPAY, et al., <br><br> Defendants. | MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT DISMISSING COUNTERCLAIMS OF DEFENDANTS JOSEPH E. WRONA AND WRONA LAW OFFICE, P.C. AND DENYING DEFENDANTS JOSEPH E. WRONA'S AND WRONA LAW OFFICES, P.C.'S MOTION FOR LEAVE TO AMEND COUNTERCLAIM <br><br><br><br><br><br> Case No. 2:09-CV-190 TS |

This matter is before the Court on Plaintiffs' Motion for Summary Judgment Dismissing Counterclaims of Defendants Joseph E. Wrona and Wrona Law Office, P.C. and Defendants Joseph E. Wrona's and Wrona Law Offices, P.C.'s Motion for Leave to Amend Counterclaim. For the reasons discussed below, the Court will grant Plaintiffs' Motion for Summary Judgment and deny Defendants' Motion for Leave to Amend.

1

I.  BACKGROUND

Plaintiffs brought this action on March 3, 2009, asserting various claims against several Defendants.[1]  Plaintiffs originally brought claims against the Wrona Defendants for real estate and legal malpractice.  The Wrona Defendants answered, asserted affirmative defenses, and brought counterclaims.[2]  In particular, the Wrona Defendants brought counterclaims for abuse of process and intentional infliction of emotional distress.

The Wrona Defendants moved for summary judgment on the claims lodged against them on February 15, 2011.[3]  Plaintiffs did not respond to that motion and informed the Court that they did not intend to respond.  Reviewing the motion, the Court agreed that summary judgment in favor of the Wrona Defendants was proper.[4]

On November 1, 2011, Plaintiffs filed an Amended Complaint.[5]  Plaintiffs' Amended Complaint maintains no claims against the Wrona Defendants.  The Wrona Defendants have reasserted their counterclaims.[6]

Plaintiffs now seek summary judgment on the Wrona Defendants' counterclaims.  The Wrona Defendants oppose the Motion for Summary Judgment.  In addition, the Wrona

---

[1]Docket No. 1.

[2]Docket No. 11.

[3]Docket No. 77.

[4]Docket No. 88.

[5]Docket No. 104.

[6]Docket No. 109.

Defendants seek to amend their counterclaims to add additional facts in relation to their pending claims and to add a claim for wrongful use of civil proceedings. The Court will first address the Wrona Defendants' Motion for Leave to Amend.

## II. MOTION FOR LEAVE TO AMEND

The Wrona Defendants seek to add additional factual allegations in support of their claims for abuse of process and intentional infliction of emotional distress. In addition, the Wrona Defendants seek to add a claim for wrongful use of civil proceedings. Plaintiffs oppose, arguing that the Motion is untimely, they will be prejudiced if amendment is allowed, the proposed claim for wrongful use of civil proceedings is futile, and the Wrona Defendants have acted in bad faith. The Court agrees that amendment would be futile.

Federal Rule of Civil Procedure 15(a)(2) dictates that "a party may amend its pleadings only with the opposing party's written consent or the court's leave." The Rule specifies that the "court should freely give leave when justice so requires."[7] However, the Court may refuse to grant leave to amend where it finds evidence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment."[8]

---

[7] Fed. R. Civ. P. 15(a).

[8] *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

A court may deny a motion for leave to amend when it would be futile to allow the party an opportunity to amend.[9] A party seeking to avoid dismissal on the basis of futility must meet the pleading requirements of a particular cause of action. With this standard in mind, the Court will first address the Wrona Defendants' proposed new claim for wrongful use of civil proceedings and will then turn to the claims for abuse of process and intentional infliction of emotional distress.

Plaintiffs argue that the Wrona Defendants cannot maintain a claim for wrongful use of civil proceedings because: (1) no such cause of action can accrue prior to entry of a final judgment; and (2) even if such a claim has accrued, it cannot be litigated as a counterclaim in this case.

Under Utah law:

> One who takes an active part in the initiation, continuation, or procurement of civil proceedings against another is subject to liability to the other for wrongful civil proceedings if (a) he [or she] acts without probable cause, and primarily for a purpose other than that of securing the proper adjudication of the claim in which the proceedings are based, and (b) except when they are ex parte, the proceedings have terminated in favor of the person against whom they are brought.[10]

The issue presented here is whether the proceedings have "terminated." As set forth above, the Court has granted the Wrona Defendants summary judgment on the claims brought against them by Plaintiffs. As a result, the Wrona Defendants argue that the proceedings have terminated in their favor.

