IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| JAMES DEMARCO, et al.,<br><br>     Plaintiffs, | MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND FOR PARTIAL SUMMARY JUDGMENT |
| vs. | |
| MICHAEL LAPAY, et al.,<br><br>     Defendants. | Case No. 2:09-CV-190 TS |

This matter is before the Court on Defendants' Paladin Development Partners, L.L.C. ("Paladin"), Michael LaPay, Rory Murphy, George Bryan, and Chris Conabee (collectively "Defendants") Motion to Dismiss and for Partial Summary Judgment.  For the reasons discussed below, the Court will grant the Motion in part and deny it in part.

## I.  BACKGROUND

This case arises out of a real estate development in Park City, Utah.  The specific facts pertinent to this Motion will be discussed in more detail below, but the basic facts are as follows. Defendant Paladin developed and marketed the Silver Star at Park City Development.  Plaintiffs

entered into Real Estate Purchase Contracts to purchase four units within the development.

Plaintiffs eventually closed on only one of the units, Unit C-19.

Plaintiffs bring a breach of contract claim in relation to each of the units.  Defendants do

not move for dismissal or summary judgment on any of the breach of contract claims.  In

addition to their contract claims, Plaintiffs bring claims for intentional misrepresentation, fraud

and deceit via false statements; intentional misrepresentation, fraud and deceit via non-

disclosure; negligent misrepresentation; negligence; constructive fraud; rescission of contract and

declaratory relief; and violation of the Federal Interstate Land Sales Full Disclosure Act.

## II.  STANDARD OF REVIEW

Defendants move under both Rule 12(c) and Rule 56 of the Federal Rules of Civil

Procedure.

Summary judgment is proper if the moving party can demonstrate that there is no genuine

dispute as to any material fact and it is entitled to judgment as a matter of law.[1]  In considering

whether a genuine dispute of material fact exists, the Court determines whether a reasonable jury

could return a verdict for the nonmoving party in the face of all the evidence presented.[2]  The

Court is required to construe all facts and reasonable inferences in the light most favorable to the

nonmoving party.[3]

---

[1]Fed. R. Civ. P. 56(a).

[2]*See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[3]*See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

"A motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under Rule 12(b)(6)."[4]  The same standard is used when evaluating 12(b)(6) and 12(c) motions.[5]   In considering a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), all well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to Plaintiffs as the nonmoving party.[6]  Plaintiffs must provide "enough facts to state a claim to relief that is plausible on its face,"[7] which requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[8]  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[9]  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[10]  As the Court in *Iqbal* stated, "only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a

---

[4]*Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000).

[5]*Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 n.2 (10th Cir. 2002).

[6] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[7] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).

[8] *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

[9] *Id*. (quoting *Twombly*, 550 U.S. at 557) (alteration in original).

[10] *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

3

plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief."[11]

### III.  DISCUSSION

Defendants first argue that all of Plaintiffs' tort claims are barred by the economic loss rule.  Defendants next argue that Plaintiffs' tort claims are deficient as a matter of law. Defendants further argue that Plaintiffs' Interstate Lands Sales Full Disclosure Act fails.  Finally, Defendants argue that Plaintiffs' claim for piercing the corporate veil should be dismissed.  Each argument will be discussed below.

### A.    ECONOMIC LOSS RULE

Defendants' first argument is that all of Plaintiffs' tort-based claims are barred by the economic loss rule.

"The economic loss rule is a judicially created doctrine that marks the fundamental boundary between contract law, which protects expectancy interests created through agreement between the parties, and tort law, which protects individuals and their property from physical harm by imposing a duty of reasonable care."[12]  "Simply put, the economic loss rule holds that

---

[11] *Iqbal*, 129 S. Ct. at 1949-50 (alteration in original) (internal quotation marks and citations omitted).

[12] *SME Indus., Inc. v. Thompson, Ventulett, Stainback & Assoc., Inc.*, 28 P.3d 669, 680 (Utah 2001).