---

[9] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[10] *Gilbert v. Ince*, 981 P.2d 841, 845 (Utah 1999) (quoting Restatement (Second) of Torts § 674).

The Wrona Defendants' argument is directly foreclosed by *Stichting Mayflower Mountain Fonds v. City of Park City*.[11] In that case, the Court earlier dismissed the plaintiff's complaint in its entirety. After so ruling, the defendants sought to add a counterclaim for wrongful use of civil proceedings. The plaintiff, as Plaintiffs do here, argued that such a claim could not be brought because the proceedings had not yet terminated. The Court provided the following helpful analysis:

> Section 674 of the Restatement (Second) of Torts, which was relied on by the Utah Supreme Court to provide the elements of a claim for wrongful use of civil proceedings in Utah, contains comments relating to when a proceeding is considered terminated. The Comment on Clause (b) provides that a case may be terminated by "the favorable adjudication of the claim by a competent tribunal." That adjudication is "a sufficient termination of the proceedings, unless an appeal is taken. If an appeal is taken, the proceedings are not terminated until the final disposition of the appeal and of any further proceedings that it may entail."
> In this case, the court's August 29 Order is not a final adjudication of the claim. Under Rule 54(b) of the Federal Rules of Civil Procedure, "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Even though the court's August 29 Order dismissed Stichting's claims, the order cannot be considered a final adjudication of the claim because that Order can be revised at any time prior to a final adjudication of all the claims in this action. Stichting attempted to appeal the court's dismissal of its claims, but the court denied Stichting's request to certify the court's August 29 Order as final under Rule 54(b). Although the court has not allowed Stichting to appeal the claims, the right to appeal this court's adjudication of the claims still exists at the conclusion of the case. Given that the court's August 29 Order cannot be deemed a final order under Rule 54(b) and the Restatement's language stating that there is not a

---

[11] 2008 WL 4569888 (D. Utah Oct. 8, 2008).

termination of the proceedings if an appeal is taken, the court concludes that UPCM's counterclaim for wrongful use of civil proceedings is premature.[12]

This reasoning is directly applicable here. It is true that the Court has granted summary judgment to the Wrona Defendants on all of Plaintiffs' claims. However, this is not a final adjudication under Rule 54(b) and this proceeding has not yet terminated. The Wrona Defendants argue that *Stichting* is inapplicable because Plaintiffs cannot appeal or revisit the Court's summary judgment because they failed to oppose summary judgment. The Wrona Defendants, however, cite nothing to support this statement. While it certainly will be difficult for Plaintiffs to mount a successful attack on the Court's summary judgment ruling based on its non-opposition, that does not mean that Plaintiffs cannot attempt to do so. The fact remains that the Court's summary judgment ruling is not a final order under Rule 54(b) and these proceedings have not yet culminated in the entry of final judgment. As a result, the Wrona Defendants' claim for wrongful use of civil proceedings fails and it would be futile to allow amendment. This ruling is consistent with the case law cited by Plaintiffs which uniformly holds that a claim for wrongful use of civil proceedings does not accrue until the entry of final judgment and cannot be brought as a counterclaim in the same proceeding which gives rise to the claim. Therefore, the Court will not permit the Wrona Defendants to add a claim for wrongful use of civil proceedings. Of course nothing in this Order should be construed as limiting the Wrona Defendants' ability to bring a wrongful use of civil proceedings claim once this action has finally terminated.

---

[12] *Id*. at *2 (quoting Restatement (Second) of Torts § 674 comment on Clause (b) (1977), Fed. R. Civ. P. 54(b)).

The Court next considers whether it would be futile for the Wrona Defendants to amend their claims for abuse of process and intentional infliction of emotional distress. As will be discussed in more detail below, the Court finds that, even considering the additional allegations presented in the proposed Amended Counterclaim, judgment in favor of Plaintiffs is warranted on these claims. Therefore, amendment would be futile and the Court will deny the Wrona Defendants' Motion for Leave to Amend.

### III.  MOTION FOR SUMMARY JUDGMENT

Plaintiffs seek summary judgment on the Wrona Defendants' counterclaims for abuse of process and intentional infliction of emotional distress.

A.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the moving party can demonstrate that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law.[13] In considering whether a genuine dispute of material fact exists, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[14] The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[15]

---

[13] Fed. R. Civ. P. 56(a).