'economic damages are not recoverable in negligence absent physical property damage or bodily injury.'"[13]

Importantly here, the Utah Supreme Court has stated that at least some fraud claims "lie outside the scope of the economic loss rule."[14]   In particular, a claim for fraud in the inducement is not barred by the economic loss rule in Utah.  As the Tenth Circuit has stated, interpreting Colorado law,

> Where a negligence claim is based only on breach of a contractual duty, the law of contract rightly does not punish the breaching party, but limits the breaching party's liability to damages that naturally flow from the breach.  It is an altogether different situation where it *appears* two parties have in good faith entered into a contract but, in actuality, one party has deliberately made material false representations of past or present fact, has intentionally failed to disclose a material past or present fact, or has negligently given false information with knowledge that the other party would act in reliance on that information in a business transaction with a third party.  The breaching party in this latter situation also is a tortfeasor and may not utilize the law of contract to shield liability in tort for the party's deliberate or negligent misrepresentations.[15]

In this case, Plaintiffs argue that their tort claims are not barred by the economic loss rule because they are claims for fraud in the inducement.  A review of Plaintiffs' Second Amended Complaint reveals that many of Plaintiffs' tort claims are based on alleged statements or

---

[13]*Id.* (quoting *Am. Towers Owners Ass'n, Inc. v. CCI Mech.*, 930 P.2d 1182, 1190 (Utah 1996)).

[14]*Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC*, 221 P.3d 234, 247 (Utah 2009); *see also SME Indus., Inc.*, 28 P.3d at 680 n.8 (stating that "plaintiffs may recover purely economic losses in cases involving intentional torts such as fraud, business disparagement, and intentional interference with contract").

[15]*United Int'l Holdings, Inc. v. Warf (Holdings) Ltd.*, 210 F.3d 1207, 1227 (10th Cir. 2000).

omissions made to induce Plaintiffs to enter into the Real Estate Purchase Contracts.[16]
Defendants acknowledge that the economic loss rule would not apply to such claims.[17]  Thus, to
the extent that Plaintiffs allege pre-contract fraud claims, these claims are not barred by the
economic loss rule.

In addition, Plaintiffs argue that certain of their claims are not barred because Defendants
owed them an independent duty based on certain relationships.[18]  Such claims would also not be
barred by the economic loss rule. [19]

As a result, the Court must reject Defendants' argument that all of Plaintiffs' tort-based
claims are barred by the economic loss rule.  Rather, the Court will consider each of Plaintiffs'
claims and will address the applicability of the economic loss rule where pertinent.

B.      TORT CLAIMS

    *1.      Intentional Misrepresentation, Fraud and Deceit via False Statement*

Plaintiffs' Fifth Cause of Action alleges intentional misrepresentation, fraud and deceit
via false statements.  Plaintiffs specifically point to five statements allegedly made by Defendants

---

[16]*See* Docket No. 104, ¶¶ 108, 131.

[17]Docket No. 153, at 10.

[18]*See Yazd v. Woodside Homes Corp.*, 143 P.3d 283, 289 (Utah 2006) (holding that a
contractor-seller owes an independent duty to a home purchaser to disclose known material
information regarding the real property); *Hermansen v. Tasulis*, 48 P.3d 235, 241 (Utah 2002)
(holding that real estate brokers owe an independent duty "to disclose facts materially affecting
the value or the desirability of the property that were known to him"); *Loveland v. Orem City
Corp.*, 746 P.3d 763, 769 (Utah 1987) (imposing a duty of care upon a developer to disclose to
the purchaser latent conditions that made subdivided lots unsuitable).

[19]*See Davencourt at Pilgrims Landing Homeowners Ass'n*, 221 P.3d at 247.

that Plaintiffs assert are false and fraudulent.  First, Plaintiffs allege that Defendants represented

that the units would be competed in 18 months.  Second, Plaintiffs allege that an agent of

Paladin/Prudential told Plaintiffs that the units would appreciate in value.  Third, an agent of

Paladin/Prudential stated that the owners of the units would receive substantial rental income.

Fourth, the same agent stated that one of the units, C-19, was complete, had a legitimate

Temporary Certificate of Occupancy ("TCO") and all that was required to obtain a Certificate of

Occupancy ("CO") was to plant the landscaping.  Finally, Plaintiffs allege that Plaintiffs made

false statements concerning the sinking of the entry corner at unit C-19.

"'[I]n order to prevail on a claim of fraud [or misrepresentation], all the elements of fraud

must be established by clear and convincing evidence.'"[20]  These elements include:

> (1) a representation; (2) concerning a presently existing material fact; (3) which
> was false; (4) which the representer either (a) knew to be false, or (b) made
> recklessly, knowing that he had insufficient knowledge on which to base such
> representation; (5) for the purpose or inducing the other party to act upon it; (6)
> that the other party, acting reasonably and in ignorance of its falsity; (7) did in fact
> rely upon it; (8) and was thereby induced to act; (9) to his injury and damage.[21]

### a.  Completion Date

Plaintiffs allege that Defendants represented that each unit in the development would be

completed within 18 months.  In response, Defendants each present declarations stating that they

believed the units would be constructed within the 18-month period and that they never made any

---

[20]*Kuhre v. Goodfellow*, 69 P.3d 286, 291 (Utah Ct. App. 2003) (quoting *Secor v. Knight*, 716 P.2d 790, 794 (Utah 1986)) (alteration in original).