[14] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[15] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

B.      STATEMENT OF FACTS

The facts relevant to this Motion were largely set out in the Court's Memorandum Decision and Order Granting Defendants Joe Wrona and Wrona Offices, P.C.'s Motion for Summary Judgment.[16]

Plaintiffs entered into a series of contracts to purchase units in the Silver Star Project located in Park City, Utah.  In 2008, Plaintiff Cheryl De Marco contacted Joseph Wrona by telephone and asked if he would represent Plaintiffs in an effort to renegotiate its contractual liabilities with Prudential Utah Real Estate ("Prudential").  During the telephone call, Wrona disclosed to Cheryl De Marco that he had previously provided legal services to Prudential, although not in connection with any of the Silver Star Project sales involving Plaintiffs.  Wrona informed Cheryl De Marco that he would be uncomfortable representing Cheryl De Marco if she intended to assert claims against Prudential.  Cheryl De Marco informed Wrona that Plaintiffs did not desire or intend to assert claims against Prudential and wanted his assistance in negotiating a resolution with Paladin Development Partners, LLC ("Paladin").  The next day, Wrona had an identical discussion with Plaintiff Jeffery Ott.

Cheryl De Marco and Jeffery Ott agreed to Wrona's representation and executed a Representation Agreement on September 29, 2008.  The opening paragraph of the Representation Agreement stated:

> You have asked Wrona Law Offices, P.C. to represent you in a dispute with the developers of the Silver Star Project in Park City, Utah.  I spoke with Cheryl via telephone about the dispute, and I have also spoken to Jeff about the dispute.  I

---

[16]Docket No. 88.

have disclosed both times that I formerly served as general legal counsel to Prudential Utah Real Estate. You are aware that Michael LaPay is a Prudential agent and that Mr. LaPay was the listing agent for the Silver Star project. Unless and until it appears that a legitimate claim exists against Mr. LaPay and/or Prudential, I am able to represent you in this matter pursuant to the terms set forth below[.][17]

Shortly after the execution of this Agreement, Wrona commenced negotiations with Paladin on Plaintiffs' behalf. Wrona obtained a proposed solution from Paladin which was submitted to, and ultimately rejected by, Plaintiffs. Around this same time, Plaintiffs became delinquent in their payment obligations to Wrona. On December 21, 2008, Wrona informed Plaintiffs that Wrona needed to withdraw as their legal counsel. Plaintiffs consented to this withdrawal on January 7, 2009.

After Wrona's representation of Plaintiffs concluded, a fee dispute arose between the parties. This dispute culminated in Wrona filing a collection action on February 11, 2009, in small claims court. Wrona served the collection action on the DeMarcos on February 20, 2009. Shortly after that, on March 3, 2009, Plaintiffs filed this action asserting claims against the Wrona Defendants, among others.

On March 26, 2009, the DeMarcos requested to have the collection action dismissed on the grounds that Plaintiffs had brought claims against the Wrona Defendants in this action. The collection action was set for trial on April 15, 2009, and the DeMarcos failed to appear. As a result, judgment was entered in favor of the Wrona Defendants and against the DeMarcos.

---

[17] Docket No. 80, at 4.

On April 23, 2009, the DeMarcos sought to set aside the small claims judgment. The small claims court granted that request and set a second bench trial on July 15, 2009. Thereafter, on May 7 and 9, 2009, Plaintiffs served the Wrona Defendants with the federal action.

On June 6, 2009, the Wrona Defendants filed their counterclaim against Plaintiffs. On June 12, 2009, the DeMarcos filed a counterclaim against the Wrona Defendants in the small claims action. The Wrona Defendants eventually prevailed in the small claims action. The Wrona Defendants have also obtained summary judgment on Plaintiffs' claims in this action.

C.   DISCUSSION

The Wrona Defendants' counterclaim brings two claims against Plaintiffs: abuse of process and intentional infliction of emotional distress. Plaintiffs seek summary judgment on both claims.

   *1.   Abuse of Process*

The Utah Supreme Court has described the "'essence' of the tort of abuse of process to be 'a perversion of the process to accomplish some improper purpose.'"[18] To prove an abuse of process claim, a party must show both (1) an ulterior purpose and (2) a wilful act in the use of the process not proper in the regular prosecution of the proceedings.[19] As will be discussed, the Court's focus here is on the wilful act requirement.

---

[18] *Hatch v. Davis*, 147 P.3d 383, 389 (quoting *Crease v. Pleasant Grove City*, 519 P.2d 888, 890 (Utah 1974)).