[21]*Secor*, 716 P.2d at 794 (citations omitted).

representations to Plaintiffs regarding the completion dates that was inaccurate or untrue.[22]  In reply, Plaintiffs present evidence demonstrating that at the time Defendants made the alleged statements concerning the completion of the units, the project was already behind schedule. From this, Plaintiffs argue, a jury could infer that Defendants knew the units would not be completed in the 18-month period and made the alleged statements to induce Plaintiffs to purchase their units.

Having reviewed the evidence, the Court finds that Plaintiffs have presented evidence upon which a reasonable jury could find that Defendants, when they allegedly made the statements concerning the completion dates, knew those statements were false.  It is undisputed that the Silver Star project encountered difficulties from the outset.  It is further undisputed that at the time Defendants made the alleged misrepresentations, the project was well behind schedule.  Of particular importance to this issue is the evidence related to the building of the retaining wall.

Harmon Tobler, who was the project manager for the general contractor involved in the construction of the Silver Star project, testified that finishing the retaining wall was necessary before construction on the rest of the project could commence.[23]  Mr. Tobler further testified that completion of the wall delayed the entire project.[24]  However, he clarified that it would "[n]ot

---

[22]Docket No. 142, Ex. B, ¶ 4; *id*., Ex. C, ¶ 4; *id*., Ex. D, ¶ 4; *id*., Ex. E, ¶ 6.

[23]Docket No. 147, Ex. 9, Depo. of Harmon Tobler, 73:21-74:11.

[24]*Id*. at 74:12-15.

necessarily" delay the entire project the same amount of time that the wall was delayed."[25]  From this testimony, the Court finds that a jury could find that Defendants' statements concerning the 18-month completion window were false at the time they were made.  There is further evidence to support the other elements of fraud.  Therefore, summary judgment must be denied on this issue.

        b.    *Appreciate in Value and Receive Substantial Rental Income*

Plaintiffs' next two claims concern Defendants' alleged statements that their units would appreciate in value and that they would receive substantial rental income.

As an initial matter, Defendants deny making such a statement though, at the time, they believed the units would appreciate in value.[26]  However, Plaintiffs have provided testimony that Defendants did make such statements.  Regardless of whether the statements were made, Plaintiffs cannot, and have not, presented evidence of reasonable reliance.  In Utah, "a party cannot reasonably rely upon oral statements by the opposing party in light of contrary written information."[27]  Here, the contracts explicitly state:

> Buyer acknowledges that neither Seller nor any of its agents or employees has made any warranties or representations upon which Buyer has relied concerning: (i) the investment value of the Silver Star residence; [or] (ii) the possibility or probability of profit or loss resulting from ownership or rental of the Silver Star residence . . . . Buyer acknowledges that the market value of the Silver Star Residence may change from time to time due to market factors beyond the control of the Buyer or Seller.

---

[25]*Id*. at 74:16-19.

[26]Docket No. 142, Ex. B, ¶ 5; *id*., Ex. C, ¶ 5; *id*., Ex. D, ¶ 5; *id*., Ex. E, ¶ 5.

[27]*Gold Standard, Inc. v. Getty Oil Co.*, 915 P.2d 1060, 1068 (Utah 1996).

Based on this language, Plaintiffs could not reasonably rely on Defendants' alleged pre-contract statements that the units would appreciate in value or generate substantial rental income. Therefore, summary judgment in favor of Defendants is warranted on this claim.

        *c.*    *Unit C-19*

Plaintiffs' next two claims concern Unit C-19, but are better addressed as fraudulent non-disclosure claims.   Therefore, these claims for fraudulent misrepresentation will be dismissed and Plaintiffs' claims relating to fraudulent non-disclosure will be discussed in further detail below.

        *2.*    *Intentional Misrepresentation, Fraud and Deceit via Non-disclosure*

Plaintiffs allege in their Sixth Cause of Action that Defendants concealed and withheld certain facts from Plaintiffs of which Defendants were aware at or before the time Plaintiffs signed the Real Estate Purchase Contracts.  Specifically, Plaintiffs argue that Defendants failed to disclose soil settlement issues with regard to Unit C-19.