[19] *Id.*

10

The Utah Supreme Court has warned that "[i]t is easy to slip into the conceptual trap of simply defining the 'wilful act' as the legal process that the tortfeasor pursues according to his ulterior motive."[20] Such a definition, however, would "render the 'wilful act' requirement superfluous."[21] Thus, "[t]o satisfy the 'wilful act' requirement, a party must point to conduct independent of legal process itself that corroborates the alleged improper purpose."[22] "Use of legal process with a bad motive alone does not defeat that right; a corroborating act of a nature other than legal process is also necessary. It is this corroborating act that permits true legal process to be branded a perversion of the process."[23]

> The "wilful act" requirement is consistent with the notion that an "improper act may not be inferred from the motive." The "wilful act" element can be understood as an obligation imposed on the complaining party to allege that the tortfeasor has confirmed through his conduct his improper ulterior motive for employing legal process against the plaintiff. In this respect, the "wilful act" element exists to be in the service of the "ulterior purpose" core that makes up the "essence" of abuse of process. It signifies that in the eyes of the law sufficient grounds exist to believe that the complaining party may be exposed to injury that may not reasonably be redressed through the imposition of sanctions or like measures within the litigation forum itself.[24]

The Utah Supreme Court in *Hatch v. Davis* provided helpful examples in demonstrating whether the wilful act requirement has been met. The court cited with approval *Early Detection*

---

[20]*Id*.

[21]*Id*.

[22]*Id*. at 390.

[23]*Id*.

[24]*Id*.

11

*Center, PC v. New York Life Insurance Co.*,[25] in which an abuse of process claim was dismissed because the acts "alleged as the irregular acts" were no more than "the filing of a groundless suit."[26] In contrast, the Utah Supreme Court cited *Templeton Feed & Grain v. Ralston Purina Co.*,[27] in which the defendant used legal process to seize turkeys at the height of the Thanksgiving season in order to force payment of a debt, which was found to be abuse of process.[28]

In the Wrona Defendants' original Counterclaim, the Wrona Defendants alleged that Plaintiffs brought a meritless claim against them and did so for the purpose of harassment and delay.[29] Utah courts have made clear that "'there is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant.'"[30] The Wrona Defendants' original counterclaim does no more than demonstrate an incidental motive or purpose: to harass and delay. As such, it cannot survive Plaintiffs' Motion for Summary Judgment.

The Wrona Defendants now seek to file an Amended Counterclaim that provides additional allegations in support of their claim. The Amended Counterclaim identifies several

---

[25] 403 N.W.2d 830 (Mich. Ct. App. 1986).

[26] *Id*. at 835 (internal quotation marks omitted).

[27] 446 P.2d 152 (Cal. 1968).

[28] *Id*. at 155-56.

[29] Docket No. 11, at 15-16.

[30] *Bennett v. Jones, Waldo, Holbrook & McDonough*, 70 P.3d 17, 29 (Utah 2003) (quoting Restatement (Second) of Torts § 682 cmt. b).

ulterior purposes that were not part of the Original Counterclaim, including: (1) thwarting the collection action; (2) pressuring the Wrona Defendants to cease their collection efforts; (3) delaying payment of Plaintiffs' debt to the Wrona Defendants; and (4) Plaintiffs' attempt to avoid paying their debt to the Wrona Defendants.  These facts, if proven, are likely sufficient for a finder of fact to find an ulterior purpose.  However, as stated, a party must allege both an ulterior purpose and "a wilful act in the use of the process not proper in the regular conduct of the proceeding."[31]

The Wrona Defendants have now identified several acts which they deem to be "wilful" in support of their abuse of process claim.  Specifically, the Wrona Defendants point to the filing and serving of this action, refusing to dismiss this action, invoking this action to dismiss the collection action, delaying the collection action, filing a counterclaim in the collection action, and refusing to dismiss their claims.  These additional allegations present a much closer question.  Ultimately, however, they are insufficient to avoid summary judgment.

As an initial matter, it should be noted that most of the actions identified by the Wrona Defendants cannot be considered "wilful acts" as they are not acts at all.  The Wrona Defendants take issue with Plaintiffs' failures to act, but do not point to much demonstrating a wilful act.  Those items that can be considered acts are not wilful act in the use of the process that are not proper in the regular prosecution of the proceedings.  Rather, they are acts consistent with the normal course of prosecuting/defending this action and the collection action.  There is no evidence that Plaintiffs did anything other than carry out the judicial process, in this case and the

---

[31] *Hatch*, 147 P.3d at 389.

collection action, as allowed.  At most, the Wrona Defendants have demonstrated an ulterior purpose but have provided nothing to show a wilful act in support of that ulterior purpose.