To prevail on a claim of fraudulent nondisclosure, a plaintiff must prove by clear and convincing evidence that (1) the defendant had a legal duty to communicate information, (2) the defendant knew of the information he failed to disclose, and (3) the nondisclosed information was material.[28]

In *Yazd v. Woodside Homes Corporation*, the Utah Supreme Court held that "a developer-builder may owe his buyer a duty to disclose information known to him concerning real property, including property other than that conveyed to the buyer, when that information is

---

[28]*Hess v. Canberra Dev. Co., LC*, 254 P.3d 161, 169 (Utah 2011).

material to the condition of the property purchased by the buyer."[29]  In this case, there does not appear to be a dispute that Defendants owed Plaintiffs a duty and that they were aware of the infomation they allegedly failed to disclose.  Thus, the question becomes whether the information was material.  In *Yazd*, the court clarified that "[t]o be material, the information must be "important."  Importance, in turn, can be gauged by the degree to which the information could be expected to influence the judgment of a person buying property or assenting to a particular purchase price."[30]

With this in mind, the Court turns to the facts concerning the soil issues at and around Unit C-19.  Portions of the Silver Start project were built on mine overburden.  As a result of this, Defendants encountered various difficulties during construction, including problems with the retaining wall discussed above.  Specific to Unit C-19 there are three different events of importance.  The first event occurred early on in the building of the project and relates to the entry corner.  During building, the entry corner of Unit C-19 started to sink.  Defendants became aware of this issue during construction and were able to take remedial measures.  There is no evidence of any ongoing soil issues related to the entry corner.

Next, in August 2007, Defendants were informed by their geotechnical consultants of voids beneath the garage slabs in Units 18-19 and 21-22.[31]  The geotechnical consultant felt that it was unnecessary to remove the slabs, provided that the voids were filled "with a low strength

---

[29]*Yazd*, 143 P.3d at 289.

[30]*Id*.

[31]Docket No. 153, Ex. J, Letter from Bill Gordon.

sand-cement flowable fill."[32]  Defendants have presented evidence that they followed the

recommendation of their consultant and injected grout under the garage slab.[33]  As Defendants

believed this resolved the issue, they thought there was no reason to disclose this to Plaintiffs,

who closed on Unit C-19 in November 2007.

The final soil issue occurred the following year.  An issue with a water pipe fitting at

another unit caused flooding and substantial damage.  Defendants were concerned that the cause

of this problem was the result of inadequate compaction and support under the garage slab of that

unit.  At that time, there was no evidence of insufficient compaction or support under the garage

slab in Unit C-19.  However, because of the incident in the other unit, Defendants decided to take

remedial action at all similarly designed units, including Unit C-19.  As a result, Defendants

removed and replaced the garage slab from Unit C-19, despite their being no signs that

replacement was required.[34]  As with the entry corner, there is no evidence before the Court of

continued settlement with the garage slab.

As stated, the Court must determine whether the prior, resolved soil issues constitute

material information.  In arguing that it does, Plaintiffs conflate these two soil issues relating to

the garage slab.  Doing so, Plaintiffs argue that Defendants were aware of settlement issues as

early as August 2007 and failed to disclose them in order to induce Plaintiffs to close.  The

evidence, however, is not so straightforward.  Defendants became aware of a settlement issue in

---

[32]*Id*.

[33]Docket No. 142, Ex. D, Decl. of Chris Conabee at ¶ 9.

[34]Docket No. 153, Ex. K, Letter from Steve Perkins.

August 2007 and took steps to correct it.  As they believed the issued had been resolved, Defendants believed there was nothing to disclose.  Then, the following year, when a similarly designed unit had an issue that caused flooding, Defendants took steps to make sure that the same thing did not happen in other units.

Based on the information before it, the Court cannot find that Plaintiffs have presented a genuine issue of material fact concerning soil settlement.  In essence, Plaintiffs seek to impose a duty on developers requiring that they disclose all information that occurs during construction. This is not what is required under Utah law.  Rather, under Utah law, a developer need only disclose material information.[35]  Plaintiffs have presented insufficient evidence upon which a reasonable jury could find that the information Defendants allegedly failed to disclose in this instance was material.  Therefore, summary judgment in favor of Defendants is warranted on this claim.