The facts of this case are much closer to the facts in *Early Detection Center* than to the facts in *Templeton Feed & Grain*.  As discussed, in *Early Detection Center*, a claim for abuse of process was dismissed because the wilful act was no more than the filing of a groundless suit.  In *Templeton Feed & Grain*, however, abuse of process was found where a defendant used legal process to seize turkeys at the height of the Thanksgiving season in order to force payment of a debt.  In analyzing *Templeton Feed & Grain*, the Utah Supreme Court emphasized that "[t]he payment demands communicated by the defendant immediately after the seizure of the turkeys served as the 'wilful act.'  The payment demands were not integral to the proceeding that resulted in the seizure of the turkeys, but they collaborated the perverse character of those proceedings."[32]

In this case, there are no facts that Plaintiffs ever communicated any sort of demands to the Wrona Defendants, as did the defendant in *Templeton Feed & Grain*.  Nor is there evidence that Plaintiffs' actions were not integral to the proceedings at issue.  Rather, the only facts presented are that Plaintiffs brought a groundless lawsuit against the Wrona Defendants in this Court and defended against the small claims actions.  In this situation, the Court finds that these facts fail to establish a claim for abuse of process.  Further, the Wrona Defendants have failed to show that their injuries "may not reasonably be redressed through the imposition of sanctions or

---

[32]*Id*. at 390 (quoting *Templeton Feed*, 446 P.2d at 155).

like measures within the litigation forum itself."[33]  Therefore, the Court finds that summary judgment is appropriate on this claim.

   2.   *Intentional Infliction of Emotional Distress*

Plaintiffs seek summary judgment on the Wrona Defendants' intentional infliction of emotional distress claim.  All of the allegations supporting the Wrona Defendants' claim revolve around the filing and continuation of this action by Plaintiffs against the Wrona Defendants.  In their proposed Amended Counterclaim, the Wrona Defendants add allegations relating to the efforts required to collect the debt owed to the Wrona Defendants by Plaintiffs, as well as claims related to this action.

 In order to state a claim for intentional infliction of emotional distress, the Wrona Defendants must provide facts that demonstrate that Plaintiffs

> intentionally engaged in some conduct toward the plaintiff, (a) with the purpose of inflicting emotional distress, or, (b) where any reasonable person would have known that such would result; and his actions are of such a nature as to be considered outrageous and intolerable in that they offend against the generally accepted standards of decency and morality.[34]

"To be considered outrageous, the conduct must evoke outrage or revulsion; it must be more than unreasonable, unkind, or unfair.  Conduct is not necessarily outrageous merely because it is tortious, injurious, or malicious, or because it would give rise to punitive damages, or because it is illegal."[35]  The Utah Supreme Court has held "[a]n allegation of improper filing

---

[33]*Id*.

[34]*Bennett*, 70 P.3d at 30 (quotation marks and citations omitted).

[35]*Id*. at 32 (quotation marks and citations omitted).

Case 2:09-cv-00190-TS-EJF   Document 193   Filed 08/14/12   Page 16 of 16

of a lawsuit or the use of legal process against an individual is not redressable by a cause of action for intentional infliction of emotional distress."[36]

The Wrona Defendants' evidence fails to meet this standard. First, many of the claims are related to the initiation and maintenance of this action. Under the clear precedent of the Utah Supreme Court, such claims are not redressable by a cause of action for intentional infliction of emotional distress. The Wrona Defendants' proposed amendment seeks to add claims relating to Plaintiffs' alleged attempts to avoid paying their debt to the Wrona Defendants. The Court finds that this conduct is not the type of outrageous conduct actionable under the tort of intentional infliction of emotional distress. Therefore, judgment in favor of Plaintiffs is appropriate.

## IV.  CONCLUSION

It is therefore

ORDERED that Plaintiffs' Motion for Summary Judgment Dismissing Counterclaims of Defendants Joseph E. Wrona and Wrona Law Office, P.C. (Docket No. 164) is GRANTED. It is further

ORDERED that Defendants Joseph E. Wrona's and Wrona Law Offices, P.C.'s Motion for Leave to Amend Counterclaim (Docket No. 166) is DENIED.

DATED   August 14, 2012.

BY THE COURT:

_____
TED STEWART
United States District Judge

---

[36]*Id.*