Plaintiffs assert a number of other allegations under their fraudulent non-disclosure claim. The majority of these claims are barred by the economic loss rule because they occurred post-contract.  Further, many of the alleged defects are not of the type that must be disclosed as they are not material.  Therefore, summary judgment in favor of Defendants is proper on Plaintiffs' Sixth Cause of Action.

---

[35]*See Yazd*, 143 P.3d at 289; *see also Smith v. Moore*, 158 P.3d 562, 573 (Utah 2007) (holding that contractor-seller owes a duty to disclose material information to home purchaser).

### 3.      Negligent Misrepresentation

Plaintiffs' Seventh Cause of Action is largely repetitive of Plaintiffs' Fifth and Sixth

Causes of Action.  However, rather than arguing that Defendants made intentional

misrepresentations, Plaintiffs allege that the representations discussed above were negligently

made.  For the same reasons discussed above, summary judgment in favor of Defendants will be

granted on this claim, with the exception of Plaintiffs' negligent misrepresentation claim based

on the 18-month completion date.  The Court will permit Plaintiffs to pursue a negligent

misrepresentation in relation to the completion date as an alternative to their fraud claim.

### 4.      Negligence and Constructive Fraud

Plaintiffs' Eighth Cause of action alleges negligence against Defendant LaPay.[36]

Plaintiffs allege that Defendant LaPay, as a licensed real estate professional, owed a duty to

Plaintiffs to: (1) exercise reasonable skill and care in the exercise of his agency duties; (2)

perform his duties with care and dilligence; and (3) disclose to Plaintiffs all information in his

possession that was relevant and material to the purchase of the units that could affect Plaintiffs'

decision.  Plaintiffs further allege that Defendant LaPay breached his duty by failing to

investigate and disclose to Plaintiffs the material facts that were either misrepresented or not

disclosed.

---

[36]Defendants originally brought their Eighth and Ninth Causes of Action against
Defendant Murphy as well, but have since abandoned those claims against him.

Under Utah law, real estate brokers owe a duty to disclose facts materially affecting the value or the desirability of the property that were known to them.[37]  For the same reasons set forth above, the Court finds that Plaintiffs have failed to present evidence that Defendant LaPay failed to disclose such facts.

Plaintiffs' Ninth Cause of Action alleges constructive fraud against Defendant LaPay.  A claim for "[c]onstructive fraud requires two elements: (i) a confidential relationship between the parties; and (ii) a failure to disclose material facts."[38]  Here, Plaintiffs have failed to present evidence that Defendant LaPay was aware of and failed to disclose material facts.  Therefore, summary judgment is proper on this claim.  However, as discussed above, Plaintiffs' Fifth Cause of Action remains against Defendant LaPay.

## C.     RESCISSION OF CONTRACT AND DECLARATORY RELIEF

Plaintiffs' Tenth Cause of Action is for rescission of contract and declaratory relief. Plaintiffs state that, because of the fraud involved, the Real Estate Purchase contracts are voidable and should be rescinded.

If Defendants committed fraud to induce Plaintiffs to enter into the Real Estate Purchase Contracts, then those agreements are voidable.[39]  As the Court has held that at least one of

---

[37]*Hermansen*, 48 P.3d at 241 (holding that real estate brokers owe an independent duty "to disclose facts materially affecting the value or the desirability of the property that were known to him").

[38]*Jensen v. IHC Hosps., Inc.*, 944 P.2d 327, 339 (Utah 1997).

[39]*Baldwin v. Burton*, 850 F.2d 1188, 1193 (Utah 1993); *see also* Restatement (Second) of Contracts § 164(1) ("If a party's manifestation of assent is induced by either a fraudulent or a material misrepresentation by the other party upon which the recipient is justified in relying, the contract is voidable by the recipient.").

Plaintiffs' fraud claims survive summary judgment, summary judgment cannot be granted on this claim.

D.      FEDERAL INTERSTATE LAND SALES FULL DISCLOSURE ACT

Plaintiffs' Eleventh Cause of Action alleges a violation of the Federal Interstate Land Sales Full Disclosure Act.  Plaintiffs allege that Defendants violated the Act because: (1) they did not make a statement of record; (2) they did not file a property report; (3) they engaged in prohibited types of advertising; (4) they made false and fraudulent statements to Plaintiffs; and (5) they did not disclose many material facts relating to the development which would have affected Plaintiffs' decision to purchase units in the development.

Defendants argue that the Federal Interstate Land Sales Full Disclosure Act does not apply to this action.  Specifically, Defendants point to 15 U.S.C. § 1702(a)(2) which provides that the Act does not apply to "the sale or lease of any improved land on which there is a residential, commercial, condominium, or industrial building, or the sale or lease of land under a contract obligating the seller or lessor to erect such a building thereon within a period of two years."  Defendants argue that the Real Estate Purchase Contracts required substantial completion of the units within 18 months.  Therefore, this exception is at issue and the Act does not apply.

In response, Plaintiffs argue that § 1702(a)(2) requires an unqualified and unconditional guarantee to complete the building within two years, and that the Real Estate Purchase Contracts do not provide for such a guarantee.  Plaintiffs argue that this is the case because: (1) the

Contracts bar plaintiffs from suing for contract damages for Defendants' failure to complete the construction by the 18-month deadline; and (2) the Contracts contain a *force majeure* clause that purports to be broader in scope than the legal defenses of impossibility and frustration of purpose.  Each of these arguments will be discussed in turn.

   *1. Limitation of Damages*

   Plaintiffs' first argument concerns the language of the exemption which obligates the seller to erect the building within a period of two years.  Plaintiffs argue that, through the Contract language, Defendants were not truly obligated to complete the building.  Specifically, Plaintiffs point to language in the Contract that limits Plaintiffs' damages if the seller defaults to a return of the earnest money deposit and specific performance.  Plaintiffs argue that since the Contracts do not allow for contract damages, Defendants' obligation to finish the project within the time frame permitted is illusory.

   The Tenth Circuit has not ruled on this issue.  However, the Eleventh Circuit recently rejected the precise argument being made by Plaintiffs.  In *Stein v. Paradigm Mirasol, LLC*,[40] the contract specified that the condominium at issue would be built within two years.  In addition, the contract contained a *force majure* clause and limited the plaintiffs' available remedies to specific performance or getting back their deposit with interest and any actual damages.  The contract did not allow for speculative, punitive, or special damages.  The plaintiffs argued that the two-year completion exemption did not apply because the limitation of damages provision rendered the obligation illusory.

---

[40]586 F.3d 849 (11th Cir. 2009).

The Eleventh Circuit considered the exemption set out in § 1702(a)(2) and specifically the meaning of the word "obligating" in that provision.  This required the court look at both federal and state law.  The court considered federal law in determining the term "obligating" and looked to state law "to see what remedies the [plaintiffs] would have under the contract if [defendant] had not constructed the condominium within the two-year period specified in the § 1702(a)(2) exemption."[41]

In considering the term "obligating," the court held that "the § 1702(a)(2) exemption applies when a contract imposes a legal duty on the developer to perform his promise to construct the condominium or other building within two years."[42]  The nature and extent of the duty imposed by the contract becomes "a matter of state contract law."[43]

The court noted that, "[i]f it appeared to the [plaintiffs] that [Defendant] was not going to complete construction within two years, they had available the remedy of specific performance to force [defendant] to live up to its agreement."[44]  The plaintiffs could have also sought rescission, got their money back, and recovered actual damages.[45]  The plaintiffs argued that these remedies were insufficient to "obligate" the defendant to construct the condominium in two years without the remedies of special, consequential, punitive, speculative, and indirect damages.

---

[41]*Id*. at 854.

[42]*Id*.

[43]*Id*.

[44]*Id*. at 855.

[45]*Id*.

The Eleventh Circuit rejected this argument, holding that "[s]pecific performance or injunctive relief, if vigorously pursued, ordinarily will be enough to force a seller to fulfill its contractual obligations within the time a contract requires."[46]  Because the contract allowed the plaintiffs to pursue the remedy of specific performance, the court found that the contract "obligated" the defendant to complete the project within the two-year window.

Plaintiffs argue that the Court should not follow the approach in *Stein*, but should rather follow the approach taken by the Florida Supreme Court in *Samara Development Corp. v. Marlow*.[47]  In *Samara*, the court addressed the issue of whether a contract was exempt under the Interstate Land Sales Full Disclosure Act when the contract restricted the buyer's remedies to a return of the deposit or specific performance, but did not allow for the alternative remedy of a suit for damages.  The court held that in order for the exemption to apply, "the contract must unconditionally obligate the developer to complete construction within two years and must not limit the purchaser's remedies of specific performance or damages."[48]

The Eleventh Circuit's analysis in *Stein* is more persuasive than that in *Samara*.  The *Samara* court relied heavily on Florida law to determine wether an obligation is illusory.  In so doing, the court stated "that without the availability of at least both specific performance and damages the obligation to complete the construction within two years is illusory."[49]  The court

---

[46]*Id*.

[47]556 So. 2d 1097 (Fla. 1990).

[48]*Id*. at 1098.

[49]*Id*. at 1101.

noted that "[s]pecific performance alone is not sufficient because the developer could sell the property to a third party in the interim, thereby nullifying the availability of specific performance."[50]  The Eleventh Circuit rejected this argument, finding that specific performance would generally be sufficient.  The court further rejected the argument that specific performance would not be sufficient because the builder could sell the property.  The court noted that, notwithstanding the contract provision, Florida law permitted damages when a seller frustrates the buyer's specific performance right.[51]

It is helpful to consider Utah law on specific performance when deciding this issue.[52] Utah law provides that "where a plaintiff seeks specific performance of a contract and that relief is not available, the trial court may grant monetary damages for breach of contract."[53]  Thus, "[w]hen specific performance is granted, it is the obligation of the courts to evaluate the equities of the parties and to formulate a remedy that seeks to place the parties in a position as similar as possible to that which they would have been in had the conveyance been made according to the terms of the contract."[54]  Therefore, under Utah law, Plaintiffs' remedy is not illusory.  Plaintiffs

---

[50]*Id.*

[51]*Stein*, 586 F.3d at 856.

[52]*See id.* at 854 ("The nature and extent of the duty a contract imposes . . . is a matter of state contract law.").

[53]*Richards v. Baum*, 914 P.2d 719, 721 (Utah 1996); *see also Wagner v. Anderson*, 250 P.2d 577, 580 (Utah 1952) (stating that "when decreeing specific performance, a court of equity may award damages also to the plaintiff if the decree of specific performance will not give complete relief").

[54]*Eliason v. Watts*, 615 P.2d 427, 430 (Utah 1980).

had the ability to sue for specific performance and a court sitting in equity has the authority to award Plaintiffs such damages necessary to place them "in a position as similar as possible to that which they would have been in had the conveyance been made according to the terms of the contract."[55]   Therefore, the Court finds that the limitation of damages provision in the Contracts does not remove the Contracts from the exception to the Interstate Land Sales Full Disclosure Act.

This conclusion is supported by the guidelines on the Interstate Land Sales Full Disclosure Act provided by the United States Department of Housing and Urban Development ("HUD Guidelines").   The HUD Guidelines provide the following statement in determining whether the exemption in § 1702(a)(2) applies:

> The contract must not allow nonperformance by the seller at the seller's discretion.   Contracts that permit the seller to breach virtually at will are viewed as unenforceable because the construction obligation is not an obligation in reality.   Thus, for example, a clause that provides for a refund of the buyer's deposit if the seller is unable to close for reasons normally within the seller's control is not acceptable for use under this exemption.   *Similarly, contracts that directly or indirectly waive the buyer's right to specific performance are treated as lacking a realistic obligation to construct.*   HUD's position is not that a right to specific performance of construction must be expressed in the contract, but that any such right that purchasers have must not be negated.   For example, a contract that provides for a refund or a damage action as the buyer's sole remedy would not be acceptable.[56]

As set forth above, the HUD Guidelines only state that contracts waiving a buyer's right to specific performance are treated as lacking a realistic obligation to construct.   The HUD

---

[55]*Id.*

[56]*Supplemental Information to Part 1710: Guidelines for Exemptions Available Under the Interstate Land Sales Full Disclosure Act* (emphasis added).

Guidelines mention nothing about contract that waive the right to receive contract damages.

Thus, it appears that HUD, the agency responsible for providing guidance on the Interstate Land

Sales Full Disclosure Act, only sees those contracts that limit the ability to seek specific

performance as illusory.  As the Contracts here specifically provide for the right of specific

performance, the exemption in § 1702(a)(2) applies here.

>    2.    *Force Majeure Clause*

Plaintiffs also argue that the *force majeure* clause in the Contracts makes the exemption

in § 1702(a)(2) inapplicable.

The clause at issue states:

> In the event the Silver Star Residence is not Substantially Complete by the date
> provided in Section 24(c) of this Contract due to interruption of transport,
> unavailability of materials, strikes, fire, flood, weather, governmental regulations,
> acts of God, or other similar occurrences beyond the control of Seller, the
> Substantial Completion Deadline shall be extended for a reasonable period of time
> based on the nature of the delay.

The Eleventh Circuit in *Stein* addressed a substantially similar clause and found that it did

not render a promise to complete within two years illusory.  The clause at issue in *Stein* covered

"events that may or may not happen, but whether they do is 'beyond the control of the Seller.'"[57]

Thus, the clause was "not an opt-out provision" and was "limited in scope."[58]  As a result, the

court found that the clause did not make the two-year obligation illusory, nor did it make the

obligation subject to the seller's discretion.[59]  The court focused on the fact that the Act "is an

---

[57]*Stein*, 586 F.3d at 858.

[58]*Id*.

[59]*Id*.

anti-fraud statute" and "[a]llowing for reasonable delays caused by events beyond the seller's control does not promote or permit fraud."[60]

The same reasoning applies here.  The *force majeure* clause covers events that are based on "interruption of transport, unavailability of materials, strikes, fire, flood, weather, governmental regulations, acts of God, or other similar occurrences beyond the control of Seller." Such a clause does not make the two-year obligation illusory, nor does it subject the duty to Defendants' discretion.  The clause is limited in scope and only covers those things that are beyond the control of Defendants.  Therefore, the presence of the *force majeure* clause does not take this case out of the exception set out in § 1702(a)(2).

Based on the above, the Court finds that the Interstate Land Sales Full Disclosure Act does not apply to this case and Plaintiffs' Eleventh Cause of Action will be dismissed.

E.     PIERCING THE CORPORATE VEIL

Finally, Defendants seeks dismissal of Plaintiffs' piercing the corporate veil claim under 12(c), arguing that Plaintiffs have failed to state a claim for piercing the corporate veil.

To prevail on a piercing the corporate veil theory, Plaintiffs' complaint must plead:

a concurrence of two circumstances: (1) there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist, viz., the corporation is, in fact, the alter ego of one or a few individuals; and (2) the observance of the corporate form would sanction a fraud, promote injustice, or an inequitable result would follow.[61]

---

[60]*Id.*

[61]*Narman v. Murray First Thrift & Loan Co.*, 596 P.2d 1028, 1030 (Utah 1979).

Plaintiffs' Second Amended Complaint sets out their piercing the corporate veil claim as

follows:

> 14.  Defendants LAPAY, MURPHY, GEORGE BRYANT ("BRYANT"), AND
> CHRISTOPHER CONABEE ("CONABEE") are, and at all relevant times were,
> employees and/or agents of PALADIN and, at all relevant times, were
> simultaneously the alter egos of PALADIN as alleged more specifically below.
> MURPHY, BRYANT and CONABEE are and were at all relevant times citizens
> of the state of Utah.
> . . . .
> 17. LAPAY, MURPHY, BRYANT, CONABEE and PALADIN have
> commingled funds and other assets, have held out one entity as being liable for the
> debts of the others, have identical or substantially similar equitable ownership, use
> of the same offices and employees, use one or the other(s) as a mere shell or
> conduit for the affairs of one or more of the others, are inadequately capitalized,
> have disregarded corporate formalities, and do not maintain segregation of entity
> records.
> 18. PALADIN is being used by LAPAY, MURPHY, BRYANT and CONABEE
> to perpetrate fraud, circumvent the law, and to accomplish the other wrongful and
> inequitable purposes described below, such that this court should disregard
> PALADIN as a separate entity and should treat its actions, errors and omissions as
> if they are the actions, errors and omissions of the persons and/or entities actually
> controlling PALADIN.

These allegations are clearly the type of conclusory allegations devoid of factual

development that the Supreme Court has rejected in *Twombly* and *Iqbal*.  Therefore, they fail

under Rule 12(b)(6) and 12(c).  Plaintiffs argue that Defendants cannot seek dismissal under

12(b)(6) because they have answered the Second Amended Complaint.  However, this argument

misapprehends Rule 12(c), which allows for motions to be brought "[a]fter the pleadings are

closed" and utilizes the 12(b)(6) standard.  Therefore, this Motion is properly before the Court

and, for the reasons stated, Plaintiffs' piercing the corporate veil will be dismissed.

IV.  CONCLUSION

It is therefore

ORDERED that Defendants' Motion to Dismiss and For Partial Summary Judgment (Docket No. 141) is GRANTED IN PART AND DENIED IN PART.  It is further

ORDERED that Plaintiffs' Ex Parte Motion Requesting Leave to File Surreply (Docket No. 157) is GRANTED.

DATED   August 20, 2012.

BY THE COURT:

_____

TED STEWART
United States District Judge